STEVE W. BERMAN (*pro hac vice* to be filed)
SEAN R. MATT (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and Class*

[Additional Counsel listed on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LESLEY CONTI AND TOM CONTI on behalf of themselves and all others similarly situated, | Case No.: 2:19-cv-2160 |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **COMPLAINT** |
| AMERICAN HONDA MOTOR CO., INC, a California corporation, | |
| Defendant. | |

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### NATURE OF THIS ACTION

1. Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased or leased a fifth generation, 2018-2019 Honda Odyssey vehicle or 2019 Honda Pilot ("Vehicles" or "Covered Vehicles") manufactured by defendant American Honda Motor Co., Inc. ("Honda" or "Defendant").

2. Defendant designed, manufactured, tested, warranted, advertised, distributed, sold, and leased the Covered Vehicles, which contain a defective integrated in-vehicle communication, navigation, and entertainment system – commonly referred to as an "infotainment system" – that causes many of the Vehicles' features (e.g., navigation system, rear-entertainment system, audio system, backup camera, cabin watch system) to malfunction.

3. As a result of the defect, the Vehicles' infotainment systems frequently freeze or crash (in which case no features connected to system are operational, including the navigation technology, the radio, and the rearview camera). These

1

**COMPLAINT**

malfunctions pose a safety risk because when the system malfunctions, unexpected audio or video – or a blank or blue infotainment screen – can cause the driver to become distracted.  The defect can also render safety-related systems (including backup camera functions) to fail.

4.     Honda either knew of the defect before marketing the Vehicles or failed to conduct adequate testing of the Vehicles system prior to its release. Regardless, soon after the release of the Vehicles, Honda must have known of the defect based on the numerous customer complaints it received, and yet Honda continued to market the Vehicles.

5.     Under the Vehicles' New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."[1]

6.     But Honda has not found a solution to the infotainment system defect. Instead, Honda simply replaces defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.

7.     Despite providing the dealership and Honda engineers *eight attempts* to repair Plaintiffs' Vehicle, the Vehicle's infotainment system continues to malfunction.

_____

[1]A true and correct copy of the New Vehicle Limited Warranty is available at https://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_Basebook_AWL05251_FINAL.pdf ;
https://owners.honda.com/Documentum/Warranty/Handbooks/2019_Honda_Warranty_Basebook_AWL07531_Petrol_Hybrid_PHEV__SIS.pdf

**COMPLAINT**

8.     Accordingly, Plaintiffs bring this action for breach of express and implied warranties on behalf of a nationwide class of Vehicle lessees and owners. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

10.     Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant is a resident of Torrance, California, which is located in this district.

## PARTIES

11.     Plaintiffs Lesley Conti is an Ohio citizen residing in Munroe Falls, Ohio.

12.     Plaintiff Tom Conti is an Ohio citizen residing in Munroe Falls, Ohio.

13.     Defendant American Honda Motor Co., Inc. is a California corporation with its headquarters in Torrance, Los Angeles County, California.

14.     In this Complaint, when reference is made to any act, deed or conduct of Defendant, the allegation means that Defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or

3

**COMPLAINT**

representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

## FACTUAL ALLEGATIONS

### Defendant's Failure to Fix or Disclose The Defect

15.     Defendant designed, engineered, manufactured, tested, warranted, advertised, distributed, sold, and leased the 2018-2019 Odyssey and 2019 Pilot vehicles equipped with defective infotainment systems.

16.     Because the Vehicles' infotainment systems are responsible for a wide variety of vehicle functions (including navigation, audio, video, hands-free phone, back up cameras, etc.), the defect causes a wide range of problems for the Vehicles. For instance, the defect can cause the entire center console to go black or blue while the vehicle is in motion, thereby posing a substantial distraction to the driver.

17.     Examples from the many complaints about the defective infotainment systems in the Covered Vehicles posted on the National Highway Transportation Safety Administration include:

- "THE CENTER CONSOLE, WHICH IS THE MONITOR THAT UTILIZES GPS NAVIGATION, REAR VIEW CAMERA DISPLAY, CONTROLS HEAT/AC, VOLUME CONTROL, ETC. HAS CONTINUED TO FAIL SINCE DATE OF PURCHASE (7/15/17). THE MONITOR SHUTS DOWN AT RANDOM TIMES, FOR UNIDENTIFIED REASONS, LEAVING THE DRIVER, DISTRACTED AND ATTEMPTING TO RESOLVE. THE SHUT DOWN CAN OCCUR WHILE IN THE VAN IS MOVING OR STATIONARY. NAVIGATION SHUTS DOWN WHILE THE DRIVER IS IN ROUTE TO A LOCATION CAUSING SIGNIFICANT DISTRACTION.… HONDA WAS MADE AWARE

4

**COMPLAINT**

OF THIS PROBLEM IN AUGUST 2017. WE BROUGHT OUR VAN IN TO THE SHOP TWICE AND NO RESOLUTION WAS FOUND. WE FILED A COMPLAINT WITH HONDA AMERICA (VOICE MAILS ARE RETAINED AS RECORD). AFTER SEVERAL MONTHS OF NO RESOLUTION, HONDA AMERICAN TOLD US OUR CASE WAS BEING CLOSED BECAUSE THE COMPANY CONTINUED TO HAVE NO RESOLUTION. 7 MONTHS AFTER PURCHASE THE CENTER CONSOLE/MONITOR CONTINUES TO RANDOMLY FAIL. SOMETIMES THE MONITOR GOES BLACK, SOME FEATURES WORK WHILE OTHERS STOP (FOR EXAMPLE THE RADIO MAY WORK WHILE THE SCREEN IS BLACK). SOMETIMES THE MONITOR GOES BLUE AND EVERYTHING SHUTS DOWN. PHOTOS AND VIDEOS OF THESE OCCURRENCES WERE SUBMITTED TO HONDA VIA EMAIL. THE PROMOTED FEATURES BY HONDA AMERICA LEAD THE BUYER TO BELIEVE THERE IS ADDED SAFETY IN THIS VAN. THE OPPOSITE HAS TURNED OUT TO BE TRUE. THESE FAILURES CAUSE SERIOUS SAFETY CONCERNS FOR THE DRIVER AND THE YOUNG FAMILIES UTILIZING THE VAN." (August 23, 2017)

- "ENTIRE DASH TURNED OFF WHILE DRIVING INCLUDING SPEEDOMETER AND INFORMATION SCREEN-REPLACED RADIOHEAD.... IT'S A BAD REAR ENTERTAINMENT SYSTEM. I BOUGHT MY CAR 1 YEAR AGO AND IT'S OBVIOUSLY FLAWED" (October 29, 2018).

- "TOURING-REAR ENTERTAINMENT SYSTEM SHUTS OFF TO BLACK SCREEN AND CABIN WATCH LOSES SIGNAL AND GIVES AN ERROR CODE. WHILE DRIVING LONG DISTANCES, THE KIDS CAN ONLY WATCH THE FIRST 30 MINUTES OF THEIR DVD BEFORE THE SYSTEM SEEMS TO OVERHEAT AND COMPLETELY SHUTDOWN. WE HAVE RESORTED TO TURNING IT OFF TO LET IT COOL DOWN (DVD THAT IS REMOVED FROM THE PLAYER COMES OUT SCALDING HOT) BEFORE RETRYING TO LET THEM WATCH AND HAVE IT FAIL A FEW MINUTES LATER. CABINWATCH SEEMS TO ACT UP AT THE SAME TIME THE REAR ENTERTAINMENT SYSTEM FAILS." (September 5, 2018).

COMPLAINT

- "AS SOON AS I DROVE OFF THE LOT. THE CAR GAVE ME AN ERROR… THE PROBLEM WITH THE REAR ENTERTAINMENT SYSTEM KEEPS IN DEFAULT. I TOOK IT IN 6 TIMES ALREADY NO SOLUTION JUST RUN AROUND. WHEN YOU START EVERYTHING IS FINE AFTER 10 MINUTES OF PLAYING ANYTHING THE SCREEN GOES CRAZY. I ATTACHED PICTURES. NOTHING WORKS. SOME TIMES IF YOU RESTART THE CAR YOU ARE LUCKY AND YOU GET PICTURE. BUT MUST OF THE TIME YOU HAVE TO WAIT FOR A FEW HOURS.!" (May 28, 2018).

- FAILURE OF THE REAR ENTERTAINMENT SYSTEM: THE REAR CAMERA AND ENTERTAINMENT SYSTEM WILL LOST "NETWORK CONNECTIVITY" AND STOP FUNCTIONING…. FAILURE OF THE INFOTAINMENT SYSTEM: THE INFOTAINMENT SYSTEM WILL TURN OFF AND GO INTO A SERIES OF FAILURES, ULTIMATELY TURNING OFF COMPLETELY AND NOT FUNCTIONING. THE INFOTAINMENT SYSTEM WILL ALSO EXPERIENCE POWER ERRORS RESULTING IN ERRORS WITH THE ANTI THEFT SYSTEM. IN ADDITION, THE RADIO/SPEAKERS PERIODICALLY STOP WORKING. (October 14, 2017)

- RECURRENT PROBLEM. STARTED WHEN VEHICLE WAS 2 MONTHS OLD. TAKEN CAR TO DEALER SERVICE DEPARTMENT. NO SOLUTION.

- WHEN IN MOTION (HIGHWAYS, CITY ROADS) SPEAKERS MAKE A SPARKLING SOUND FOLLOWED BY THE ENTERTAINMENT SCREEN ( NAVIGATION, HANDHELD PHONE, REAR VISION...) AND THE ODOMETER SCREEN (SPEED DISPLAY, ALL THE SIGNALS) BECAME DEAD. IT COULD LAST FEW SECONDS AND REBOOT BACK OR UP TO 30 MINUTES. IN A 15 MILE JOURNEY , COULD HAPPEN AROUND 15 TIMES. SO THE DANGEROUS SITUATION IS THAT I AM DRIVING WITH NO IDEA HOW MUCH SPEED I AM GOING, I AM NOT ABLE TO USE MY HANDHELD PHONE (ALSO VERY IMPORTANT TO ME AS A BUSY DOCTOR TRYING TO ANSWER EMERGENCY CALLS), NO

6

**COMPLAINT**

NAVIGATION SYSTEM AVAILABLE, THE REAR VISION CAMERA BECOMES USELESS WITH A BLANK SCREEN...

I LEARNT FROM THE INTERNET THAT THIS IS AN ONGOING PROBLEM AND NO SOLUTION HAVE BEEN FOUND.

PROBLEM HAPPENS IN MOTION AND ALSO OR WHEN CAR IS PARKED.

18.  Complaints posted on Carcomplaints.com and Edmunds.com paint a strikingly similar picture:

- "The infotainment on this car really sucks. It has a mind of its own. And, to add insult to injury the whole thing froze rendering the infotainment useless. Went to the dealer to do a hard reset since there was no way in the world that everything else I could have tried worked. The Dealer informed that the infotainment is a known issue yet nothing has been done to fix it. Recently, it simply refused to shut off. This is a brand new car and having problems like these says a lot about the quality of the accessories." (complaint posted on carcomplaints.com dated December 20, 2017).

- I bought 2018 elite model in August 2018. Within two month all entertainment system stopped working. I bought this car because I have kids and I want them to have something like rear entertainment for long trip. But, no luck. Took car to dealer they install some part. Got car back. Use car only on weekend. Now display screen not turning all at all and staying blank. Took car again to dealer they install part.(had to leave with them for week because part is not in stock). Got car back again and now back to entertainment problem. Music stop playing automatically in between FM, USB,etc. Even on corner it shows phone is connected through Bluetooth. But when try to play music through phone message keep coming saying no phone connected. Had to send car again to dealer. (complaint posted on Edmunds.com dated January 3, 2019).

- "Biggest regret of our lifetime of new vehicle buying. There are so many bugs and issues, I can't even begin to list them all. Cabin Watch was the main feature for choosing Odyssey over Toyota or Chrysler. It

7

continues to glitch and stop working. It affects the DVD entertainment system which makes it hell with children. Honda say they are aware but not concerned about fixing these issues since the vehicle still drives. I can find alot of vehicles that just drive from point A to B, I paid THOUSANDS more to have extra luxury features!!" (complaint posted on Edmunds.com dated December 4, 2018).

- Got the car in November and problem started about 3 weeks after I got it. The screen does not load properly, it crashes, reboots, freezes, has error messages, sometimes the radio stays dead, sometimes its on. No hands free operation, no GPS. Honda Replaced the unit 1st week of Jan 2019 and 1st of Feb, the problem reappeared. First they thought it was caused by Car play - with the cable being faulty. The new unit - I have not connected carplay and it still occurred. To get it working - i have to exit the car lock and unlock and hopefully the start sequence will work. I think this makes the car unusable, (complaint posted on carcomplaints.com on February 1, 2019).

- "13 months with the same problem. We have taken it to several dealerships and no one can fix it. Honda is "aware" of the problem and says for us to keep waiting until they resolve the issue. We are paying extra money to have features that don't work. We didn't get a rebate since they are high demand, if people only knew...Please make sure you test the entertainment system thoroughly before you leave the dealership. Take the headphones out of the bubble wrap and the take a DVD with you." (complaint posted on Edmunds.com dated December 4, 2018).

- "We acquired the 2018 Odyssey Elite with all the options. We're very unhappy with the upgrade because the entertainment system occasionally stops working. That means the Blue Ray, Cabin Watch, everything all of the sudden shuts off. We need to stop the car, turn it off, turn it back on, and hope the system comes back to life. We brought it to the dealership immediately, and we were told this is a known problem, Honda knows about it, and there's no solution. "Check back in 90 days" is the answer we got in writing! Can you believe this?! Please save yourself headaches and buy something else. Of course the sales people at the Honda dealerships will never tell you that. This model is full of other smaller bugs, too many to list here. Looks like a car that was not fully tested before getting to market. (complaint posted on Edmunds.com dated June 4, 2018).

8

**COMPLAINT**

- This car has numerous electronic and software issues that Honda America is unable to fix. Dealers continue to sell these vehicles without disclosing the problems.… If you buy the Elite, plan on the following; Sirius XM Radio will work occasionally, Cabin Watch and park sense cameras will lock up and won't work until the car goes through a hard reset, the cabin doors will not respond to the auto open and close until a hard reset is performed, the DVD system will lock up and won't play until a hard reset is performed, the infotainment system is immature and is still being debugged by Honda Engineers, the voice command system seldom works or responds. The dealer service department will acknowledge that they can't fix the problems. We brought it back 9 times since Jan 2018-April 18 without any fixes made other than reseting which involves disconnecting the battery and waiting 15 minutes for the system to reset.… It is a Lemon Law candidate as well as a class action law suit for fraud." (complaint posted on Edmunds.com dated April 10, 2018).

- "I just bought 2018 odyssey less then 1000miles and my rear entertainment system stop working and went to dealer and find out software problem and honda cannot fix it until they have new update software so I was upset because it's not my fault honda has to replace with new RES but they are not so please before you buy make sure it works and it's not only mine there so many people having same issues....Go to Odyssey forum and you will find details." (complaint posted on Edmunds.com dated September 16, 2017).

- 2018 is redesigned model and maybe it explains why it has so many bugs… A few more issues also happen randomly while driving are: screen goes completely blank or frozen, GPS stops giving a guidance, music doesn't play from USB or creating a horrible noise, Bluetooth connection goes off (consequently phone cannot connect), anti theft system losing a power, speakers producing distorted sound." (complaint posted on Edmunds.com dated August 13, 2018).

- "We purchased the 2018 Honda Odyssey with DVD. The first time we tried it out, the DVD shut off after 10 minutes saying 'network connection lost' and wouldn't turn back on. The sound still worked, the drop-down TV just turned black. After the car had been off for a while,

9

**COMPLAINT**

it worked again, for about 10 minutes and then again said, 'network connection lost.' Every single time it overheats after 10 to 30 minutes of play and says "network connection lost." Finally, I brought it to the dealership. After keeping my car almost all day, they informed me that this was a KNOWN ISSUE that they don't have a fix for. They told me that even when they replace the DVD system it still overheats and does the same thing. They told me they would call me 'whenever they come up with a solution.' Totally unacceptable to keep selling these cars with DVD systems that don't work and no known repair. DEFECTIVE!!" (complaint posted on Edmunds.com dated April 18, 2018).

- "We purchased our 2018 Honda Odyssey Elite in July of 2017 and many of the key features still do not work. Almost every time we are on a road trip and use the Rear Entertainment System, the screen turns black and there is weeping and gnashing of teeth in the back. The CabinWatch camera often freezes or is unable to connect altogether. The hands-free voice commands/calling while connected to ApplyPlay stops working often. I have spent HOURS documenting the errors and trying to speak with HondaCare, but they closed my case until an update was available. There was an update on Wednesday and I have had issues with all three of the aforementioned problems in the past 16 hours. Keeping notes, pictures and videos of all the things wrong with my nice, EXPENSIVE, new van has been a part-time job since I purchased this vehicle. " (complaint posted on Edmunds.com dated March 23, 2018).

- "Buy at your own risk, Honda blames everything on Apple, Bluetooth skips, siri does not connect, messages I haven't seen or sent one, screen goes black and does not respond or goes blue with a loud beep while you are driving." (complaint posted on Edmunds.com dated November 29, 2017).

- "This car touts the software and technology but it is a complete rip off for the price. 5k miles in and It hardly ever works and the dealer just sends it back saying non-reproducable. I finally recorded a video to show them the problem and now they blame my Disney original DVD. Are all of my brand new DVDs bad?? Absolute nonsense!" (complaint posted on Edmunds.com dated February 25, 2018).

10

**COMPLAINT**

- "I am normally impressed with Honda's quality. However, I would not recommend buying this car if you have a family. We bought it specifically for family road trips. The Rear Entertainment System failed within a month. This made the 4 hour road trip for the solar eclipse painful!! Took it back to the dealer, they said Honda knows about the problem, but there is no fix right now. Until this is fixed, do not buy this vehicle if you have young kids." (complaint posted on Edmunds.com dated November 3, 2017).

19.    In fact, Consumer Reports has downgraded its rating on the 2018 Honda Odyssey as "No Longer Recommended" due to "much-worse-than-average reliability, with problems including the infotainment display freezing and losing all functionality."

20.    A Car and Driver review of the 2018 Honda Odyssey observed, "Our Odyssey continues to be plagued by infotainment glitches, freezes, and outright refusals to turn on (the last most often after using the standard factory remote-start feature), even after a field technician visited the van at our office and replaced the infotainment head unit under warranty at 12,800 miles."

21.    Honda's New Vehicle Limited Warranty requires it to "repair or replace any part that is defective in material or workmanship under normal use." But as countless consumers have reported, Honda has been unable to repair these defects despite being given as numerous opportunities.  In violation of this express warranty, and as evidenced by the many complaints or repeat infotainment system failures, Defendant merely replaces a defective part with another defective part.

**COMPLAINT**

22.     Due to the inherent and permanent nature of the common defect in the Covered Vehicles which cause them to fail, even after repeated replacements, Plaintiffs and the members of the Class have incurred and will continue to incur significant expenses.

23.     Additionally, because the infotainment system may fail at any time, thereby startling the driver and putting the passengers' safety at risk, the defect makes these Covered Vehicles unfit for the use for which they were intended in that they cannot be relied upon as a safe and reliable means of transport.

**Plaintiffs' Experiences with the Defect**

24.     Lesley and Tom Conti purchased a new 2018 Honda Odyssey EX-L from Great Lakes Honda in Akron, Ohio on or around June 12, 2017.

25.     The Contis experienced continuing and repeated problems with the vehicle's infotainment system from within two months of purchase.

26.     The Contis first noticed problems with the audio system in approximately August 2017.   The infotainment system displayed the message "Radio unavailable," and there was no sound from the radio, satellite radio, CD player, hands free calling, and navigation system.

27.     When Plaintiffs took the Vehicle to their dealership for an oil change on January 11, 2018, they notified the technician of the problems they had been experiencing with the infotainment system.  The service invoice states: "Cust states is still[] having issues with Audio Unit.  States is seeing radio unavailable when

12

**COMPLAINT**

using AM/FM.  Please advise remarks found bulletin for audio unit replacement. Ordered audio tuner per bulletin."

28.     Less than a month later, on February 1, 2018, Plaintiffs returned to the dealership to have the audio tuner replaced per the Honda service bulletin (Service Bulletin 17-088).

29.     Two days after the replacement, the infotainment system failed again. Later, on February 3, 2018, Lesley's February 3, 2018 text message to a technician at the dealership states that "the radio just went out completely, nothing is working." Shortly thereafter, Plaintiffs returned the Vehicle to the dealer to have the dealer again attempt to fix the infotainment system.

30.     On February 8, 2018, the dealership notified Plaintiffs as follows: "[W]e are currently waiting on a call back from Honda Tech line.  We have followed all diagnosis charts so leaning towards audio unit or even an issue with the tuner.  Just waiting for there (sic) techs to advise next steps."

31.     The next day, Plaintiffs received a text message from the technician stating: "Honda contacted us last night and requested a snap shot of the audio unit software which means they wanna see what we see in the programming.  They should contact us today but they are based on the west coast so won't be till later." When Plaintiffs picked up the Vehicle from the dealership, they were told that the whole dashboard had been removed in an effort to repair the unit.

**COMPLAINT**

32.    Despite these repair efforts, the infotainment system problems persisted.

33.    Plaintiffs took the van back in to the dealership on approximately February 12, 2018, and then again on February 22, 2018. The dealership's service invoice states: "Cust states is still having issues with the audio unit.  States still getting message radio unavailable, states are fading in and out very quickly and then just shuts off.  States has not worked for a full day since install."  The invoice further states: "Vehicle has a new tuner, new audio unit from brand new donor and OTA software update.  According to customer, vehicle is still malfunctioning.  Per DPMS and field service engineer, customer needs to keep for a few weeks and log malfunctions and report back to us to further diagnose.  Closing paperwork for now."

34.    Plaintiffs asked to speak with the dealership's service manager, who instructed Plaintiffs to start keeping a journal of the problems with the vehicle. According to Plaintiffs' journal, the vehicle experienced infotainment system problems (usually related to audio) every single day between February 28, 2018 and March 12, 2018.

35.    On March 12, 2018, Plaintiffs received a text message from the technician stating: "We have spoken to Honda on the situation not just with your vehicle but with others as well and are getting the same response which is don't replace any more parts and wait for an update.  Very frustrating I understand."

14

**COMPLAINT**

36.    The next day, Plaintiffs received a follow up text message asking them to bring the Vehicle into the dealership, which they did.   The dealer kept the Vehicle for 10 days.   The service invoice states, "Per Service Manager and DPSM Veh to be dropped off for further diag." It further states: "Replaced instrument panel wire harness, floor wire harness, and rear entertainment system control unit per previous diagnosis performed by Honda field engineer.   Radio is working consistently after testing multiple times over the court of two day[s].   No other problems found at this time."  Plaintiffs were told that an engineer from Honda flew in specifically to observe the Vehicle and personally drove the Vehicle back and forth to his hotel.

37.    Plaintiffs picked up the van on March 22, 2018.  But the infotainment system problems continued.

38.    On May 1, 2018, Plaintiffs contacted dealership about problems experienced with the infotainment system, which included crackling sounds and a non-functioning backup camera.

39.    On May 18, 2018, the Vehicle's audio functions failed and the infotainment system would not produce any sound.

40.    Around this time, Plaintiffs were informed by the dealership's service manager that these issues are happening to a lot of people.

41.    On at least two occasions since the dealership attempted to repair the defect, Lesley has been driving when the entire "infotainment" console display

15

**COMPLAINT**

turned black and became wholly inoperable.  Plaintiffs have recorded video of these failures to document them.

42.    On December 18, 2018 Plaintiffs returned the Vehicle back to the dealership and showed them the videos of the infotainment system failures.  Later that day, Plaintiffs were told that the Honda engineer had looked at the videos and determined that the blu ray player and the speedometer needed to be replaced.

43.    However, the infotainment problems continue to plague the Vehicle after the dealership many repair attempts.  As recently as March 1. 2019, the Vehicle's audio cut out and the infotainment system showed the following message: "Audio cannot be used right now."

44.    Despite providing the dealership and Honda engineers *eight attempts* to repair the infotainment system, the Vehicle's infotainment system continues to malfunction.

**Defendant's Warranties and Response to the Defect**

45.    Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "All repairs/replacements made under this warranty are free of charge."

46.    However, Defendant knew, or at least should have known, of the defects at the time of sale or lease of the Covered Vehicles.  Plaintiffs and Class

16

members, however, had no such knowledge.   The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

47.   Despite having more than adequate opportunity to successfully remedy the defect(s) in the Vehicles, Defendant has failed to do so, and has instead merely replaced defective components with defective components.

48.   Defendant concealed, and continues to conceal, the fact that the Covered Vehicles contain the defective infotainment systems. Defendant also continues to conceal the fact that the replacement components it provides in an attempt to repair the defect are equally defective.   Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

49.   Plaintiffs and the other class members reasonably relied on Defendant's warranties regarding the quality, durability and other material characteristics of their Vehicles, including but not limited to the representation that the Vehicles contained no known defects (defects known to Defendant) at the time of sale or lease.

## CLASS ACTION ALLEGATIONS

50.   Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

51.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the Class that Plaintiffs seek to represent shall be defined as follows:

**COMPLAINT**

During the fullest period allowed by law, all persons and entities nationwide that purchased or leased a Covered Vehicle manufactured by Honda.  Covered Vehicle is defined to include model years 2018 through 2019 Honda Odyssey and 2019 Honda Pilot vehicles.

Excluded from the Nationwide Class are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel.

52.    Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class Members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

53.    While the exact number of Class Members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Nationwide Class is ascertainable based upon the records maintained by Defendant and governmental officials.  Upon information and belief, Defendant sold and leased over one hundred thousand Covered Vehicles nationwide during the relevant time period, all of which have the defective infotainment systems at issue. Therefore, the Class Members are so numerous that individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

54.    Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and final injunctive relief is appropriate

18

**COMPLAINT**

respecting the Class as a whole because Defendant has acted or refused to act on grounds that generally apply to the Class, within the meaning of Fed. R. Civ. P. 23(b)(2). These common legal and factual questions include:

a) whether each Covered Vehicle was sold or leased with defective infotainment systems;

b) whether Defendant's express warranty covers the defect;

c) whether Defendant breached express warranties made to the Class Members;

d) whether Defendant breached implied warranties made to the Class Members;

e) whether Defendant replaced defective parts with defective parts;

f) whether Defendant concealed the defect; and

g) whether the Class Members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value; and

h) whether the Class Members are entitled to injunctive relief.

55. Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class Member have a Covered Vehicle with the same defective infotainments system.

**COMPLAINT**

56.     Plaintiffs will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4).   Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class Members.   Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class Members will be fairly and adequately protected.

57.     A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy.   In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant.   Further, neither Plaintiffs nor their counsel is aware of any on-going litigation concerning this controversy already begun by any of the Class Members.   It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory judgments and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast,

20

the class action procedure here will have no management difficulties.  Defendant's records and the records available publicly will easily identify the Class Members. This defect is common to all Covered Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class Members.  Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

58.    A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendant has acted or refused to act on grounds that apply generally to the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## FIRST CLAIM FOR RELIEF

### Breach of Express Warranty – Magnuson Moss Warranty Act

### (Asserted on behalf of the Nationwide Class)

59.    Plaintiffs repeat and incorporate the allegations set forth above as if fully alleged herein.

60.    The Covered Vehicles are consumer products as defined in 15 U.S.C. § 2301(1)

61.    Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

21

62.    Honda is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

63.    Honda provided Plaintiffs and Class Members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

64.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

65.    In the course of selling their Covered Vehicles, Defendant expressly warranted in its New Vehicle Limited Warranty that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "All repairs/replacements made under this warranty are free of charge."

66.    Upon information and belief, Defendant's standard warranty language is identical for all Covered Vehicles sold nationwide.

67.    Defendant did not provide at the time of sale, and has not provided since then, vehicles conforming to the express warranties.

68.    Defendant breached and continues to breach express warranties because the defective infotainment systems were present in the Covered Vehicles at the time of sale.

69.    Defendant breached and continues to breach express warranties because Defendant did not (and does not) cover the full expenses associated with

22

repairing and/or replacing the defective infotainment systems in Plaintiffs' and the Class Members' Covered Vehicles.

70.     Defendant breached and continues to breach express warranties because it merely replaces the defective components with additional defective components and is unable to successfully repair the defects in Plaintiffs' and the Class Members' Covered Vehicles, despite having had reasonable opportunities to do so.  As such, the express warranties fail their essential purpose.

71.     Defendant's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

72.     Despite the fact that the Vehicles' infotainment systems continue to fail despite being "repaired," Defendant continues to replace the defective parts with identical or substantially similar defective parts.  Thus, the defect is inherent and permanent in nature.

73.     Defendant fraudulently concealed material information from Plaintiffs and the Class regarding the existence and extent of the defects.  Defendant also fraudulently concealed the material fact that the replacement components were defective.  Therefore, any limitations imposed by Defendant as to the scope of its obligations under the express warranties to repair and adjust defective parts and/or any disclaimers in the written warranties prepared by Defendant that purport to preclude recovery by Plaintiffs or the Class Members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

**COMPLAINT**

74.    Any such limitations or exclusions have been imposed unilaterally by Defendant via adhesive, "take it or leave it" contracts with no ability by Plaintiffs or the Class Members to negotiate the substance or coverage of the warranties, and Plaintiffs and the Class Members did not have any meaningful choices of reasonably available alternative sources of supply of suitable Vehicles free of the above unconscionable conditions.

75.    Furthermore, Defendant's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Class Members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

76.    Also, as alleged herein, at the time that Defendant warranted and sold the Vehicles, it knew that the Vehicles were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs and the Class Members were therefore induced to purchase the Vehicles under false and/or fraudulent pretenses.

77.    Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that

**COMPLAINT**

Defendant simply placed defective components in the Vehicles when those Vehicles are brought in for repairs.

78.    Moreover, many of the damages flowing from the Vehicles cannot be resolved by the limited remedies contained in the express warranty as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time.   Therefore, any limitation on Plaintiffs' and the Class Members' remedies would cause the available remedy to be insufficient to make them whole.

79.    Defendant was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

80.    Plaintiffs and the Class Members have suffered damages directly and proximately caused by Defendant's breach of the express warranty and are entitled to recover damages including, but not limited to, out of pocket expenses and diminution of value.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty – Magnuson-Moss Warranty Act

### (Asserted on behalf of Nationwide Class)

81.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein

25

**COMPLAINT**

82.   Plaintiffs bring this claim on behalf of the Nationwide Class.

83.   The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301.

84.   Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

85.   Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

86.   15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

87.   Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

88.   Defendant made written and implied warranties regarding the Vehicles to Plaintiffs and Class Members within the meaning of 15 U.S.C. § 2301. Defendant provided Plaintiffs and other Class Members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

26

**COMPLAINT**

89.   Defendant breached the implied warranty of merchantability because the Vehicles were not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the Vehicles contain defects which render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

90.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

91.   Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

92.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

93.   Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its written and/or implied warranties.

27

**COMPLAINT**

## THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

### (Asserted on behalf of the Nationwide Class)

94.     Plaintiffs repeat and incorporate the allegations set forth above as if fully alleged herein.

95.     In the course of selling their Covered Vehicles, Defendant expressly warranted in its New Vehicle Limited Warranty that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "All repairs/replacements made under this warranty are free of charge."

96.     Upon information and belief, Defendant's standard warranty language is identical for all Covered Vehicles sold nationwide.

97.     Defendant did not provide at the time of sale, and has not provided since then, vehicles conforming to the express warranties.

98.     Defendant breached and continues to breach express warranties because the defective infotainment systems were present in the Covered Vehicles at the time of sale.

99.     Defendant breached and continues to breach express warranties because Defendant did not (and does not) cover the full expenses associated with repairing and/or replacing the defective infotainment systems in Plaintiffs' and the Class Members' Covered Vehicles.

28

**COMPLAINT**

100.   Defendant breached and continues to breach express warranties because it merely replaces the defective components with additional defective components and is unable to successfully repair the defects in Plaintiffs' and the Class Members' Covered Vehicles, despite having had reasonable opportunities to do so.  As such, the express warranties fail their essential purpose.

101.   Despite the fact that the Vehicles' infotainment systems continue to fail despite being "repaired," Defendant continues to replace the defective parts with identical or substantially similar defective parts.  Thus, the defect is inherent and permanent in nature.

102.   Defendant fraudulently concealed material information from Plaintiffs and the Class regarding the existence and extent of the defects.  Defendant also fraudulently concealed the material fact that the replacement components were defective.  Therefore, any limitations imposed by Defendant as to the scope of its obligations under the express warranties to repair and adjust defective parts and/or any disclaimers in the written warranties prepared by Defendant that purport to preclude recovery by Plaintiffs or the Class Members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

103.   Any such limitations or exclusions have been imposed unilaterally by Defendant via adhesive, "take it or leave it" contracts with no ability by Plaintiffs or the Class Members to negotiate the substance or coverage of the warranties, and Plaintiffs and the Class Members did not have any meaningful choices of

**COMPLAINT**

reasonably available alternative sources of supply of suitable Vehicles free of the above unconscionable conditions.

104. Furthermore, Defendant's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Class Members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

105. Also, as alleged herein, at the time that Defendant warranted and sold the Vehicles, it knew that the Vehicles were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs and the Class Members were therefore induced to purchase the Vehicles under false and/or fraudulent pretenses.

106. Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that Defendant simply placed defective components in the Vehicles when those Vehicles are brought in for repairs.

107. Moreover, many of the damages flowing from the Vehicles cannot be resolved by the limited remedies contained in the express warranty as those incidental and consequential damages have already been suffered due to

30

**COMPLAINT**

Defendant's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time.   Therefore, any limitation on Plaintiffs' and the Class Members' remedies would cause the available remedy to be insufficient to make them whole.

108.   Defendant was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

109.   Plaintiffs and the Class Members have suffered damages directly and proximately caused by Defendant's breach of the express warranty and are entitled to recover damages including, but not limited to, out of pocket expenses s and diminution of value.

## FOURTH CLAIM FOR RELIEF

**Breach of Implied Warranty of Fitness for Ordinary Use and Merchantability**

**(Asserted on behalf of Nationwide Class)**

110.   Plaintiffs repeat and incorporate the allegations set forth above, as if fully re-alleged herein.

111.   At all relevant times, Defendant marketed, sold, and distributed the Vehicles for use by Plaintiffs and Class Members and Defendant knew of the use for which the Vehicles were intended, and impliedly warranted the Vehicles to be for ordinary use.

31

**COMPLAINT**

112.   The Vehicles, when sold, were defective, unmerchantable, and unfit for ordinary use.

113.   As described throughout the Complaint, the Vehicles contain defects which render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the defective Vehicles had they known of the defects.

114.   The damages at issue arose from the reasonably anticipated use of the Vehicles.

115.   Defendant breached the implied warranties of merchantability and fitness for ordinary use when the Vehicles were sold to Plaintiffs and Class Members because the infotainment system repeatedly fails, rendering the vehicles inoperable.

116.   As a direct and proximate result of Defendant's breach of the implied warranties of merchantability and fitness for ordinary use, Plaintiffs and Class Members have suffered damage.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class Members, respectfully request judgment against Defendant as follows:

      (a) certifying the Nationwide Class;

      (b) appointing Plaintiffs and their counsel to represent the Class;

32

**COMPLAINT**

(c) ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(d) awarding compensatory, punitive, exemplary, and other recoverable damages;

(e) awarding reasonable attorney's fees and expenses;

(f) awarding pre-judgment and post-judgment interest;

(g) awarding such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury of all issues so triable.

Dated: March 22, 2019          HAGENS BERMAN SOBOL SHAPIRO LLP


*/s/ Christopher R. Pitoun*
Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
*christopherp@hbsslaw.com*

Steve W. Berman (*pro hac vice* to be filed)
Sean R. Matt (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

33

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey S. Goldenberg (*pro hac vice* to be filed)
Todd Naylor (*pro hac vice* to be filed)
GOLDENBERG SCHNEIDER, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Tel: (513) 345-8291
Fax: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

John C. Weisensell (*pro hac vice* to be filed)
NIEKAMP, WEISENSELL, MUTERSBAUGH &
MASTRANTONIO LLP
23 South Main Street, Third Floor
Akron, OH 44308
Tel: (330) 434-1000
Fax: (330) 434-1001
*jack@nwm-law.com*

*Counsel for Plaintiffs and Class*

34

**COMPLAINT**