STEVE W. BERMAN (*pro hac vice*)
SEAN R. MATT (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California  91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and Class*

[Additional Counsel listed on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LESLEY CONTI, TOM CONTI, BRANDI BISHOP, BRIGID HIRTH, MICHAEL HIRTH, MARK ANKROM, HEIDI PHAN, PETER PHAN, ANTHONY ROSSOMANDO, LAURA MOHR, LARRY SIMKIN, HARMEET GILL, YAZEED ISSA, ASHLEY PFEIFER, WILLIAM D. LAMPTON, JACOB SZAJOWITZ, MICHAELA HETZLER, MICHELLE BECKWITH, ROSS CONLEY, STEPHANIE CONLEY, EMILY DARR, PAMELA TURBERVILLE, SMRUTI PATEL, ANN MORGAN, and JULIE PEREIRA on behalf of themselves and all others similarly situated, | Case No.:  2:19-cv-2160 <br><br> **CLASS ACTION** <br><br> **SECOND AMENDED COMPLAINT** <br><br> Complaint Filed: March 22, 2019 |

1

2

                                    Plaintiffs,

3           v.

4    AMERICAN HONDA MOTOR CO.,
5    INC, a California corporation,

6                                   Defendant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     NATURE OF THIS ACTION ....................................................................... 1

II.    JURISDICTION AND VENUE .................................................................... 4

III.   PARTIES ...................................................................................................... 4

    A.   Plaintiffs ............................................................................................. 4

        1.   Alabama—Brandi Bishop ........................................................ 4

        2.   Arizona ..................................................................................... 7

            a.   Brigid and Michael Hirth ............................................... 7

            b.   Mark Ankrom ................................................................ 10

        3.   Colorado—Heidi and Peter Phan .......................................... 12

        4.   Connecticut—Anthony Rossomando ..................................... 15

        5.   Florida .................................................................................... 18

            a.   Laura Mohr ................................................................... 18

            b.   Larry Simkin ................................................................ 20

        6.   Georgia—Harmeet Gill ......................................................... 24

        7.   Illinois—Yazeed Issa ............................................................ 27

        8.   Kansas—Ashley Pfeifer ........................................................ 30

        9.   Kentucky—William D. Lampton .......................................... 33

        10.  Maryland—Jacob Szajowitz ................................................. 38

        11.  Massachusetts—Michaela Hetzler ........................................ 42

        12.  Missouri—Michelle Beckwith ............................................... 47

        13.  Ohio—Lesley and Tom Conti ............................................... 51

        14.  Oklahoma—Ross and Stephanie Conley ............................... 56

        15.  South Carolina—Emily Darr ................................................. 59

        16.  Tennessee—Pamela Turberville ............................................ 62

        17.  Texas—Smruti Patel .............................................................. 64

        18.  Virginia—Ann Morgan .......................................................... 68

19.   Washington—Julie Pereira ......................................... 71

B.   Defendant ........................................................................ 77

IV.   FACTUAL ALLEGATIONS ........................................................ 83

A.   The Honda Infotainment System ................................. 83

B.   Defendant's Failure to Fix or Disclose the Defect ................. 86

C.   Defendant's Warranties and Response to the Defect........... 113

V.   CLASS ACTION ALLEGATIONS ............................................ 114

VIOLATIONS ALLEGED ................................................................. 119

A.   Claims Brought on Behalf of the Nationwide Class................. 119

COUNT I BREACH OF EXPRESS WARRANTY— MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, *ET SEQ.*) ................................. 119

COUNT II BREACH OF IMPLIED WARRANTY— MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, *ET SEQ.*) ................................. 123

B.   Claims Brought on Behalf of the Alabama Class ................. 124

COUNT I VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1 ET SEQ.) ................................. 124

COUNT II BREACH OF EXPRESS WARRANTY (ALA. CODE § 7-2-313) ..... 125

COUNT III BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (ALA. CODE § 7-2-314)........................................ 127

C.   Claims Brought on Behalf of the Arizona Class........................ 128

COUNT I VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. § 44-1521 ET SEQ.) ........................................ 128

COUNT II BREACH OF EXPRESS WARRANTY (ARIZ. REV. STAT. § 47-2313)................................................................................................ 129

COUNT III BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ARIZ. REV. STAT. § 47-2314)........................... 131

D.   Claims Brought on Behalf of the Connecticut Class ........... 132

COUNT I VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A ET SEQ.) ....................................................................................................... 132

COUNT II BREACH OF EXPRESS WARRANTY (CONN. GEN. STAT. ANN. § 42A-2-313)........................................................................ 133

COUNT III BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (CONN. GEN. STAT. ANN. § 42A-2-314)........... 135

    E.    Claims Brought on Behalf of the Colorado Class................................ 136

COUNT I VIOLATIONS OF THE COLORADO CONSUMER PROTECTION
ACT (COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*)........................................ 136

COUNT II BREACH OF EXPRESS WARRANTY  (BASED ON
COLORADO LAW) ...................................................................... 137

COUNT III BREACH OF IMPLIED WARRANTY  (BASED ON
COLORADO LAW) ...................................................................... 139

    F.    Claims Brought on Behalf of the Florida Class .................................. 140

COUNT I VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT  (FLA. STAT. § 501.201, ET SEQ.) .............................. 140

COUNT II FRAUDULENT CONCEALMENT  (BASED ON FLORIDA
LAW)........................................................................................... 142

COUNT III BREACH OF EXPRESS WARRANTY (FLA. STAT. § 672.313) .... 145

COUNT IV BREACH OF IMPLIED WARRANTY (FLA. STAT. § 672.314) ..... 147

COUNT V UNJUST ENRICHMENT (BASED ON FLORIDA LAW) ................. 149

    G.    Claims Brought on Behalf of the Georgia Class................................. 149

COUNT I VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES
ACT .......................................................................................... 149

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 151

COUNT III BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (GA. CODE. ANN. §§ 11-2-314 AND 11-2A-
212)............................................................................................. 153

    H.    Claims Brought on Behalf of the Illinois Class .................................. 154

COUNT I VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET SEQ.*
AND 720 ILCS 295/1A) ............................................................ 154

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 155

COUNT III BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (810 ILL. COMP. STAT. §§ 5/2-314 AND
5/2A-212) ................................................................................... 156

    I.    Claims Brought on Behalf of the Kansas Class ................................. 157

COUNT I VIOLATION OF THE KANSAS CONSUMER PROTECTION
ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*) ............................... 157

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 159

COUNT III BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (KAN. STAT. §§ 84-2-314 AND 84-2A-212) ....... 161

    J.     Claims Brought on Behalf of the Kentucky Class .............................. 162

COUNT I VIOLATION OF THE KENTUCKY CONSUMER PROTECTION
    ACT (KY. REV. STAT. § 367.110, *ET SEQ.*) ................................ 162

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 165

    K.    Claims Brought on Behalf of the Maryland Class .............................. 167

COUNT I VIOLATIONS OF THE MARYLAND CONSUMER
    PROTECTION ACT (MD. CODE COM. LAW § 13-101, ET SEQ.) .......... 167

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 169

COUNT III BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (**MD. CODE COM. LAW § 2-314**) ..................... 171

    L.     Claims Brought on Behalf of the Massachusetts Class ....................... 172

COUNT I VIOLATIONS OF THE MASSACHUSETTS CONSUMER
    PROTECT ACT ................................................................................. 172

COUNT II BREACH OF EXPRESS WARRANTY (MASS. GEN. LAWS CH.
    106, § 2-313) ................................................................................ 173

COUNT III BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MASS. GEN. LAWS CH. 106, § 2-314) .............. 175

    M.    Claims Brought on Behalf of the Missouri Class ............................... 176

COUNT I VIOLATION OF THE MISSOURI MERCHANDISING
    PRACTICES ACT (MO. REV. STAT. § 407.010 *ET SEQ.*) ...................... 176

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 177

COUNT III BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MO. REV. STAT. § 400.2-314) ........................... 179

    N.     Claims Brought on Behalf of the Ohio Class ..................................... 180

COUNT I VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT
    (OHIO REV. CODE §§ 1345.01, *ET SEQ.*) .................................... 180

COUNT II BREACH OF EXPRESS WARRANTY (OHIO REV. CODE
    § 1302.26) ..................................................................................... 182

COUNT III BREACH OF IMPLIED WARRANTY IN TORT (BASED ON
    OHIO LAW) ................................................................................... 184

    O.     Claims Brought on Behalf of the Oklahoma Class ............................ 185

COUNT I VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT (OKLA. STAT. TIT. 15 § 751, *ET SEQ.*) .................................................... 185

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 188

COUNT III BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (12A OKLA. STAT. ANN. § 2-314) ..................... 190

     P.      Claims Brought on Behalf of the South Carolina Class ..................... 191

COUNT I VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET SEQ.*) ....................... 191

COUNT II BREACH OF EXPRESS WARRANTY ................................................ 192

COUNT III BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (S.C. CODE §§ 36-2-314 AND 36-2A-212) .......... 194

     Q.      Claims Brought on Behalf of the Tennessee Class ............................. 195

COUNT I VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (TENN. CODE ANN. § 47-18-101, *ET SEQ.*) ............................. 195

COUNT II BREACH OF EXPRESS WARRANTY (BASED ON TENNESSEE LAW) ....................................................................................................... 196

     R.      Claims Brought on Behalf of the Texas Class .................................... 198

COUNT I VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*) ........................... 198

COUNT II BREACH OF EXPRESS WARRANTY  (TEX. BUS. & COM. CODE § 2.313) ........................................................................................ 201

COUNT III BREACH OF IMPLIED WARRANTY  (BASED ON TEXAS LAW) ....................................................................................................... 204

     S.      Claims Brought on Behalf of the Virginia Class ................................ 205

COUNT I VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*) ........................................... 205

COUNT II BREACH OF EXPRESS WARRANTY (VA. CODE ANN. § 8.2-313) ......................................................................................................... 206

COUNT III BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (VA. CODE ANN. § 8.2-314) ................................ 208

     T.      Claims Brought on Behalf of the Washington Class ........................... 209

COUNT I VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*) ....................................................................................................... 209

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT II BREACH OF EXPRESS WARRANTY (REV. CODE WASH.
§ 62A.2-313)............................................................................................. 210

COUNT III BREACH OF IMPLIED WARRANTY ................................................ 212

PRAYER FOR RELIEF ........................................................................................ 214

JURY DEMAND .................................................................................................... 214

All allegations made in this Amended Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Amended Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.    NATURE OF THIS ACTION

1.    Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide[1] who purchased or leased a 2018-2019 Honda Odyssey vehicle, 2019 Honda Pilot, or 2019 Honda Passport ("Vehicles" or "Defective Vehicles") manufactured by defendant American Honda Motor Co., Inc. ("Honda" or "Defendant").

2.    The defect at issue in this case relates to what is known in the automobile industry as an "infotainment system." Such systems are designed to attract buyers who want to manage available technology while on the road, while minimizing distractions and maximizing safety. The infotainment system found in the Defective Vehicles is no different.

3.    All Vehicles' infotainment system consists of a minimum of two LCD screens: (1) a primary touch screen located in the center console; and (2) a screen located above the steering wheel that functions as a digital speedometer/odometer, and displays other information as well (e.g., remaining fuel, current song, turn-by-turn directions). Certain upgraded Odyssey and Pilot models have a third screen, marketed as the "Rear Entertainment System" (or "RES"), that folds down from the top of the vehicle's cabin and can be used by back seat passengers via a Honda-provided remote control to watch

---

[1] For purposes of this Complaint, "nationwide" refers to the following states: Alabama, Arizona, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Kentucky, Maryland, Massachusetts, Missouri, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and Washington.

DVDs and interact with various applications.  The RES adds approximately $1,000 to the cost of the Vehicle.

4.     Honda first introduced this iteration of its infotainment system—which replaced the so-called "HondaLink system"—in 2018 Odyssey vehicles, and later to 2019 Pilot and 2019 Passport vehicles.  Notwithstanding superficial variation between models, these infotainment systems are the same.

5.     The screens are the gateway between the user and the vehicle's safety, navigation, communications, entertainment, and climate control features.  Among other operations, the Vehicles' infotainment system allows the vehicle owner to operate the audio systems in the vehicle (including the radio); use the GPS navigation technology; control the Vehicles' climate systems; operate the backup camera and CabinWatch rear seat monitor;[2] and operate a Bluetooth-enabled mobile telephone or other device (including Apple devices through the CarPlay application[3]).  The infotainment system's primary display is similar to a tablet, and features a high definition, user-customizable interface.

6.     Honda manufactured, tested, warranted, advertised, distributed, sold, and leased the Defective Vehicles, which contain a defective infotainment system that causes many of the Vehicles' features (e.g., the navigation system, rear-entertainment system, audio system, backup camera, CabinWatch system) to malfunction.   As documented by widespread consumer complaints, this defect has plagued the infotainment system since its launch.

---

[2] The CabinWatch rear seat monitor is a feature available in certain Odyssey models (or "trims") that allows front seat occupants to monitor the 2nd and 3rd row passengers on the primary LCD screen via a ceiling-mounted camera.

[3] Apple CarPlay is a software application compatible with many manufacturers' infotainment systems, including the infotainment systems found in the Defective Vehicles.  It enables an infotainment system to act as a controller for Apple devices, and provides access to other Apple-specific applications (including music, messaging, maps, and podcasts, among others), as well as other third-party applications.

7. As a result of the defect, the Vehicles' infotainment systems frequently freeze or crash, in which case no features connected to system are operational, including the navigation technology, the radio, and the rearview camera. These problems pose a safety risk because when the system malfunctions, unexpected audio or video – or a blank or blue infotainment screen – can cause the driver to become distracted. Indeed, even under the best of conditions when infotainment-type systems are working properly, using them can create dangerous distractions. *See*, *e.g.*, Strayer, D. L., Cooper, J. M., Turrill, J., Coleman, J. R., & Hopman, R. J.. *Measuring Cognitive Distraction in the Automobile III: A Comparison of Ten 2015 In-Vehicle Information Systems*. Washington, DC: AAA Foundation for Traffic Safety (2015) (found at https://pdfs.semanticscholar.org/7bc7/04c103b3eb5b84aa90d1509472bf222b862c.pdf) . The chance of distraction is magnified when the systems do not work properly. The defect can also render safety-related systems (including backup camera functions) to fail.

8. From standard industry pre-launch testing, Honda knew of the defect before marketing the Vehicles in 2018. Further, Honda knew of the defect immediately after the release of the Vehicles, based on the numerous customer complaints it received, and yet continued to market the Vehicles. In spite of these issues, Honda not only installed the same defective in 2019 Odyssey vehicles, but incorporated it into the 2019 Pilot and 2019 Passport as well. Honda's failure to disclose the infotainment systems defects—either directly to consumers or through its dealers, which are Honda's agents—was material to each and every Plaintiff and member of the putative classes.

9. Under the Vehicles' New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."[4] The infotainment systems in the Defective Vehicles, which share identical

---

[4] A true and correct copy of the New Vehicle Limited Warranty is available at https://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty _Basebook_AWL05251_FINAL.pdf;

infotainment system technology, are defective in material or workmanship under normal use.

10.     Honda has not found a solution to the infotainment system defect.  Instead, Honda simply replaces defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.   Honda has acknowledged in communications to its dealer network that a defect in the infotainment systems exists and that Honda does not yet have a fix.

11.     Accordingly, Plaintiffs bring this action for violation of relevant state consumer protection acts and for breach of express and implied warranties on behalf of state classes of Vehicle lessees and owners.  Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## II.     JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

13.     Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant is a resident of Torrance, California, which is located in this district.

## III.     PARTIES

**A.     Plaintiffs**

**1.     Alabama—Brandi Bishop**

14.     Plaintiff Brandi Bishop resides in and is a citizen of Lineville, Alabama.

15.     Plaintiff Bishop purchased a new 2018 Honda Odyssey Elite on October 10, 2017, from Serra Honda, an authorized Honda dealership located in Sylacauga,

---

https://owners.honda.com/Documentum/Warranty/Handbooks/2019_Honda_Warranty_Basebook_AWL07531_Petrol_Hybrid_PHEV__SIS.pdf.

SECOND AMENDED COMPLAINT          - 4 -
010811-11/1205802 V1

Alabama.  Prior to purchasing the Odyssey, Plaintiff Bishop researched the features and benefits of the Odyssey on Honda's website.  Plaintiff Bishop also test drove the Odyssey and interacted with the dealership's salesperson prior to purchasing the vehicle.

16.     Plaintiff Bishop purchased and continues to own the 2018 Honda Odyssey Elite.  Unknown to Plaintiff Bishop at the time she purchased the vehicle, the Odyssey suffered from (and continues to suffer from) a defective infotainment system, which has caused attempted repairs, overpayment, and diminished value of the Odyssey.  Plaintiff was also deprived of the benefit of her bargain.  Honda knew about this defect at the time Plaintiff Bishop purchased the vehicle but did not disclose it to her.  Thus, Plaintiff Bishop purchased the Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

17.     Plaintiff Bishop selected and ultimately purchased her Odyssey Elite, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda—indeed, Plaintiff Bishop chose to purchase the Elite trim solely because of the CabinWatch feature.  Before her purchase, Plaintiff Bishop researched the vehicle online, reviewing the features, specifications, and benefits of the Odyssey Elite as described by Honda, including the benefits of the infotainment system, on Honda's website.  The features of the vehicle's infotainment system were further reviewed and described by the salesperson at the dealership and during the test drive prior to purchase.  While at the dealership, Plaintiff Bishop and her husband also received, and reviewed, a Honda-branded brochure describing the 2018 Odyssey.

18.     None of Honda's advertisements or marketing information reviewed by Plaintiff Bishop, nor any of the representations received by Plaintiff Bishop from the Honda dealership prior to the purchase, contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in her vehicle suffered from numerous defects which would prevent the full use of the vehicle

as advertised and pose safety risks, Plaintiff Bishop would not have purchased the Odyssey with the infotainment system, or would have paid less for the vehicle.

19. Plaintiff Bishop began experiencing problems with her Odyssey's infotainment system within a week of purchase, when the system as a whole crashed and froze during a drive to a nearby pumpkin patch. Although Plaintiff Bishop subsequently left a voicemail with Serra Honda complaining about the problem, no dealership employee responded. Approximately one month later, during a service visit related to her vehicle's doors, Plaintiff Bishop again mentioned her problem with the vehicle's infotainment system and asked that it be addressed. A Serra Honda representative later called Plaintiff Bishop to explain that it was a "known problem" and that Honda was unable to fix it.

20. Since that time, the problems Plaintiff Bishop has had with the infotainment system are so frequent and pervasive that she is not able to determine the precise dates she has experienced such problems. Indeed, on some days, the system will crash five or six separate times. On these occasions, when the CabinWatch feature is in use, the central display screen will display the message "Camera system problem image cannot be displayed," and freeze. The DVD player will freeze at the same time, and the Bluetooth system will make crackling and/or popping sounds. Generally, to reboot the system after one of these crashes, Plaintiff Bishop (or her husband) must turn the vehicle off, wait for approximately fifteen minutes, then turn the vehicle back on. Sometimes, the problem will re-occur within minutes. In addition to these frequent crashes, Plaintiff Bishop has had other problems. The Apple CarPlay application in the vehicle has never worked; when opened, it displays a loading screen indefinitely. Furthermore, the Bluetooth system frequently fails to recognize voice commands.

21. The defects described above constantly create substantial distractions that can result in dangerous driving conditions, creating safety hazards.

22.     Plaintiff Bishop has repeatedly sought to have the problems with her infotainment system fixed, to no avail.  In addition to the communications with Serra Honda described above, Plaintiff Bishop has also brought her vehicle Sunny King Honda in Anniston, Alabama, for service.  When Plaintiff Bishop has asked Sunny King personnel about the issues with her infotainment system, she has been told that the problem is known to Honda and that there is nothing the dealership is able to do to help her.  Plaintiff Bishop also opened a case with Honda directly approximately four months after purchase, in early 2018.  When Plaintiff Bishop has described her problems to Honda personnel, she has been told that Honda is "working on" these issues.  Eventually, Plaintiff Bishop became so frustrated with Honda's failure to respond that she stopped inquiring as to the status of a fix.

23.     As of this date, Plaintiff Bishop continues to experience the problems described above with the infotainment system in her Odyssey.

24.     Plaintiff Bishop has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of her vehicle.

25.     Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Bishop of the existence of the infotainment system's defects prior to purchasing the vehicle.

**2.     Arizona**

**a.     Brigid and Michael Hirth**

26.     Plaintiffs Brigid and Michael Hirth (the "Hirths") reside in and are citizens of Mesa, Arizona.

27.     The Hirths purchased a new 2018 Honda Odyssey Elite on July 11, 2018 from AutoNation Honda, an authorized Honda dealership located in Chandler, Arizona.  Prior to purchasing the Odyssey, the Hirths researched the features and benefits of the Odyssey on Honda's website, and were exposed to Honda's omissions through

SECOND AMENDED COMPLAINT                     - 7 -

AutoNation, Honda's agent.  The Hirths also test drove the Odyssey and interacted with the dealership's salesperson prior to purchasing the vehicle.

28.    The Hirths purchased and continue to own the 2018 Honda Odyssey Elite. Unknown to the Hirths at the time they purchased the vehicle, the Odyssey suffers from a defective infotainment system, which has caused attempted repairs, overpayment, and diminished value of the Odyssey.  Plaintiffs were also deprived of the benefit of the bargain.  Honda knew about this defect at the time the Hirths purchased the vehicle but did not disclose it to them.  Thus, the Hirths purchased the Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

29.    The Hirths selected and ultimately purchased their Odyssey Elite because, in part, of the features of the infotainment system, as represented through advertisements and representations made by Honda. Specifically, prior to their purchase, the Hirths researched the Odyssey extensively, comparing it with similar vehicles like the Toyota Sienna, and the infotainment system (including the CabinWatch feature) was ultimately the single most important variable affecting their purchase—because of features like the entertainment system, Apple CarPlay/phone integration, CabinWatch, CabinTalk, and the backup camera, many of which were appealing for safety reasons.  The Hirths researched the van and its amenities on various websites, including TrueCar.com, Edmunds, and Honda's website, and reviewed Honda promotional materials—including a brochure for the Odyssey—at the dealership prior to purchase.  The features of the vehicle's infotainment system were further reviewed and described by the salesperson at the dealership and during the test drive prior to purchase.  At the time of purchase, a salesperson also spent a significant amount of time setting up the infotainment system for the Hirths.

30.    None of Honda's advertisements or marketing information reviewed by the Hirths, nor any of the representations received by them from the Honda dealership prior

to the purchase, contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in their vehicle suffered from numerous defects which would prevent the full use of the vehicle as advertised and pose safety risks, the Hirths would not have purchased the Odyssey with the infotainment system, or would have paid less for the vehicle.

31.   The Hirths' problems with their infotainment system began in the spring of 2019, when the system began freezing and crashing unexpectedly—thus disabling all associated features (e.g., audio, CabinWatch).  Sometimes, by turning their car off and on again, the Hirths were able to restart the infotainment system; other times, however, the system would remain non-functional.  When the frequency of these failures increased in August 2019, the Hearths began documenting them.

32.   On August 21, the Hirths brought their vehicle to AutoNation for service related to their infotainment problems.  During that visit, AutoNation personnel told the Hearths that their infotainment problems were an issue known to Honda, and that there was nothing they could do until Honda released a software update in "a couple of months."

33.   Following this visit, Mrs. Hirth called AutoNation to complain, explaining that, based on her online research, it appeared that her problems were known to Honda but never disclosed at the time of sale.  A customer service representative responded that the dealership was not aware of the problem until a few months earlier, and was being directed by Honda to have affected people call Honda's customer complaint line.

34.   Following this conversation, Mrs. Hirth left a voicemail for AutoNation's general manager, requesting a conversation during which the Hirths could explain their concerns with the infotainment system, and discuss why the dealership failed to inform them of these issues prior to purchase.  The Hirths have yet to receive a response.

35.   As of this date, the Hirths continue to experience problems with the infotainment system in their Odyssey.  Most recently, on October 24, 2019, the

SECOND AMENDED COMPLAINT          - 9 -
010811-11/1205802 V1

infotainment system's screen turned black when Mrs. Hirth turned the vehicle on, and would not respond when she pressed the on/off button.

36.     The Hirths have suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of her vehicle.

37.     Neither Honda nor any of its agents, dealers, or other representatives informed the Hirths of the existence of the infotainment system's defects prior to purchasing the vehicle.

### b.     Mark Ankrom

38.     Plaintiff Mark Ankrom resides in and is a citizen of Chandler, Arizona.

39.     Plaintiff Ankrom purchased a new 2019 Honda Passport Elite on May 1, 2019, from Earnhardt Honda, an authorized Honda dealership located in Avondale, Arizona.  Before buying his vehicle, Plaintiff Ankrom researched the features and benefits of the Passport on Honda's website.  Plaintiff Ankrom also test drove the Passport and interacted with the dealership's salesperson prior to purchasing the vehicle.

40.     Plaintiff Ankrom continues to own his 2019 Passport.  Unknown to Plaintiff Ankrom at the time he purchased the vehicle, the Passport suffered from (and continues to suffer from) a defective infotainment system, which has caused attempted repairs, overpayment, and diminished value of the Passport.  Plaintiff was also deprived of the benefit of his bargain.  Honda knew about this defect at the time Plaintiff Ankrom purchased the vehicle but did not disclose it to him.  Thus, Plaintiff Ankrom purchased the Passport on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.  Indeed, at the time he bought his Passport, Plaintiff Ankrom had owned a Honda Ridgeline for approximately twelve years, and considered himself a loyal Honda customer.

41.     Plaintiff Ankrom selected and ultimately purchased his Passport, in part, because of the features of the infotainment system, as represented through

advertisements and representations made by Honda.  Specifically, prior to his purchase, Plaintiff Ankrom researched the vehicle online where, among other things, he used the Honda website's "build-a-vehicle" many times to compare options, prices, and models. While shopping for his vehicle, Plaintiff Ankrom also visited a separate Honda dealership near his home, where he received advertising and promotional materials for the 2019 Passport.  The features of the vehicle's infotainment system were further reviewed and described by the salesperson at Earnhardt Honda and during the test drive prior to purchase.

42.   None of Honda's advertisements or marketing information reviewed by Plaintiff Ankrom, nor any of the representations received by Plaintiff Ankrom from the Honda dealership prior to the purchase, contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent the full use of the vehicle as advertised and pose safety risks, Plaintiff Ankrom would not have purchased the Passport with the infotainment system, or would have paid less for the vehicle.

43.   Plaintiff Ankrom began having problems with his Passport's infotainment system not long after he purchased it in May of 2019, when the infotainment screen began displaying various error messages (e.g., "No audio connect," "Cabin control has stopped," "Check tuner").  On these occasions, the vehicle's audio system also stops working—thus disabling all related functions, like AM/FM/Sirius radio, voice commands, Bluetooth, and music—and will not begin functioning again unless Plaintiff Ankrom turns off his vehicle, waits for approximately 7-8 minutes, then turns it on again.  At first, Plaintiff Ankrom attributed this recurrent problem to something he was doing, rather than to a defect with his vehicle.  But soon, it began happening every day.

44.   On two occasions, the infotainment system in Plaintiff Ankrom's vehicle has frozen completely, thus disabling the system as a whole (and all associated features). During one of these incidents, Plaintiff Ankrom was only able to restore the system's

functionality by turning off his vehicle twice—once for approximately 7-8 minutes, which failed to resolve the problem, and then again for approximately ten minutes, at which point the infotainment system rebooted.   Even then, however, it took approximately twenty minutes for the system to load and regain functionality.

45.   Plaintiff Ankrom brought his vehicle to Earnhardt Honda on August 19, 2019, for service related to his infotainment system.  The dealership worked on Plaintiff Ankrom's vehicle for six weeks.  When Plaintiff Ankrom returned to pick up his vehicle on October 4, 2019, dealership employees told him that they had traced his problem to a defective amplifier, and that this part had been replaced.

46.   But within a week, Plaintiff Ankrom began having the same problems described above.   To date, the audio system in Plaintiff Ankrom's Passport has frozen four additional times.

47.   Plaintiff Ankrom has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of his vehicle.

48.   Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Ankrom of the existence of the infotainment system's defects prior to purchasing the vehicle.

**3.   Colorado—Heidi and Peter Phan**

49.   Plaintiffs Heidi and Peter Phan reside in and are citizens of Highlands Ranch, Colorado.

50.   Heidi and Peter Phan purchased a new 2019 Honda Odyssey Elite on September 20, 2018 from Kuni Honda, an authorized Honda dealership located in Highlands Ranch, Colorado.  Prior to purchasing the Odyssey, the Phans researched the features and benefits of the Odyssey on Honda's website.  The Phans also viewed videos on Youtube that demonstrated how many of the infotainment system's features

functioned, and the Phans test drove the Odyssey and interacted with the dealership's salesperson prior to purchasing the vehicle.

51.     The Phans also considered the Toyota Sienna prior to purchasing the Odyssey.  However, the Toyota Sienna did not offer a feature similar to "CabinWatch," which Honda offered.  The Sienna also did not appear to have an infotainment system that touted the latest technology, as Honda did.  The CabinWatch rear seat monitor is a feature available in certain Odyssey models (or "trims") that allows front seat occupants to monitor the second and third row passengers on the primary LCD screen via a ceiling-mounted camera.  The CabinWatch feature of the infotainment system was extremely important to the Phans and was a major factor in their decision to purchase the Odyssey because the Phans have two young children (ages 3.5 years old and 10 months old) who are often transported in the Odyssey.  Heidi also transports her sister's young children and her sister-in-law's young children in the Odyssey.  The CabinWatch feature, if functioning properly, permits the Phans to monitor the status of the children and their activities in the second and third rows.  Accordingly, based upon the above described interactions and communications, the Phans were exposed to Honda's omissions in the state of Colorado and made their purchase decision in Colorado.

52.     The Phans purchased and continue to own the 2019 Honda Odyssey Elite. Unknown to the Phans at the time they purchased the vehicle, the Odyssey suffered from (and continues to suffer from) a defective infotainment system, which has caused attempted repairs, overpayment, and diminished value of the Odyssey.  Plaintiffs were also deprived of the benefit of their bargain.  Honda knew about this defect at the time the Phans purchased the vehicle but did not disclose it to them.  Thus, the Phans purchased the Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

53.     The Phans selected and ultimately purchased their Odyssey Elite, in part, because of the features of the infotainment system, as represented through

SECOND AMENDED COMPLAINT                       - 13 -
010811-11/1205802 V1

advertisements and representations made by Honda. Specifically, prior to their purchase, the Phans researched the vehicle online, reviewing the features, specifications, and benefits of the Odyssey Elite as described by Honda, including the benefits of the infotainment system. The features of the vehicle's infotainment system were further reviewed and described by the salesperson at the dealership and during the test drive prior to purchase. The fact that the 2019 Odyssey Elite contained the supposedly advanced infotainment system with the latest technology and fully functional CabinWatch feature was one of the main reasons the Phans chose to purchase the Odyssey. None of Honda's advertisements or marketing information reviewed by the Phans nor any of the representations received by the Phans from the Honda dealership prior to the purchase contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in their vehicle suffered from numerous defects which would prevent the full use of the vehicle as advertised and pose safety risks, the Phans would not have purchased the Odyssey with the infotainment system, or would have paid less for the vehicle.

54.     The Phans began experiencing problems with their Odyssey's infotainment system soon after the purchase. For example, the CabinWatch system initially functions for two or three minutes (actually projecting real time video of the children in the second and third rows on the main infotainment screen) but then malfunctions and freezes – projecting an outdated video of the status in the second and third rows. This defect occurs routinely – nearly every time CabinWatch is used. The CabinWatch system will operate for two or three minutes then it malfunctions and freezes. Thus, this safety feature (represented by Honda as an easy and safe way to monitor the activities of young children without having to turn around) is dysfunctional, requiring the Phans to turn around to check on the status of the children being transported. The Phans also experience regular and reoccurring malfunctions with the infotainment system's backup camera function. Approximately 30% of the time, the system will freeze and is

SECOND AMENDED COMPLAINT                    - 14 -
010811-11/1205802 V1

essentially useless.  Since the date of purchase of their Odyssey, the problems the Phans have (and continue to experience) with the infotainment system are so frequent and pervasive that they are not able to determine the precise dates they have experienced such problems.  The defects described above constantly create substantial distractions which can result in dangerous driving conditions creating safety hazards.

55.    To date, no Kuni Honda dealership employee has notified the Phans of an update to or fix for their vehicle's infotainment system, nor have the Phans received any other notification from Honda about any potential permanent repair or aftermarket modification that would cure the defects they have experienced.  The Phans took their Odyssey back to the Kuni Honda dealership in November 2018, complaining of the defects described above.  The dealership technician explained that they could not replicate any of the problems so the dealership could not, and did not, attempt any repair.  The defects persisted after this November 2018 repair attempt.  When the Phans contacted the Kuni Honda dealership a second time to address the defects, no one from the dealership called back to schedule a service or to inform the Phans as to how to remedy the defects.

56.    As of this date, the Phans continue to experience the problems described above with the infotainment system in their Odyssey.

57.    The Phans have suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of their vehicle.

58.    Neither Honda nor any of its agents, dealers, or other representatives informed the Phans of the existence of the infotainment system's defects prior to purchasing the vehicle.

**4.    Connecticut—Anthony Rossomando**

59.    Plaintiff Anthony Rossomando resides in and is a citizen of Quaker Hill, Connecticut.

60.   Plaintiff Rossomando leased a new 2019 Honda Pilot on June 11, 2019, from Cardinal Honda, an authorized Honda dealership located in Groton, Connecticut. Prior to leasing the Pilot, Plaintiff Rossomando researched the features and benefits of the Pilot on Honda's website, as well as on websites like Autotrader.   Plaintiff Rossomando also test drove the Pilot and interacted with the dealership's salesperson prior to leasing the vehicle.

61.   Plaintiff Rossomando continues to lease his 2019 Pilot.   Unknown to Plaintiff Rossomando at the time he leased the vehicle, the Pilot suffered from (and continues to suffer from) a defective infotainment system, which has caused attempted repairs, overpayment, and diminished value of the Pilot.  Plaintiff was also deprived of the benefit of his bargain.   Honda knew about this defect at the time Plaintiff Rossomando leased the vehicle but did not disclose it to him.   Thus, Plaintiff Rossomando leased the Pilot on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

62.   Plaintiff Rossomando selected and ultimately leased his Pilot, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  The infotainment system was a selling point of the vehicle, which distinguished it from competing models and makes (like the Toyota Highlander) that Plaintiff Rossomando was considering.  Plaintiff Rossomando also chose to upgrade his Pilot's trim specifically for the Rear Entertainment System, which is only available on higher-end models.  When Plaintiff Rossomando leased the vehicle, a Cardinal Honda employee walked him through the use of the infotainment system, including use of the Bluetooth and Carplay systems.

63.   Prior to his lease, Plaintiff Rossomando researched the vehicle online (including on Honda's website), reviewing the features, specifications, and benefits of the Pilot as described by Honda, including the benefits of the infotainment system.  The features of the vehicle's infotainment system were further reviewed and described by

the salesperson at the dealership and during the test drive prior to lease.  None of Honda's advertisements or marketing information reviewed by Plaintiff Rossomando nor any of the representations received by Plaintiff Rossomando from the Honda dealership prior to the lease contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent the full use of the vehicle as advertised and pose safety risks, Plaintiff Rossomando would not have leased the Pilot with the infotainment system, or would have paid less to lease the vehicle.

64.    Plaintiff Rossomando began having problems with his Pilot's infotainment system in October 2019.  On several occasions, the infotainment system in the vehicle has made a static noise, then frozen, thus disabling all related features (e.g., music, Bluetooth, radio, Apple Carplay).  On these occasions, Plaintiff Rossomando has not been able to reboot the system by turning the vehicle off—instead, the infotainment screen stays on (thus threatening to drain the car's battery) until Plaintiff Rossomando pulls the fuse.

65.    On October 21, 2019, Plaintiff Rossomando brought his vehicle to Cardinal Honda for service related to his problems with the infotainment system.  When Plaintiff Rossomando returned to pick up his vehicle later that day, he was told by dealership personnel that they were unable to recreate the problem, but performed a factory reset. They also told Plaintiff Rossomando to return if his problems continue.

66.    Plaintiff Rossomando has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of his vehicle.

67.    Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Rossomando of the existence of the infotainment system's defects prior to leasing the vehicle.

**5.    Florida**

      **a.    Laura Mohr**

68.    Plaintiff Laura Mohr resides in and is a citizen of Clermont, Florida.

69.    Plaintiff Mohr purchased a used 2019 Honda Pilot on June 9, 2019, from Fountain Acura, an authorized Honda dealership located in Orlando, Florida.  Prior to purchasing the Pilot, Plaintiff Mohr researched the features and benefits of the Pilot on Honda's website.  Plaintiff Mohr also test drove the Pilot and interacted with the dealership's salesperson prior to purchasing the vehicle.  At the time Plaintiff Mohr purchased her vehicle, it had approximately 6,538 miles.

70.    Plaintiff Mohr purchased and continues to own the 2019 Honda Pilot. Unknown to Plaintiff Mohr at the time she purchased the vehicle, the Pilot suffered from (and continues to suffer from) a defective infotainment system, which has caused attempted repairs, overpayment, and diminished value of the Pilot.  Plaintiff was also deprived of the benefit of her bargain.  Honda knew about this defect at the time Plaintiff Mohr purchased the vehicle but did not disclose it to her.  Thus, Plaintiff Mohr purchased the Pilot on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

71.    Plaintiff Mohr selected and ultimately purchased her Pilot, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Before buying the car, Plaintiff Mohr and her husband spent several months researching and comparing family-sized SUVs, and the infotainment system was an important selling point of the 2019 Pilot.

72.    Specifically, prior to her purchase, Plaintiff Mohr researched the 2019 Pilot extensively online, reviewing the features, specifications, and benefits of the Pilot as described by Honda, including the benefits of the infotainment system, both on Honda's website and others.  Plaintiff Mohr also visited a nearby Honda dealership multiple times, where she inspected the 2019 Pilot and test drove it.  During these test drives, a

Honda dealership employee "sold" Plaintiff Mohr on the infotainment system's features, including the rear DVD player and various safety features. Indeed, the infotainment system was one of the most significant differences between the Pilot and the other cars Plaintiff Mohr was interested in. In addition, the salesperson at Fountain Acura who later sold Plaintiff Mohr her vehicle also told her how well-suited the system was for children, but did not mention any problems with the vehicle.

73.     None of Honda's advertisements or marketing information reviewed by Plaintiff Mohr, nor any of the representations received by Plaintiff Mohr from the dealership prior to the purchase, contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in her vehicle suffered from numerous defects which would prevent the full use of the vehicle as advertised and pose safety risks, Plaintiff Mohr would not have purchased the Pilot with the infotainment system, or would have paid less for the vehicle.

74.     Plaintiff Mohr began experiencing problems with her Pilot's infotainment system six days after she purchased the vehicle in June 2019, when the infotainment system froze (thus disabling all associated features, including the backup camera, Bluetooth, and Carplay) three times over the course of a week—and would not restart or reboot, even when the vehicle was turned on and off.

75.     The failures took place during a trip Plaintiff Mohr and her husband took to Ohio approximately one week after purchasing the vehicle. The system first failed on the drive from Florida to Ohio. As noted above, Plaintiff Mohr was unable to get the system to reset even after shutting the car. Plaintiff Mohr's husband researched the problem on the internet and discovered that other people had experienced it as well. A YouTube video ultimately showed him how to reset the system by pulling the fuses out of the car.

76.     Not long after these incidents, Plaintiff Mohr returned her vehicle to Fountain Acura for service. After Plaintiff Mohr dropped the vehicle off, dealership

employees contacted her to explain that they could not reproduce the problem.  Two days later, the dealership called Plaintiff Mohr again and asked her for a description of what had happened.  Not long afterwards, the dealership called Plaintiff Mohr a third time to explain that hers was a "known problem," and that they could not address it. When Plaintiff Mohr complained, dealership personnel called her once more to explain that her problems are attributable to Honda, and that they were incapable of fixing them.

77.     Since that time, the defect with Plaintiff Mohr's vehicle has manifested in new, increasingly frequent, and still more dangerous ways.  Almost every day that Plaintiff Mohr drives the vehicle, the audio system makes a constant, distracting noise (a "ticking," "snapping," and/or "popping" sound).  In addition, approximately one or two times a week, both the infotainment system and the digital dashboard shut off— thus disabling not only important safety features like the backup camera, but also preventing Plaintiff Mohr from knowing how fast she is driving.  These dashboard shut-downs usually last for between thirty seconds and one minute.  Sometimes, they happen multiple times in a row.

78.     As of this date, Plaintiff Mohr continues to experience the problems described above with the infotainment system in her Pilot.

79.     Plaintiff Mohr has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of her vehicle.

80.     Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Mohr of the existence of the infotainment system's defects prior to purchasing the vehicle.

**b.     Larry Simkin**

81.     Plaintiff Larry Simkin resides in Tampa, Florida.

82.     Plaintiff Simkin purchased a new 2018 Honda Odyssey Elite in October 2017 from AutoNation Honda, an authorized Honda dealership in Clearwater, Florida.

Plaintiff Simkin was interested in purchasing an Odyssey with the infotainment system and conducted most of his research from his home in Tampa.  Plaintiff Simkin was exposed to Honda's misrepresentations and/or omissions in that state and made his purchase decision there.

83.    Plaintiff Simkin purchased and still owns this Odyssey.  Unknown to Plaintiff Simkin at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused him out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.  Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Simkin's purchase but did not disclose it to him.  Thus, Plaintiff Simkin purchased his Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

84.    Plaintiff Simkin selected and ultimately purchased his vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Specifically, prior to his purchase of the vehicle, Plaintiff Simkin researched the Honda Odyssey online—including on Honda's website, where he compared the 2018 Odyssey with previous models, used the model builder tool, and read about forthcoming features (like the entertainment system and Blu-ray compatibility).

85.    Plaintiff Simkin's problems with his vehicle's infotainment system started on or about January/February 2018, when he began having intermittent issues with the infotainment system's entertainment unit.  On some occasions, the DVD/Blu-ray player would stop playing and both front and rear screens would display the message "Connecting."  This occurred while playing both DVDs and Blu-ray discs. On other occasions, the XM radio would stop working and display the message "Network Connection Lost" on the front screen.  This occurred in places where an XM signal was known to exist—like the driveway or common routes.  On still other occasions, when the disc type in the vehicle was switched—e.g., from DVD to Blu-ray (or vice versa)—

only the sound would play, and no video was displayed on the rear screen.  These issues would correct only after the vehicle was off for a prolonged period (like stopping for a meal or when the vehicle was parked overnight).

86.     After these problems persisted and became more frequent—and to avert having issues on an upcoming family trip—Plaintiff Simkin made a service appointment on March 11, 2018, at AutoNation Honda.  During that visit, AutoNation performed a multipoint inspection of the vehicle and updated its entertainment software, but the technician could not recreate any of the issues and could find no technical bulletins from Honda on the issues.

87.     After this visit, Plaintiff Simkin's issues not only persisted, but became more frequent as well.  And, as before, the system would correct itself only after pulling off the highway, stopping the car, turning off the engine, opening and closing the driver door, and restarting the car (or after sitting overnight).

88.     On March 20, 2018, Plaintiff Simkin again left his vehicle for service at AutoNation Honda.  The technician was able to recreate several of the problems described above and, after speaking with a Honda engineer via the Honda tech line, determined that the Rear Entertainment Control Unit (ECU) was faulty and should be replaced.  The ECU was replaced, and the vehicle was returned to Plaintiff Simkin with the indication that all issues were fixed.

89.     Between March of 2018 and July of 2019, Plaintiff Simkin had few issues with the infotainment system in his vehicle.  But beginning again in July, the XM radio in Plaintiff Simkin's vehicle began losing its signal, seemingly at random, and was unable to connect (or reconnect).  This occurred in locations where Plaintiff Simkin never previously had signal issues, such as in his driveway, home, on main streets, and in the parking lots of frequented retail locations.  This issue occurred, and continues to occur, at random times, and under a variety of driving conditions.

90.     On September 9, 2019, Plaintiff Simkin returned to AutoNation Honda for service related to these problems.  The technician determined that the tuner in Plaintiff Simkin's vehicle was defective, replaced the part, and returned the vehicle with the indication that all issues were fixed.

91.     However, within days of this tuner replacement, the Rear Entertainment System in Plaintiff Simkin's vehicle began, once again, to intermittently stop working once more.  As before (i.e., prior to March 2018), to reboot the system after one of these failures, Plaintiff Simkin must pull off the highway, stop his vehicle, turn off the engine, open and close the driver door, and restart the car (or, alternatively, let the system "sit" overnight).

92.     Between September 23 and 25, 2019, Plaintiff Simkin left his vehicle for service at AutoNation Honda.  The technicians were unable reproduce these issues, and returned Plaintiff Simkin's vehicle with the instruction to continue monitoring them.

93.     On or around October 2019, Plaintiff Simkin's vehicle began to have another issue: when starting the vehicle, a notice on the entertainment system sometimes appears that says "Anti-Theft System.  This system has lost power.  Push and hold the power button for more than two seconds to enable the system."  This message had appeared previously on two occasions, and Plaintiff Simkin did not give it much thought.  However, since the September 23-25 service, it has appeared several times.

94.     Plaintiff Simkin left his vehicle for service at AutoNation once more between October 25 and 26, 2019.  Once again, technicians could not reproduce the issue, and returned the vehicle.  After this service, a service manager called Plaintiff Simkin and requested that he open a case with Honda to ensure continued coverage of his issues, explaining that (1) Plaintiff Simkin's warranty coverage was close to expiring; and (2) if Plaintiff Simkin opened a case with Honda, it would allow AutoNation to make more aggressive repairs to the infotainment system in Plaintiff Simkin's vehicle.  Recently, Plaintiff Simkin called Honda, and was assigned a case

number (100008422). 94. To date, Plaintiff Simkin continues to experience problems with the infotainment system in his vehicle.

95.    Plaintiff Simkin has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of her vehicle.

96.    Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Simkin of the existence of the infotainment system's defect prior to purchase.

**6.    Georgia—Harmeet Gill**

97.    Plaintiff Harmeet Gill resides in Hoschton, Georgia.

98.    Plaintiff Gill purchased a new 2018 Honda Odyssey on May 29, 2018, from Milton Martin Honda, an authorized Honda dealership in Gainesville, Georgia.  Plaintiff Gill was interested in purchasing an Odyssey with the infotainment system and conducted most of his research from his home in Georgia.  Plaintiff Gill was exposed to Honda's  omissions in that state and made his decision to purchase the vehicle there.

99.    Prior to purchasing the Odyssey, Plaintiff Gill researched the features and benefits of the Odyssey on Honda's website, where he was exposed to various advertisements describing the features of the infotainment system.

100.    Plaintiff Gill purchased and still owns this Odyssey.  Unknown to Plaintiff Gill at the time he purchased this vehicle, the Odyssey suffered from a defective infotainment system, which has caused him out-of-pocket loss, attempted repairs, the diminished value of the Odyssey.  Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Gill's purchase but did not disclose it to him.  Thus, Plaintiff Gill purchased his Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

101.   Plaintiff Gill selected and ultimately purchased his vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Specifically, Plaintiff Gill paid a significant premium to purchase a 2018 Honda Odyssey Elite that included the CabinWatch feature and rear entertainment system, which were particularly appealing to Plaintiff Gill because he has a young daughter.

102.   None of the advertisements reviewed or representations received by Plaintiff Gill contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent the full use of his vehicle and pose safety risks, Plaintiff Gill would not have purchased his vehicle with the infotainment system, or would have paid less to do so.

103.   Plaintiff Gill first began having problems with his vehicle's infotainment system within approximately one or two weeks of purchase in May 2019.  Almost every time Plaintiff Gill used the CabinWatch feature, the application crashed—and would not reboot even if the vehicle was restarted.  The other problems he has experienced include, but are not limited to, failure of the rear entertainment system, and failure of the navigation system.  When these issues arise, they are distracting.

104.   On or about October 30, 2018, Plaintiff Gill brought his vehicle to Milton Martin Honda for a regularly-scheduled service.  Prior to that service, Plaintiff Gill described the problems he was experiencing with his CabinWatch system, and requested that they be addressed; indeed, when Plaintiff Gill dropped his vehicle off at the dealership, he showed the service advisor pictures he had taken of the CabinWatch and RES systems during times when these features had failed.  Although dealership employees attempted to resolve the defect in Plaintiff Gill's vehicle as part of the service, they were unsuccessful in doing so.

105.   After his problems continued unabated, Plaintiff Gill brought his vehicle to Milton Martin Honda a second time on or about January 10, 2019, to have the infotainment system inspected.  As part of this inspection, dealership employees kept Plaintiff Gill's vehicle for approximately a week, during which time they performed tests on the vehicle and communicated with personnel at Honda's manufacturing plant and with Honda engineers.  When Plaintiff Gill returned to pick up the vehicle, he was told that the defects with his system had been resolved.  But as soon as Plaintiff Gill left the dealership and attempted to use the CabinWatch feature, it crashed once again. Plaintiff Gill immediately returned to Milton Martin Honda, where a service manager spent several additional hours examining the vehicle.  However, the service manager was unable to correct the defect.

106.   Shortly after this incident, Plaintiff Gill called Honda customer service and complained.  Between January 2019 and March 2019, Plaintiff Gill communicated extensively by phone with both Milton Martin personnel and American Honda representatives concerning the problems with his vehicle.  Ultimately, Plaintiff was advised by dealership personnel that there is no known fix for the defects with his infotainment system, and that Honda has instructed its dealerships not to change or otherwise inspect vehicles with defective infotainment systems for the time being.

107.   To date, no Milton Martin Honda employee has notified Plaintiff Gill of an update to or fix for his vehicle's infotainment system, nor has Plaintiff Gill received any other notification from Honda about any potential repair or aftermarket modification that would cure the defects he has experienced.

108.   Most recently, when Plaintiff Gill contacted the dealership by phone on June 6, 2019, to inquire about the status of Honda's response, he was told once again by a service advisor that there is no known resolution for the defect.  Although the service advisor suggested that an over the air ("OTA") update released in April 2019 may

1    address Plaintiff Gill's problems, Plaintiff Gill has already downloaded that update—to

2    no avail.

3         109.   As of this date, Plaintiff Gill continues to experience problems with the

4    infotainment system in his vehicle.

5         110.   Plaintiff Gill has suffered an ascertainable loss as a result of Honda's

6    omissions associated with the infotainment system, including but not limited to, out-of-

7    pocket loss associated with the infotainment system defect alleged herein and attempted

8    repairs, and diminished value of his vehicle.

9         111.   Neither Honda nor any of its agents, dealers, or other representatives

10   informed Plaintiff Gill of the existence of the infotainment system's defect prior to

11   purchase.

12       **7.**    **Illinois—Yazeed Issa**

13        112.   Plaintiff Yazeed Issa resides in and is a citizen of Chicago, Illinois.

14        113.   Plaintiff Issa purchased a new 2019 Honda Pilot EX on April 11, 2019 from

15   McGrath City Honda, an authorized Honda dealership located in Illinois.  Because the

16   vehicle was intended to be used primarily by his son, Abdalhfeth, and because Plaintiff

17   Issa does not speak English and relies on his son to translate for him, Plaintiff Issa asked

18   his son to research the vehicle online at his home and at the dealership.

19        114.   Abdalhfeth's online research included reviewing (1) another authorized

20   Honda dealership website for pricing information as well as (2) Honda's website, where

21   he reviewed the Pilot's pricing and features.  Abdalhfeth also visited a Costco[5], where

22   he reviewed Honda promotional materials discussing the Pilot.  Plaintiff Issa and

23   Abdalhfeth's research at the McGrath City Honda dealership included interacting with

24   the salesperson and observing and reviewing various Pilot models at the dealership.

25   Accordingly, Plaintiff Issa and Abdalhfeth communicated with various dealers and was

26

27          [5] Through its "Auto Program," Costco allows members to purchase cars through
28   participating dealerships.

SECOND AMENDED COMPLAINT      - 27 -

010811-11/1205802 V1

exposed to Honda's omissions in the state of Illinois and made the purchase decision in Illinois.

115.    Plaintiff Issa purchased and still owns the 2019 Honda Pilot EX.  Unknown to Plaintiff Issa at the time of purchase, the Pilot suffered from a defective infotainment system, which has caused him out-of-pocket loss, attempted repairs, over payment, and diminished value of the Pilot.  Plaintiff was also deprived of the benefit of the bargain. Honda knew about this defect at the time of Plaintiff Issa's purchase but did not disclose it to Plaintiff Issa.  Thus, Plaintiff Issa purchased the Pilot on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

116.    Plaintiff Issa selected and ultimately purchased his Pilot EX, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Specifically, prior to his purchase of the vehicle, Plaintiff Issa's son researched the Pilot and its various features (including the features of the infotainment system) by reviewing and comparing several different trim lines of the Pilot at the dealership with the salesperson, who also reviewed the vehicle's features (including the infotainment system). Abdalhfeth also viewed the Pilot's Monroney label before purchasing his vehicle. The fact that the 2019 Pilot EX contained the supposedly advanced infotainment system with a relatively large screen that was compatible with android phones was one of the main reasons Plaintiff Issa chose to purchase the Pilot.  The infotainment systems in other vehicles seemed out-of-date in comparison.  None of the advertisements reviewed or representations received by Plaintiff Issa or Abdalhfeth contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent his full use of his vehicle and pose safety risks, Plaintiff Issa would not have purchased his vehicle with the infotainment system or would have paid less for the vehicle.

117.   Abdalhfeth began having problems with the Pilot's infotainment system within days following the purchase.  At that time, he observed that the system would sometimes fail to load upon starting, that the Bluetooth function would disconnect repeatedly, that the infotainment system screen would freeze when certain apps such as Google Maps and Waze were operating, and that the entire system would crash when the Cabin Control function was used.  In order to temporarily resolve many of these problems and reset the infotainment system, Abdalhfeth would be forced to stop the vehicle and re-set the infotainment system to its factory settings.  Most recently, the infotainment system froze, and the screen only displays the Honda logo.  Since the date of purchase, the problems Abdalhfeth has experienced with the infotainment system are so frequent and pervasive that he is not able to determine the precise dates he has experienced such problems.  The defects described above have resulted in and created dangerous driving conditions.  For example, Abdalhfeth recalls one instance in which he narrowly avoided colliding with another vehicle because he was trying to restart Google Maps or Waze immediately after he realized the infotainment system had become frozen and was no longer providing accurate navigation and directions.

118.   In or about May 2019, Abdalhfeth brought the vehicle to McGrath City Honda to inquire about a fix for the issues he was experiencing.  During this visit, dealership personnel told Abdalhfeth that there was nothing they could do to resolve his problems.

119.   To date, no McGrath City Honda employee has notified Plaintiff Issa of an update to or fix for his vehicle's infotainment system, nor has Plaintiff Issa received any other notification from Honda about any potential permanent repair or aftermarket modification that would cure the defects in his Pilot.

120.   In or around June 2019, Abdalhfeth, on behalf of Plaintiff Issa, contacted Honda to complain about a problem with a software update to the Pilot's infotainment system, and to ask whether Honda was going to release an update that would address

the issues he was experiencing with the infotainment system.  In response to his complaint, a Honda representative told Abdalhfeth that there was nothing Honda could do at this time to address his concern, that someone from Honda would contact him soon thereafter, and that an update would be available at some point in the future.  No one from Honda has followed up with Plaintiff Issa or Abdalhfeth.  Furthermore, while Plaintiff Issa's vehicle has since received two such updates, neither has fixed, or improved, the problems.120.    As of this date, Plaintiff Issa continues to experience problems with the infotainment system in his Pilot EX despite repeated attempts by Honda to update the software.

121.  Plaintiff Issa has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein, overpayment, attempted repairs, and diminished value of his vehicle.

122.  Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Issa of the existence of the infotainment system's defects prior to purchasing the vehicle.

### 8.    Kansas—Ashley Pfeifer

123.  Plaintiff Ashley Pfeifer resides in and is a citizen of Olathe, Kansas.

124.  Plaintiff Pfeifer purchased a 2018 Honda Odyssey EX-L in September 2018 from Honda of Olathe, an authorized Honda dealership located in Olathe, Kansas. Prior to purchasing the Odyssey, Plaintiff Pfeifer looked online to research the vehicle. Her research included looking at the Honda dealership website which contained marketing and advertising information specific to the Odyssey's infotainment system. Plaintiff Pfeifer also visited Honda's website where she utilized the option to build her Odyssey online to get ideas on what features she could add and at what cost.  Plaintiff Pfeifer also reviewed a brochure for the Odyssey that she picked up while dropping another vehicle off at the Honda dealership for service.  Plaintiff Pfeifer also viewed

Youtube videos specific to the 2018 Odyssey that demonstrated the various attributes and functions of the infotainment system, including the DVD movie system. Plaintiff Pfeifer also test drove the Odyssey at the Honda of Olathe dealership prior to the purchase, and reviewed the Monroney label prior to purchase. During the test drive, the salesperson went through a full tutorial demonstrating all the functions and benefits of the Odyssey's new infotainment system. After conducting this research and comparing the Odyssey to the comparable Chrysler option, Plaintiff Pfeifer decided to purchase the Odyssey. One of the reasons Plaintiff Pfeifer selected the Odyssey was because of Honda's new, state-of-the-art infotainment system. Accordingly, Plaintiff Pfeifer was exposed to Honda's omissions in the state of Kansas and made her purchase decision in Kansas.

125. Plaintiff Pfeifer purchased and still owns the 2018 Honda Odyssey EX-L. Unknown to Plaintiff Pfeifer at the time of purchase, the Odyssey suffered from a defective infotainment system, which has resulted in attempted repairs, overpayment, and diminished the value of the Odyssey. Plaintiff was also deprived of the benefit of the bargain. Honda knew about this defect at the time of Plaintiff Pfeifer's purchase but did not disclose it to Plaintiff Pfeifer. Thus, Plaintiff Pfeifer purchased the Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

126. Plaintiff Pfeifer selected and ultimately purchased the Odyssey EX-L, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda and the Honda dealership as described above. The fact that the 2018 Odyssey EX-L contained the supposedly advanced infotainment system with the latest technology, including a functioning DVD player to provide entertainment for the occupants in the second and third rows was one of the main reasons Plaintiff Pfeifer chose to purchase the Odyssey. None of the advertisements reviewed or representations received by Plaintiff Pfeifer contained any

disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent the full use of his vehicle's features and pose safety risks, Plaintiff Pfeifer would not have purchased the Odyssey vehicle with the infotainment system, or would have paid less for the vehicle.

127.   Plaintiff Pfeifer began having problems with her Odyssey's infotainment system within two months following the purchase.  For example, the use of the infotainment system's DVD player causes the control screen for the infotainment system to freeze.  The infotainment system's screen nearly always freezes when the DVD player is in operation.  When the screen freezes, no other infotainment system functions (e.g., fast forward, volume control, handsfree phone, etc.) will work.  Plaintiff Pfeifer can sometimes temporarily reset the frozen infotainment screen by turning the Odyssey off and restarting it.  Another problem relates to the backup camera which displays through or on the infotainment system screen.  Occasionally, rather than displaying the view from behind the vehicle once the Odyssey is put in reverse, the backup camera malfunctions and a warning displays on the screen indicating that there is a "poor connection."  When this occurs, Plaintiff Pfeifer is forced to operate the Odyssey without the assistance of the rear camera, which creates safety issues.  Plaintiff Pfeifer also has experienced constant problems with the infotainment system's handsfree phone function such that incoming calls are not connected to the system.  Since she purchased the Odyssey, the problems Plaintiff Pfeifer has experienced with the infotainment system are so frequent and pervasive that she is not able to determine the precise dates she has experienced such problems.  The defects described above constantly create substantial distractions which can result in dangerous driving conditions creating safety hazards.

128.   Plaintiff Pfeifer presented her vehicle to Honda of Olathe in June 2019 to have these issues repaired.  The dealership kept the vehicle for an entire afternoon, but was unable to replicate the issues and therefore unable to repair them.

129.   To date, no Honda of Olathe employee has notified Plaintiff Pfeifer of an update to or fix for his vehicle's infotainment system, nor has Plaintiff Pfeifer received any other notification from Honda about any potential permanent repair or aftermarket modification that would cure the defects she has experienced.

130.   As of this date, Plaintiff Pfeifer continues to experience problems with the infotainment system in her Odyssey.  Most recently, the defect in Plaintiff Pfeifer's vehicle manifested in a new, dangerous way: while driving, both the infotainment screen and the digital dashboard (which displays, among other things, the speedometer) went black and reset itself, thus preventing Plaintiff Pfeifer from knowing how fast she was going.

131.   Plaintiff Pfeifer has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to overpayment, attempted repairs, and diminished value of her vehicle.

132.   Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Pfeifer of the existence of the infotainment system's defects prior to purchasing the vehicle

### 9.     Kentucky—William D. Lampton

133.   Plaintiff William D. Lampton III resides in Newburgh, IN.

134.   Plaintiff Lampton purchased a new 2018 Honda Odyssey on April 23, 2018, from Don Moore Honda, an authorized Honda dealership in Owensboro, Kentucky.  Plaintiff Lampton was interested in purchasing an Odyssey with the infotainment system and conducted most of his Odyssey research from his home in Indiana.  Plaintiff Lampton also communicated with various dealers and was exposed to Honda's  omissions in that state and made his purchase decision there.

135.   Plaintiff Lampton purchased and still owns this Odyssey.  Unknown to Plaintiff Lampton at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused him out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.  Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Lampton's purchase but did not disclose it to Plaintiff Lampton.  Thus, Plaintiff Lampton purchased his Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

136.   Plaintiff Lampton selected and ultimately purchased his vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda. Specifically, prior to his purchase of the vehicle, Plaintiff Lampton researched the Honda Odyssey extensively, both online and off.  He visited Honda's website numerous times, where he watched videos of the "CabinWatch" feature in use[6], and estimates that, on more than twenty occasions before buying his Odyssey, he used the "build-a-vehicle" feature to compared various models on Honda's website.

137.   Approximately two or three weeks before his purchase, Plaintiff Lampton also visited D-Patrick Honda, an authorized Honda dealership in Evansville, Indiana, as part of his research.  During that visit, D-Patrick employees gave Plaintiff Lampton a Honda-branded promotional booklet for the Odyssey.  This booklet contained information describing the infotainment system's various features, including the display, wifi, CabinWatch, CabinTalk, the rear entertainment system, the "How Much Farther?" application, and the streaming application.

---

[6] Plaintiff Lampton specifically recalls watching a video titled "How to Use Cabinwatch," which Honda still makes available to the public on its YouTube channel at the following URL: https://www.youtube.com/watch?v=7RzBtXThMfM (last viewed Oct. 28, 2019).  Among other things, the video states that "CabinWatch makes it convenient to monitor children in the rear seats, especially young children, and Odyssey is the first to have it."

138.   Plaintiff Lampton recalls that the existence of the infotainment system—and the CabinWatch system in particular—was one of main reasons that he chose a Honda Odyssey over other vehicles with similar systems, which struck him as out of date by comparison.   Plaintiff Lampton is a tech-minded person, and the advanced technology Honda marketed with the 2018 Odyssey were particularly exciting to him. Indeed, Plaintiff Lampton chose the Elite trim because he did not want to miss out on the new features he wanted.   And when he finally selected his vehicle, he reviewed its Monroney label prior to purchase to confirm that it included a multi-view rear camera, rear entertainment system, CabinTalk, CabinWatch, and a mobile hotspot.

139.   None of the advertisements reviewed or representations received by Plaintiff Lampton contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent his full use of his vehicle and pose safety risks, he would not have purchased his vehicle with the infotainment system, or would have paid less for the vehicle.

140.   Plaintiff Lampton began having problems with his vehicle's infotainment system approximately one week after purchase.   At that time, he first observed that the system would sometimes fail to load upon starting, thus disabling the CabinWatch feature as well.   In order to temporarily resolve this problem and reset the infotainment system, Plaintiff Lampton would be forced to stop his vehicle, open and close the doors, turn it off, and turn it on again.   The other problems he has experienced include, but are not limited to, frequent freezing and lockup of the infotainment system during use (including the CabinWatch feature and DVD player), failure of the internet hotspot, glitches with the audio system while the DVD player is in use, and loud "cracking"/"knocking" noises during driving.   Since the date of purchase, the problems Plaintiff Lampton has experienced with his infotainment system are so frequent and

pervasive that he is not able to determine the precise dates he has experienced such problems, which create distractions.

141.   Plaintiff Lampton was particularly dismayed by an episode that occurred during a family trip on June 29, 2018.  As Plaintiff Lampton's children were watching a movie on the infotainment system's rear screen, the speaker system made a loud cracking noise.  At the same time, the movie screen froze and the CabinWatch feature shut off; meanwhile, audio from the movie continued to play.  Although Plaintiff Lampton pulled off the road and attempted to reboot the system, he was unsuccessful.  The system remained inoperable for the remainder of the approximately 3-hour drive from southern Indiana to Nashville, and would not reboot or restart until several hours after Plaintiff Lampton's family arrived.

142.   On or about July 5, 2018, Plaintiff Lampton took his vehicle to Don Moore Honda to have the infotainment system serviced.  After describing his problems with the infotainment system, Plaintiff Lampton was told that the dealership was familiar with the issues he had experienced, and that Honda was working on an update.  Rather than check the vehicle in for service, the dealership performed a system reset on the infotainment system, and instructed Plaintiff Lampton to call back if the problem happened again.

143.   Plaintiff Lampton's infotainment system continued to regularly malfunction after his July 5, 2018, visit in the various ways described above.

144.   On or about October 1, 2018, Plaintiff Lampton brought his vehicle to D-Patrick Honda for an oil change.  During that visit, Plaintiff Lampton again described his problems with the infotainment system in the hopes of obtaining a fix.  In response, a D-Patrick employee asked that Plaintiff Lampton provide him with proof that he could share with Honda.

145.   Plaintiff Lampton sent the employee video documentation of the infotainment system in his vehicle malfunctioning.  On or about October 16, 2018, the

SECOND AMENDED COMPLAINT                        - 36 -

employee informed Plaintiff Lampton that there was an update "in the works" for the infotainment system in his vehicle.

146.   As of this date, Plaintiff Lampton continues to experience problems with the infotainment system in his vehicle.  For example, during an eleven-day vacation in June 2019, the rear entertainment system in Plaintiff Lampton's vehicle repeatedly froze, turned black, failed to play audio, and/or simply failed to turn on, thus requiring Plaintiff to restart his vehicle—and even then, the system would sometimes continue to malfunction.  The CabinWatch system also froze for several hours during Plaintiff Lampton's trip.  Finally, on one occasion, a loud "cracking" sound played over the speakers before both the front display and the rear entertainment system crashed and displayed the message "No Audio Connection for FM."  This last incident was particularly distressing to Plaintiff Lampton because it created a distraction that placed him, and his family, in danger.

147.   Since Plaintiffs filed their First Amended Complaint on June 10, 2019, Plaintiff Lampton has returned his vehicle for repair two more times: first on June 13, 2019, and again on September 25, 2019.  During the June 13 visit, Plaintiff Lampton was once more told that Honda was "working on a repair," and that nothing could be done in the interim.  By contrast, during the September 25 visit, a dealership employee installed an update in Plaintiff Lampton's vehicle that he claimed would fix the issues described above.  But since that visit, the rear entertainment system has frozen again (and, on the same occasion, refused to function even after Plaintiff Lampton restarted his vehicle).

148.   Plaintiff Lampton has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of his vehicle.

149.   Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Lampton of the existence of the infotainment system's defect prior to purchase.

**10.   Maryland—Jacob Szajowitz**

150.   Plaintiff Jacob Szajowitz resides in and is a citizen of Baltimore, Maryland.

151.   Plaintiff Szajowitz leased a new 2019 Honda Odyssey EX-L in August 2018 from Honda of Owings Mills, an authorized Honda dealership located in Garrison, Maryland.   Plaintiff Szajowitz was interested in purchasing an Odyssey with the infotainment system and conducted online research on the vehicle at his home, including research and reviewing marketing materials related to the infotainment system.  As part of his online research, Plaintiff Szajowitz compared the Odyssey to other similar vehicles manufactured by Chrysler and Chevrolet.  Plaintiff Szajowitz also read vehicle reviews in Consumer Reports, talked to friends about their vehicles, and test drove various vehicles including the 2019 Honda Odyssey EX-L.  Plaintiff Szajowitz also went to Honda's website and utilized the "build-a-vehicle" feature to build a potential Odyssey for pricing information and to review the features and trim levels.  During this process, Plaintiff Szajowitz reviewed information about the Odyssey's infotainment system and the functions offered.  The Android Auto function marketed by Honda for the Odyssey was very important to Plaintiff Szajowitz because he and his wife use Samsung phones.  It was also important to Plaintiff Szajowitz, and an attractive feature touted by Honda, that the Odyssey's infotainment system contains the latest technology.  Plaintiff Szajowitz's research at the Honda of Owings Mills dealership included interacting with the salesperson who described the various features contained in the 2019 Odyssey, including the state-of-art infotainment system.  Accordingly, based upon the above described interactions and communications, Plaintiff Szajowitz was exposed to Honda's  omissions in the state of Maryland and made his purchase decision in Maryland.

152.   Plaintiff Szajowitz leased and continues to lease the 2019 Honda Odyssey EX-L.  Unknown to Plaintiff Szajowitz at the time he leased the vehicle, the Odyssey suffered from (and continues to suffer from) a defective infotainment system, which has caused him out-of-pocket loss, attempted repairs, and diminished value of the Odyssey. Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Szajowitz's lease transaction but did not disclose it to him.  Thus, Plaintiff Szajowitz leased the Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

153.   One of the main reasons Plaintiff Szajowitz selected and ultimately purchased his Odyssey EX-L was because of the features of the infotainment system, as represented through advertisements and representations made by Honda. Specifically, prior to his lease of the vehicle, Plaintiff Szajowitz researched the Odyssey and its various features (including the features of the infotainment system) by reviewing the marketing materials and interacting with the dealership salesperson as described above. The fact that the 2019 Odyssey EX-L contained the supposedly advanced infotainment system with the latest technology and was compatible with Android phones was one of the main reasons Plaintiff Szajowitz chose to purchase the Odyssey.  None of the advertisements reviewed or representations received by Plaintiff Szajowitz contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent his full use of his vehicle and pose safety risks, he would not have purchased his vehicle with the infotainment system or would have paid less for the vehicle.

154.  Plaintiff Szajowitz began having problems with his Odyssey's infotainment system soon after the lease began.  For example, the Sirius/XM satellite music function locks, the music ceases, and the infotainment system screen freezes. The infotainment system remains dysfunctional until Plaintiff Szajowitz turns the vehicle off and restarts it, apparently resetting the system.  Another example relates to the

SECOND AMENDED COMPLAINT                    - 39 -

infotainment system's Android Auto feature.  Whenever Plaintiff Szajowitz attempts to skip more than one song while playing through Android Auto, the infotainment system freezes and music stops playing.  Sometimes, though not always, Plaintiff Szajowitz can restore the infotainment system by unplugging the USB connection.  In those instances when unplugging the USB connection does not restore the infotainment system, the system can be restored by turning off and restarting the vehicle.  The most common infotainment system defect experienced by Plaintiff Szajowitz relates to the handsfree phone function.  Nearly every call using this system results in terrible audio reception experienced by the person to whom Plaintiff Szajowitz is speaking.  The reception is so poor that Plaintiff Szajowitz is often forced to manually disconnect the phone from the handsfree function.  Also, the infotainment system often freezes when Plaintiff Szajowitz attempts to use either the Waze app or Google Maps.  Since the date his lease began, the problems Plaintiff Szajowitz has experienced with his infotainment system are so frequent and pervasive that he is not able to determine the precise dates he has experienced such problems.  The defects described above constantly create substantial distractions which can result in dangerous driving conditions creating safety hazards.  For example, Plaintiff Szajowitz often has been forced to disconnect his phone from the infotainment system in order to complete an important work-related phone call.

155.   In several instances, Plaintiff Szajowitz has documented the failure of his infotainment system by photograph.  One such picture is shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    156.   To date, no Honda of Owings Mills employee has notified Plaintiff

17  Szajowitz of an update to or fix for his vehicle's infotainment system, nor has Plaintiff

18  Szajowitz received any other notification from Honda about any potential permanent

19  repair or aftermarket modification that would cure the defects he has experienced.

20  When Plaintiff Szajowitz returned his vehicle in October 2018 to the Honda of Owings

21  Mills dealership because of the infotainment defects described above, the technician

22  explained that they could not replicate any of the problems.  Nonetheless, the technician

23  explained that he downloaded the most recent software update for the vehicle,

24  proclaimed that there was nothing wrong with the vehicle, and went on to explain that

25  any issues or problems with Sirius/XM radio should be raised with Sirius/XM—not

26  Honda.  Plaintiff Szajowitz did call Sirius/XM in an attempt to fix the issues described

27
28

above but those efforts, just like the October 2018 visit to the Owings Mills Honda dealership, did not resolve the defects.

157.   As of this date, Plaintiff Szajowitz continues to experience problems with the infotainment system in his Odyssey despite Honda's attempt to update the software.

158.   Plaintiff Szajowitz has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein, overpayment, attempted repairs, and diminished value of his vehicle.

159.   Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Szajowitz of the existence of the infotainment system's defects prior to leasing the vehicle.

**11.    Massachusetts—Michaela Hetzler**

160.   Plaintiff Michaela Hetzler resides in and is a citizen of Fall River, Massachusetts.

161.   Ms. Hetzler purchased a new 2019 Honda Odyssey EX-L in September 2018 from Honda of Seekonk, an authorized Honda dealership located in Seekonk, Massachusetts.   Prior to purchasing the 2019 Odyssey, Ms. Hetzler owned another Honda Odyssey and was very satisfied with the overall performance of the vehicle from a quality and reliability perspective.  So, when it was time to look for a new vehicle, she was very interested in looking at the new 2019 Odyssey.  Ms. Hetzler researched the 2019 Odyssey prior to her purchase by reviewing the marketing materials and information present on Honda's website, including information about the features and benefits offered by the infotainment system.  Ms. Hetzler also read Consumer Reports reviews about the 2019 Odyssey.  Ms. Hetzler went to the Honda of Seekonk dealership to look at the 2019 Odyssey and to test drive the vehicle.  The salesperson at the dealership discussed the various features and benefits of the 2019 Odyssey as well as those offered by the infotainment system, including Android Auto connectivity which

was a very important feature to Ms. Hetzler because she and her husband have Android phones.  After the salesperson discussed the benefits and features of the vehicle, a dealership technician performed a demonstration of the capabilities and functions offered by the infotainment system in the 2019 Odyssey.

162.  Accordingly, based upon the above described interactions and communications, Ms. Hetzler was exposed to Honda's  omissions in the state of Massachusetts and made her purchase decision in Massachusetts.

163.  Ms. Hetzler purchased and continues to own the 2019 Odyssey EX-L. Unknown to Ms. Hetzler at the time she purchased the vehicle, the Odyssey suffered from (and continues to suffer from) a defective infotainment system, which resulted in overpayment and has diminished the value of the Odyssey.  Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect with the infotainment system at the time Ms. Hetzler purchased the vehicle but did not disclose it to her.  Thus, Ms. Hetzler purchased the Odyssey on the reasonable but mistaken belief that it would be a reliable vehicle and was not subject to any known defects.

164.  Ms. Hetzler selected and ultimately purchased the Odyssey, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda and its agents at the dealership. Specifically, prior to her purchase, Ms. Hetzler reviewed the representations on Honda's website about the infotainment system and spoke to the dealership salesperson and technician who reviewed the features and benefits of the new Odyssey, including the updated infotainment system.  The fact that the 2019 Odyssey contained the supposedly advanced infotainment system with the latest technology was one of the main reasons Ms. Hetzler chose to purchase the Odyssey.  None of Honda's advertisements or marketing information at the dealership contained any disclosure relating to any defects in the infotainment system.  Nor did the salesperson or the technician at the dealership disclose any such defects with the infotainment system when they discussed the new

system or when they gave Ms. Hetzler a tutorial of the infotainment system. Had Honda disclosed that the infotainment system in the Odyssey was defective which prevents the full use of the vehicle as advertised, Ms. Hetzler would not have purchased the Odyssey with the infotainment system, or would have paid less for the vehicle.

165. Ms. Hetzler began experiencing problems with her Odyssey's infotainment system soon after the purchase. For example, the infotainment screen would make a static sound then go completely black, rendering the entire infotainment system frozen and inoperable. Here are two screen shots of frozen screens encountered by Ms. Hetlzer:



1
2
3
4
5
6
7
8
9
10



11
12
13

166.   Nothing related to the infotainment system functions when this occurs as there is no audio, no video, no handsfree phone functions, and no backup camera.  And, even when the infotainment system is functioning, the handsfree Bluetooth phone functionality is dysfunctional and does not consistently work.  Often, the person to whom Ms. Hetzler is speaking cannot clearly hear her.  This makes it nearly impossible to have an effective conversation.  Also, the vocal commands and controls associated with the infotainment system do not work.  Ms. Hetzler returned her Odyssey to the Honda of Seekonk dealership in the winter of 2018 to rectify the above described problems with the infotainment system.  When she returned to pick up the vehicle, the dealer stated that the issues had been resolved.  Yet, within a few weeks the same problems reappeared.  So, Ms. Hetzler returned the vehicle to the Honda of Seekonk dealership in early 2019 for a second repair.  Ms. Hetzler returned to get the Odyssey after she was informed that the most recent repair was successful.  However, as she was driving her Odyssey out of the dealership's parking lot following the second repair, the infotainment screen went black and froze.  So, Ms. Hetzler turned around and retuned the Odyssey to the dealer for a third attempt to repair the defective infotainment system.  This time, a representative from Honda's national corporate office assisted with the

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SECOND AMENDED COMPLAINT                            - 45 -
010811-11/1205802 V1

repair attempt.  Two weeks after this third repair attempt, the Odyssey's infotainment system failed again.  Ms. Hetzler returned the Odyssey to the dealer in April 2019 for the fourth repair attempt.  Following the fourth repair, the infotainment system still does not function as advertised, as Ms. Hetzler continues to experience terrible handsfree connectivity, the voice commands do not work, and persons to whom she is trying to have a phone conversation cannot hear her.  The fact that Ms. Hetzler's Odyssey essentially has no handsfree Bluetooth phone functionality is a major concern for Ms. Heltzler because Massachusetts recently enacted a new "handsfree law" which will soon make it illegal to drive with a cell phone in your hand.  Since the date of purchase of her Odyssey, the problems she has (and continues to experience) with the infotainment system are so frequent and pervasive that Ms. Hetzler is not able to determine the precise dates she has experienced such problems.  The defects described above constantly create substantial distractions which can result in dangerous driving conditions creating safety hazards.

167.  To date, no Honda of Seekonk dealership employee has notified Ms. Hetzler of an update to or fix for her vehicle's infotainment system, nor has she received any other notification from Honda about any potential permanent repair or aftermarket modification that would cure the defects she has experienced.

168.  As of this date, Ms. Hetzler continues to experience the problems described above with the infotainment system in her Odyssey.

169.  Ms. Hetzler has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of her vehicle.

170.  Neither Honda nor any of its agents, dealers, or other representatives informed Ms. Hetzler of the existence of the infotainment system's defects prior to purchasing the vehicle.

**12.    Missouri—Michelle Beckwith**

171.    Plaintiff Michelle Beckwith resides in Columbia, Missouri.

172.    Plaintiff Beckwith purchased a new 2019 Honda Odyssey on April 17, 2019, from Jefferson City Honda, an authorized Honda dealership in Jefferson City, Missouri.   Plaintiff Beckwith was interested in purchasing an Odyssey with the infotainment system and conducted most of her research from her home in Missouri. Plaintiff Beckwith was exposed to Honda's  omissions in that state and made her purchase decision there.

173.    Plaintiff Beckwith purchased and still owns this Odyssey.  Unknown to Plaintiff Beckwith at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused her out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.   Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Beckwith's purchase but did not disclose it to Plaintiff Beckwith.   Thus, Plaintiff Beckwith purchased her Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

174.    Plaintiff Beckwith selected and ultimately purchased her vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Among other things, Plaintiff Beckwith chose to purchase a 2019 Honda Odyssey Elite because the vehicle featured a premium stereo system that could be used (by way of the infotainment system's Bluetooth feature) with her cell phone.

175.    Prior to purchase, Plaintiff Beckwith researched the vehicle extensively online, including on Honda's website, where she compared various models and accessories packages.  In addition, while at the dealership, Plaintiff Beckwith was provided with a variety of printed, Honda-branded promotional materials, and reviewed Honda's website with a sales representative.   Plaintiff Beckwith asked the sales

representative a number of questions about the infotainment system, test drove two separate vehicles, and made several test phone calls in order to confirm that her cell phone would pair properly with the vehicle.  The proper functioning of this feature was so important to Plaintiff Beckwith that she made an additional pre-sale trip to Jefferson City Honda just to inquire about it.

176.   Plaintiff Beckwith began having problems with her vehicle's infotainment system less than two weeks after buying the vehicle.  While travelling on vacation, Plaintiff Beckwith observed that the vehicle's stereo would malfunction—causing the screen to go black—and/or fail to load, thus requiring that she restart the vehicle. Plaintiff Beckwith also received various error messages on the infotainment system's center screen, including "Audio cannot be used right now," "Loading…[,]" and "Check Tuner."  The CabinWatch feature in Plaintiff Beckwith's vehicle has also failed to work on several occasions.

177.   Plaintiff Beckwith has documented some of these failures in the following photographs:



1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26



27
28

178.   As a result of these problems, Plaintiff Beckwith brought her vehicle to Jefferson City Honda for service on April 29, 2019.  During that visit, the dealership replaced the tuner in Plaintiff Beckwith's vehicle.  The service notes from Plaintiff Beckwith's visit state: "Vehicle at random will get check tuner or audio not available message.  Called tech line after finding no codes in system and was advised to replaced [sic] tuner unit in rear and vehicles are awaiting an OTA [over the air] software update that is not yet released.  Replace tuner unit in vehicle and audio is working ok at this time."  When Plaintiff Beckwith returned to pick up the vehicle on May 3, 2019, she was informed that if the tuner replacement did not fix her issues, there was nothing else the dealership could do to resolve the defect with her vehicle's infotainment system.

179.   On May 5, 2019, two days later, the stereo in Plaintiff Beckwith's vehicle again rebooted several times while driving.  In addition, another problem developed: approximately half of the time that Plaintiff Beckwith's cellphone is paired with the vehicle's infotainment system, her voice is inaudible to car recipients—e.g., those receiving Plaintiff Beckwith's calls tell her that her voice is garbled.  This problem is particularly concerning to Plaintiff Beckwith because, each time it occurs, Plaintiff Beckwith is forced to divert her attention to her phone—thus creating a dangerous distraction.

180.   On May 6, 2019, Plaintiff Beckwith called Jefferson City Honda to describe this problem and inquire about a fix.  During a return phone call, a dealership employee told Plaintiff Beckwith that there was nothing that could be done to resolve the issue she described, and that her only option was to wait for a software update expected in June or July of 2019.  On May 20, after requesting several times to speak with Jefferson City Honda's general manager about the problem, Plaintiff Beckwith was told once again (by the general manager) that there was nothing the dealership could do other than advocate with Honda on her behalf.

181. On June 6, 2019, after numerous additional inquiries by Plaintiff Beckwith, a dealership employee informed Plaintiff Beckwith via text message that the dealership has been in contact with a Honda representative who is "working to see what he needs to do" to send a beta version of the above-referenced update to Jefferson City Honda so that it can be installed on Plaintiff Beckwith's vehicle.

182. To date, no Jefferson City Honda employee has contacted Plaintiff Beckwith or otherwise tried to follow through on this promise. To the contrary, although Plaintiff Beckwith has since left several messages with the dealership inquiring about the status of a fix and/or whether there are any new updates that might resolve her problems, dealership personnel have not returned her calls. Indeed, when Plaintiff Beckwith's old service representative left the dealership, a new one called her to introduce himself, and promised to call her back to discuss the defect the next day—but never did so.

183. Plaintiff Beckwith has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of her vehicle.

184. Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Beckwith of the existence of the infotainment system's defect prior to purchase.

**13.    Ohio—Lesley and Tom Conti**

185. Plaintiffs Lesley and Tom Conti (the "Contis") are Ohio citizen residing in Munroe Falls, Ohio.

186. The Contis purchased a new 2018 Honda Odyssey EX-L from Great Lakes Honda in Akron, Ohio on or around June 12, 2017.

187. The Contis were exposed to Honda's omissions in that state and made their purchase decision there.

SECOND AMENDED COMPLAINT                    - 51 -

188.   The Contis purchased and still own this Odyssey.  Unknown to the Contis at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused them out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.  Plaintiffs were also deprived of the benefit of the bargain.  Honda knew about this defect at the time of the Contis purchase but did not disclose it to them.  Thus, the Contis purchased their Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

189.   The Contis selected and ultimately purchased their vehicle, in part, because of the features of the infotainment system.  In June 2017, the Contis saw online that Great Lakes Honda had a 2015 used Odyssey for sale. They then went to the dealership and met with a salesperson, who showed them the 2015 used Odyssey as well as the 2018 Odysseys, which had recently come in. The salesman sat in the 2018 with the Contis and went over all the features in the van, including the infotainment system.  The Contis ultimately decided that the newer Odyssey model would be best for their family—especially the navigation, hands-free phone, and back-up camera features, which were all appealing safety features.  In addition, the Contis reviewed the Monroney label on their Odyssey before purchasing.

190.   None of the representations received by the Contis contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in their vehicle suffered from numerous defects which would prevent the full use of their vehicle and pose safety risks, the Contis would not have purchased their vehicle with the infotainment system, or would have paid less for the vehicle.

191.   The Contis experienced continuing and repeated problems with the vehicle's infotainment system from within two months of purchase.

192.   The Contis first noticed problems with the audio system in approximately August 2017.  The infotainment system displayed the message "Radio unavailable," and

there was no sound from the radio, satellite radio, CD player, hands free calling, and navigation system.

193.    When the Contis took the Vehicle to their dealership for an oil change on January 11, 2018, they notified the technician of the problems they had been experiencing with the infotainment system.  The service invoice states: "Cust states is still[] having issues with Audio Unit.  States is seeing radio unavailable when using AM/FM.  Please advise remarks found bulletin for audio unit replacement.  Ordered audio tuner per bulletin."

194.    Less than a month later, on February 1, 2018, the Contis returned to the dealership to have the audio tuner replaced per the Honda service bulletin (Service Bulletin 17-088).

195.    Two days after the replacement, the infotainment system failed again. Later, on February 3, 2018, Mrs. Conti sent a text message to a technician at the dealership stating that "the radio just went out completely, nothing is working." Shortly thereafter, the Contis returned the Vehicle to the dealer to have the dealer again attempt to fix the infotainment system.

196.    On February 8, 2018, the dealership notified the Contis as follows: "[W]e are currently waiting on a call back from Honda Tech line.  We have followed all diagnosis charts so leaning towards audio unit or even an issue with the tuner.  Just waiting for there (sic) techs to advise next steps."

197.    The next day, the Contis received a text message from the technician stating: "Honda contacted us last night and requested a snap shot of the audio unit software which means they wanna see what we see in the programming.  They should contact us today but they are based on the west coast so won't be till later." When the Contis picked up the Vehicle from the dealership, they were told that the whole dashboard had been removed in an effort to repair the unit.

198.    Despite these repair efforts, the infotainment system problems persisted.

199.   The Contis took the van back in to the dealership on approximately February 12, 2018, and then again on February 22, 2018. The dealership's service invoice states: "Cust states is still having issues with the audio unit.  States still getting message radio unavailable, states are fading in and out very quickly and then just shuts off.  States has not worked for a full day since install."  The invoice further states: "Vehicle has a new tuner, new audio unit from brand new donor and OTA software update.  According to customer, vehicle is still malfunctioning.  Per DPMS and field service engineer, customer needs to keep for a few weeks and log malfunctions and report back to us to further diagnose.  Closing paperwork for now."

200.   The Contis asked to speak with the dealership's service manager, who instructed the Contis to start keeping a journal of the problems with the vehicle.  According to the Contis' journal, the vehicle experienced infotainment system problems (usually related to audio) every single day between February 28, 2018 and March 12, 2018.

201.   On March 12, 2018, the Contis received a text message from the technician stating: "We have spoken to Honda on the situation not just with your vehicle but with others as well and are getting the same response which is don't replace any more parts and wait for an update.  Very frustrating I understand."

202.   The next day, the Contis received a follow up text message asking them to bring the Vehicle into the dealership, which they did.  The dealer kept the Vehicle for 10 days.   The service invoice states, "Per Service Manager and DPSM Veh to be dropped off for further diag." It further states: "Replaced instrument panel wire harness, floor wire harness, and rear entertainment system control unit per previous diagnosis performed by Honda field engineer.  Radio is working consistently after testing multiple times over the court of two day[s].  No other problems found at this time."  The Contis were told that an engineer from Honda flew in specifically to observe the Vehicle and personally drove the Vehicle back and forth to his hotel.

SECOND AMENDED COMPLAINT                          - 54 -

203.   The Contis picked up the van on March 22, 2018.  But the infotainment system problems continued.

204.   On May 1, 2018, the Contis contacted dealership about problems experienced with the infotainment system, which included crackling sounds and a non-functioning backup camera.

205.   On May 18, 2018, the Vehicle's audio functions failed, and the infotainment system would not produce any sound.

206.   Around this time, the Contis were informed by the dealership's service manager that a number of other people had experienced issues similar to their own.

207.   On at least two occasions since the dealership attempted to repair the defect, Mrs. Conti has been driving when the entire "infotainment" console display turned black and became wholly inoperable.  The Contis have recorded video of these failures in order to document them.

208.   On December 18, 2018, the Contis returned the Vehicle to the dealership and showed them the videos of the infotainment system failures.  Later that day, the Contis were told that the Honda engineer had looked at the videos and determined that the Blu-ray player and the speedometer needed to be replaced.

209.   However, the infotainment problems continue to plague the Vehicle after the dealership's many repair attempts.  On March 1, 2019, the Vehicle's audio cut out and the infotainment system showed the following message: "Audio cannot be used right now."  On March 25, 2019, the infotainment system's screen went black while the radio continued to play.

210.   To date, the Contis' problems have continued.  Most recently, on September 5, 2019, the Contis informed Great Lakes Honda of their continued problems during a scheduled oil change.  The dealership told the Contis that there was nothing that could be done to address their problem, and that many other Odyssey owners are having similar problems.

SECOND AMENDED COMPLAINT                    - 55 -

211.  Despite providing the dealership and Honda engineers at least eight attempts to repair the infotainment system, the Vehicle's infotainment system continues to malfunction.

**14.     Oklahoma—Ross and Stephanie Conley**

212.  Plaintiffs Ross and Stephanie Conley (the "Conleys") reside in Enid, Oklahoma.

213.  The Conleys purchased a new 2019 Honda Odyssey on February 16th, 2019, from Battison Honda, an authorized Honda dealership in Oklahoma City, Oklahoma.   The Conleys were interested in purchasing an Odyssey with the infotainment system and conducted most of their research from their home in Oklahoma.  The Conleys were exposed to Honda's  omissions in that state and made their purchase decision there.

214.  The Conleys purchased and still own this Odyssey.  Unknown to the Conleys at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused them out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.  Plaintiffs were also deprived of the benefit of the bargain.  Honda knew about this defect at the time of the Conleys' purchase but did not disclose it to them.  Thus, the Conleys purchased their Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

215.  The Conleys selected and ultimately purchased their vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  The Conleys upgraded to the EX-L trim in order to obtain an Odyssey with the infotainment system, and were particularly attracted to the integrated Apple CarPlay application.

216.  Before purchase, the Conleys reviewed information about the Odyssey on Honda's website and other car comparison pages (like Kelley Blue Book), where they compared the specifications and model variants of the Odyssey.  The Conleys also

looked at the Odyssey on Honda's website, and reviewed the website for any discounts or other offers Honda was running at the time.  In addition, Mrs. Conley flipped looked through an Odyssey brochure at the dealership the day of purchase, and both Conleys reviewed the Monroney label on their vehicle.  216.      None  of  the  advertisements reviewed or representations received by the Conleys contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in their vehicle suffered from numerous defects which would prevent the full use of their vehicle and pose safety risks, the Conleys would not have purchased their vehicle with the infotainment system, or would have paid less for the vehicle.

217.   The Conleys first began having problems with their vehicle's infotainment system on or about March 14, 2019, when the vehicle's radio made a static noise and shut off, which in turn caused the infotainment system as a whole to crash and reset itself—thus disabling all of the system's features and associated controls.  Between March 14 and March 28, this problem was intermittent; on some days, the infotainment system would work without issue, while on others, it would crash and reset itself repeatedly.

218.   On or about March 28, 2019, Mrs. Conley brought the vehicle to Curttright Honda, an authorized Honda dealership in Enid, Oklahoma, for service related to the infotainment system defect.  At the time the vehicle was presented for repair, the infotainment system was functioning properly, and Curttright employees were unable to replicate the Conleys' problems.  Employees performed a system update on the vehicle.

219.   Following this system update, the infotainment system in the Conleys' worked without issue for approximately three weeks.  But starting on or about April 20, 2019, the same problems described above returned.

220.   The Conleys returned to Curtright Honda on April 22, 2019.  Once again, dealership employees attempted a system update.

221.   The update did not work.  To the contrary, after this April 22, 2019, visit, the problems with the Conleys' infotainment system became worse, and the system began to intermittently shut down—after crashing—for extended periods of time, rather than rebooting.  Furthermore, following some of these crashes, the infotainment system would not shut down or reboot even after the vehicle was turned off.

222.   The Conleys returned to Curtright Honda for a third time on May 11, 2019.  During this visit, dealership employees told the Conleys that there were no system updates available for their vehicle, and that they neither knew of a fix for the problem nor knew what to do next.

223.   Since that time, the Conleys' problems with their infotainment system have continued, thus rendering the system almost completely unusable.  For a period of time during the summer of 2019, the system would crash within minutes of turning on, and afterward stay blank and inoperable for extended periods of time.  Most recently, the infotainment system has continued to fail regularly and/or make an audible "static" sound, and the backup camera periodically fails to turn on as well.  During a drive to and from upstate New York in July 2019, for example, the system was so unreliable that, rather than use it to play music, the Conleys instead relied on a wireless Bluetooth speaker.  When, during the same trip, Mrs. Conley visited a Honda dealership in Canandaigua, NY, for routine servicing, she asked dealership employees if Honda has made a fix available yet—and was told "no."

224.   The Conleys have suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of their vehicle.

225.   Neither Honda nor any of its agents, dealers, or other representatives informed the Conleys of the existence of the infotainment system's defect prior to purchase.

SECOND AMENDED COMPLAINT                                    - 58 -
010811-11/1205802 V1

### 15.     South Carolina—Emily Darr

226.     Plaintiff Emily Darr resides in Charleston, South Carolina.

227.     Plaintiff Darr purchased a new 2018 Honda Odyssey on November 1, 2017, from Hendrick Honda of Charleston, an authorized Honda dealership in Charleston, South Carolina.   Plaintiff Darr was interested in purchasing an Odyssey with the infotainment system and conducted most of her research from her home in South Carolina.  Plaintiff Darr was exposed to Honda's  omissions in that state and made her purchase decision there.

228.     Plaintiff Darr purchased and still owns this Odyssey.  Unknown to Plaintiff Darr at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused her out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.  Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Darr's purchase but did not disclose it to her.  Thus, Plaintiff Darr purchased her Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

229.     Plaintiff Darr selected and ultimately purchased her vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Plaintiff Darr tested a number of vans before settling on the Odyssey, and waited specifically for the release of the 2018 Odyssey.  Plaintiff Darr also paid a premium for the Touring Elite trim because she wanted a van equipped with Honda's CabinWatch feature, which allows a front seat occupant to monitor second and third row passengers through the infotainment system's main touch screen via a ceiling mounted camera.   This feature was particularly appealing to Plaintiff Darr because she has young children.

230.     Specifically, prior to purchase, Plaintiff Darr was told by a Honda dealership employee that the Odyssey was being redesigned, but would be worth the wait.  As a result, in the period leading up to the 2018 Odyssey's release, Plaintiff Darr

visited Hendrick Honda several times to inquire about the vehicle's specific release date, and did a significant amount of on- and offline research. Among other things, Plaintiff Darr researched the 2018 Odyssey's features on Honda's website, watched Honda's official "unveiling" video for the vehicle, and also reviewed Honda's printed marketing material (which was provided to her by Hendrick Honda) promoting the new Odyssey— which confirmed the addition of the new CabinWatch system. Furthermore, Plaintiff Darr finally learned that the 2018 Odyssey was in stock when she received a flyer in the mail promoting the vehicle. 230.      None of the advertisements reviewed or representations received by Plaintiff Darr contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in her vehicle suffered from numerous defects which would prevent the full use of her vehicle and pose safety risks, Plaintiff Darr would not have purchased her vehicle with the infotainment system, or would have paid less for the vehicle.

231.   Plaintiff Darr first began having problems with her vehicle's infotainment system in July 2018, when she observed that the DVD player would sometimes malfunction when the CabinWatch feature was also in use, and in turn disable the infotainment system as a whole. During these incidents, which continue to occur regularly, the DVD picture freezes while audio continues to play, and the CabinWatch interface displays an error message. When a user attempts to exit the CabinWatch application, the "home" button is unresponsive, and the display screen on the front console freezes and will not restart unless the vehicle is stopped and turned off for at least several minutes.

232.   On or about July 20, 2019, Plaintiff Darr brought her vehicle to Hendrick Honda to have the infotainment system in her vehicle serviced. However, dealership employees were unable to reproduce the problem, and made no other attempt to fix it.

233.   In the months following this visit, the infotainment system in Plaintiff Darr's vehicle began to malfunction more often. In October 2017, in advance of a long

road trip during which she anticipated using her vehicle's DVD player, Plaintiff Darr called Hendrick Honda to inquire whether an update was available from Honda that would fix the defect with her vehicle's infotainment system. The dealership employees with whom Plaintiff Darr spoke were unfamiliar with the defect, and suggested that she call American Honda to resolve her problem.

234. Plaintiff Darr lodged a complaint Honda on October 17, 2018, and was given a case number and case manager. Plaintiff Darr described her defect to the case manager, who in turn contacted Hendrick Honda. Eventually, a service manager at Hendrick Honda contacted Plaintiff Darr to explain that, in late October 2018, Honda had released an internal memo admitting the existence of a defect with the infotainment system in Odyssey vehicles, and conceding that a fix had yet to be developed. When Plaintiff Darr asked what her options were in light of this memo, the manager told Plaintiff Darr to consult the consumer rights booklet in her glove box.

235. Plaintiff Darr returned to Hendrick Honda on February 13, 2019, for service related to a door lock issue on her driver-side door, and she again asked if Honda had developed a fix for her defective infotainment system. The service advisor did not know.

236. As of this date, Plaintiff Darr continues to experience problems with the infotainment system in her Odyssey. Most recently, when Plaintiff Darr took her children apple picking—a four-hour drive—the DVD player once again failed to work.

237. Plaintiff Darr has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of her vehicle.

238. Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Darr of the existence of the infotainment system's defect prior to purchase.

1

### 16.     Tennessee—Pamela Turberville

2

239.    Plaintiff Pamela Turberville resides in and is a citizen of Afton, Tennessee.

3

240.    Ms. Turberville purchased a new 2019 Honda Pilot EX-L in December

4

2018 from Honda of Kingsport, an authorized Honda dealership located in Kingsport,

5

Tennessee.  Prior to purchasing the 2019 Pilot, Ms. Turberville owned a 2013 Honda

6

Pilot and was very satisfied with the overall performance of the vehicle from a quality

7

and reliability perspective.  So, when it was time to look for a new vehicle, she was very

8

interested in looking at the new 2019 Pilot.  Ms. Turberville went to the Honda of

9

Kingsport dealership and spoke to the dealeship's salesperson about the various features

10

offered in the new 2019 Pilot, including the new infotainment system.  The 2019 Pilot's

11

infotainment system was a very important feature to Ms. Turberville and was a major

12

factor in her decision to purchase the vehicle because she likes Sirius/XM radio and her

13

young children like to listen to the Disney and Kids Bop channels.

14

241.    Accordingly,  based  upon  the  above  described  interactions  and

15

communications, Ms. Turberville was exposed to Honda's  omissions in the state of

16

Tennessee and made her purchase decision in Tennessee.

17

242.    Ms. Turberville purchased and continue to own the 2019 Honda Pilot EX-

18

L.  Unknown to Ms. Turberville at the time she purchased the vehicle, the Pilot suffered

19

from (and continues to suffer from) a defective infotainment system, which has caused

20

overpayment and the diminished value of the Pilot.  Plaintiff was also deprived of the

21

benefit of the bargain.  Honda knew about this defect with the infotainment system at

22

the time Ms. Turberville purchased the vehicle but did not disclose it to her.  Thus, Ms.

23

Turberville purchased the Pilot on the reasonable but mistaken belief that it would be a

24

reliable vehicle and was not subject to any known defects.

25

243.    Ms. Turberville selected and ultimately purchased their Pilot, in part,

26

because of the features of the infotainment system, as represented through a Honda Pilot

27

brochure  and  representations  made  by  Honda  and  its  agents  at  the  dealership.

28

Specifically, prior to her purchase, Ms. Turberville spoke to the dealership salesperson who reviewed the features and benefits of the new Pilot, including the new infotainment system, and she also reviewed several Honda brochures discussing the features of the 2019 Pilot.  The fact that the 2019 Pilot EX-L contained the supposedly advanced infotainment system with the latest technology was one of the main reasons Ms. Turberville chose to purchase the Pilot.  None of Honda's advertisements or marketing information at the dealership contained any disclosure relating to any defects in the infotainment system.  Nor did the salesperson disclose any such defects with the infotainment system when he discussed the new system or when he gave Ms. Turberville a tutorial of the infotainment system.  Had Honda disclosed that the infotainment system in her vehicle was defective which prevents the full use of the vehicle as advertised, Ms. Turberville would not have purchased the Pilot with the infotainment system, or would have paid less for the vehicle.

244.   Ms. Turberville began experiencing problems with her Pilot's infotainment system soon after the purchase.  For example, the Sirius/XM radio function routinely pauses when in use so there is no audio, then returns, only to pause again with no audio. This occurs nearly every time Ms. Turberville listens to Sirius/XM.  Also, while listening to Sirius/XM, it is not uncommon for the infotainment screen to completely freeze, rendering the entire infotainment system nonoperational.  The only way Ms. Turberville has been able to reset the infotainment system is to turn the vehicle off and restart it. Since the date of purchase of her Pilot, the problems she has (and continues to experience) with the infotainment system are so frequent and pervasive that Ms. Turberville is not able to determine the precise dates she has experienced such problems. The defects described above constantly create substantial distractions which can result in dangerous driving conditions creating safety hazards.

245.   Plaintiff Turberville first took her Pilot to Johnson City Honda in or around March 2019 to seek a repair for the problems she was experiencing.  She was told that

because the issues were caused by a software problem, there was nothing the dealership could do.  She next contacted Honda of Kingsport about her issues when she took her vehicle in for an oil change, in or around June 2019.  Plaintiff Turberville asked the dealership personnel if there was a fix yet for the problems she was experiencing, and was told there was still no known fix for this issue and that, according to Honda, even replacing the infotainment system would not correct the issue. Plaintiff Turberville was told that she was not the only customer complaining about this but that a software update may be coming from Honda, and that she should just wait for that.

246.   To date, no Honda of Kingsport dealership employee has notified Ms. Turberville of an update to or fix for their vehicle's infotainment system, nor has she received any other notification from Honda about any potential permanent repair or aftermarket modification that would cure the defects they have experienced.

247.   As of this date, Ms. Turberville continues to experience the problems described above with the infotainment system in her Pilot.

248.   Ms. Turberville has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket losses,[7] overpayment, attempted repairs, and diminished value of their vehicle.

249.   Neither Honda nor any of its agents, dealers, or other representatives informed Ms. Turberville of the existence of the infotainment system's defects prior to purchasing the vehicle.

**17.   Texas—Smruti Patel**

250.   Plaintiff Smruti Patel resides in and is a citizen of McKinney, Texas.

251.   Plaintiff Patel purchased a new 2018 Honda Odyssey EX in October 2017 from Honda of McKinney, an authorized Honda dealership located in McKinney, Texas.

---

[7] Ms. Turberville pays a month subscription fee for Sirius/XM radio.  The defective infotainment system prevents Ms. Turberville from receiving the full benefit from the subscription.

Plaintiff Patel was attracted to and wanted to purchase the Odyssey because of the advertised infotainment system and its compatibility with the Apple Car Play app. Plaintiff Patel read reviews of the vehicle online including Edmunds and Cars.com. Plaintiff Patel also reviewed Honda's website and read the marketing material describing the various features on the Odyssey including the new infotainment system and the functions it offered, including its compatibility with Apple Car Play. Plaintiff Patel test drove the Odyssey at the Honda of McKinney dealership prior to purchase during which the salesperson described the various features contained in the 2018 Odyssey, including the state-of-art infotainment system. The Apple Care Play function marketed by Honda for the Odyssey was very important to Plaintiff Patel because he and his wife use iPhones. It was also important to Plaintiff Patel, and an attractive feature touted by Honda, that the Odyssey's infotainment system contained the latest technology. Accordingly, based upon the above described interactions and communications, Plaintiff Patel was exposed to Honda's omissions in the state of Texas and made his purchase decision in Texas.

252. Plaintiff Patel continues to own the 2018 Honda Odyssey. Unknown to Plaintiff Patel at the time he purchased the vehicle, the Odyssey suffered from (and continues to suffer from) a defective infotainment system, which has led to repeated attempts to repair and diminished the value of the Odyssey and caused Plaintiff Patel to overpay for the vehicle. Honda knew about this defect at the time of Plaintiff Patel's purchase but did not disclose it to Plaintiff Patel. Thus, Plaintiff Patel purchased the Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways and was not subject to any known defects.

253. Plaintiff Patel selected and ultimately purchased his Odyssey, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda. Specifically, prior to his purchase of the vehicle, Plaintiff Patel researched the Odyssey and its various features (including

the features of the infotainment system) by reviewing the marketing materials and interacting with the dealership salesperson as described above.  The fact that Honda marketed and claimed that the 2018 Odyssey contained the supposedly advanced infotainment system with the latest technology and was compatible with Apple Car Play was one of the main reasons Plaintiff Patel purchased the Odyssey.  None of the advertisements reviewed or representations received by Plaintiff Patel contained any disclosure relating to any defects in the infotainment system. Had Honda disclosed that the infotainment system in his vehicle suffered from numerous defects which would prevent his full use of his vehicle and pose safety risks, he would not have purchased his vehicle with the infotainment system or would have paid less for the vehicle.

254.  Plaintiff Patel began having problems with his Odyssey's infotainment system soon after the purchase.  For example, the infotainment system's handsfree phone function does not work properly as approximately 50% of incoming calls are not automatically routed to the system. This is the case for both Plaintiff Patel's iPhone and his wife's iPhone.  Further, when Plaintiff Patel attempts to make outgoing calls, approximately 50% of the time the infotainment system fails.  With regard to the Apple Car Play, the infotainment system routinely freezes when Plaintiff Patel attempts to use the maps and directions function and the music function.  In order to unfreeze the system, Plaintiff Patel must restart the Odyssey.  Since he purchased the Odyssey, the problems Plaintiff Patel has experienced with the vehicle's infotainment system are so frequent and pervasive that he is not able to determine the precise dates he has experienced such problems.  The defects described above constantly create substantial distractions which can result in dangerous driving conditions creating safety hazards

such as the inability to use the handsfree phone function.  A picture of the infotainment system failing is shown below:

255.   To date, no Honda of McKinney employee has notified Plaintiff Patel of an update to or fix for his vehicle's infotainment system, nor has Plaintiff Patel received any other notification from Honda about any potential permanent repair or aftermarket



modification that would cure the defects he has experienced.  Because of the poor performance and repeated problems he was experiencing with the Odyssey, Plaintiff Patel called Honda Customer Service to register his complaint and to seek a resolution. Honda Customer Service told Plaintiff Patel to make an appointment with the local Honda dealership.  When Mr. Patel made a service appointment and returned his vehicle to the Honda of McKinney dealership to address the above-described issues, the technician explained that they could not replicate any of the problems.  The technician stated that he did download the most recent software update for the vehicle.  However,

the problems with Plaintiff Patel's Odyssey persist.  Plaintiff Patel called the Honda of McKinney dealership in May to again report about and to request assistance with the poor performance of the infotainment system.  The dealership has yet to follow up with Plaintiff Patel to schedule a service appointment.

256.  Since June, Plaintiff Patel has made additional visits to Honda of McKinney, but has been told that his problems are an "update issue."  However, even after installing updates to his vehicle, Plaintiff Patel's problems persist.  Furthermore, when Plaintiff Patel spoke to Honda's customer service about the problem, he was told that he must resolve these issues through the dealer from which he purchased his vehicle.

257.  As of this date, Plaintiff Patel continues to experience problems with the infotainment system in his Odyssey.

258.  Plaintiff Patel has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, overpayment, attempted repairs, and diminished value of his vehicle.

259.  Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Patel of the existence of the infotainment system's defects prior to purchasing the vehicle.

**18.  Virginia—Ann Morgan**

260.  Plaintiff Ann Morgan resides in Washington, DC.

261.  Plaintiff Morgan purchased a new 2019 Honda Odyssey on August 9, 2018, from Brown's Arlington Honda, an authorized Honda dealership in Arlington, Virginia.  Plaintiff Morgan was interested in purchasing an Odyssey with the infotainment system and conducted most of her research from her home in Washington, D.C.  Plaintiff Morgan was exposed to Honda's omissions in that state and made her purchase decision there.

262.  Plaintiff Morgan purchased and still owns this Odyssey.  Unknown to Plaintiff Morgan at the time of purchase, the Odyssey suffered from a defective

infotainment system, which has caused her out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.  Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Morgan's purchase but did not disclose it to Plaintiff Morgan.  Thus, Plaintiff Morgan purchased her Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

263.   Plaintiff Morgan selected and ultimately purchased her vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.  Specifically, prior to her purchase of the vehicle, Plaintiff Morgan researched the Honda Odyssey extensively online (including viewing Honda's website), and was attracted to it over alternative vehicles (like the Honda CR-V) because of the vehicle's purported safety, including Apple CarPlay, which allows for dashboard access to GPS, the backup camera, and handsfree calling—features that were particularly important to Plaintiff Morgan who, at the time of purchase, was pregnant with twins and looking for a car that would accommodate and protect her growing family.  None of the advertisements reviewed or representations received by Plaintiff Morgan contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in her vehicle suffered from numerous defects which would prevent the full use of her vehicle and pose safety risks, she would not have purchased her vehicle with the infotainment system, or would have paid less for the vehicle.

264.   Plaintiff Morgan first began having problems with her vehicle's infotainment system on or about February 10, 2019, when the system froze while she and her husband were driving on the Capital Beltway.  Plaintiff Morgan pulled off the highway and turned off her vehicle, but the infotainment system's display screen would not deactivate or restart; consequently, the backup camera, on-screen GPS, Bluetooth, climate controls, and radio were disabled as well.

265.   That same day, Plaintiff Morgan brought her vehicle to Brown's Arlington Honda to have the infotainment system inspected.  Plaintiff Morgan was told to leave her vehicle for service.  When she picked up her vehicle six days later, she was told that the problems with her infotainment system were attributable to a software failure, and that the dealership had performed a "hard reset" on the system.

266.   On or about March 23, 2019, during a drive from Washington, D.C. to New York City, the infotainment system in Plaintiff Morgan's vehicle crashed once again, and would not reboot.  Plaintiff Morgan pulled over and attempted to contact Brown's Arlington Honda in search of a remote fix for the problem; she was told that there was no way for a user to reboot the infotainment system, and instructed to drive her car to a Honda dealership for service.  When Plaintiff Morgan and her husband arrived in New York several hours later, the infotainment system was still frozen, meaning that the auxiliary functions of the car could not be completely turned off, and the infotainment system continued to draw from the car battery even after the car was parked.

267.   On or about March 25, 2019, Plaintiff Morgan contacted the service manager at Browns Arlington Honda to inquire about a fix for her infotainment system.  During this call, she was transferred to a technician.   The technician expressed frustration with Honda's response to the problem and explained that this was a known problem; however, the technician told Plaintiff Morgan that, to his knowledge, there was no way to prevent or fix the infotainment system defect.   The technician stated that he believed the infotainment defect was correlated to a defect in the infotainment system's interaction with Apple iPhones while using Apple CarPlay.  Plaintiff Morgan was advised to cease utilizing these features, which include GPS and handsfree calling.

268.   On or about March 25, 2019, Plaintiff Morgan contacted American Honda Motor Co., Inc. and informed them of the defect with her infotainment system.  Plaintiff Morgan was informed that a "case" was opened and that she would be contacted regarding a resolution.  To date, Plaintiff Morgan has not received any notification from

Honda about any potential repair or aftermarket modification that would cure the defects she has experienced.

269.   Plaintiff Morgan has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of her vehicle.

270.   Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Morgan of the existence of the infotainment system's defect prior to purchase.

**19.   Washington—Julie Pereira**

271.   Plaintiff Julie Pereira resides in Lynnwood, Washington.

272.   Plaintiff Pereira purchased a new 2019 Honda Odyssey Elite on August 9, 2018, from Honda of Kirkland, an authorized Honda dealership in Kirkland, Washington.   Plaintiff Pereira was interested in purchasing an Odyssey with the infotainment system and conducted most of her research from her home in Lynnwood, Washington.  Plaintiff Pereira was exposed to Honda's  omissions in that state and made her purchase decision there.

273.   Plaintiff Pereira purchased and still owns this Odyssey.   Unknown to Plaintiff Pereira at the time of purchase, the Odyssey suffered from a defective infotainment system, which has caused her out-of-pocket loss, attempted repairs, and diminished value of the Odyssey.   Plaintiff was also deprived of the benefit of the bargain.  Honda knew about this defect at the time of Plaintiff Pereira's purchase but did not disclose it to Plaintiff Pereira.  Thus, Plaintiff Pereira purchased her Odyssey on the reasonable but mistaken belief that it would be safe and reliable on public roadways.

274.   Plaintiff Pereira selected and ultimately purchased her vehicle, in part, because of the features of the infotainment system, as represented through advertisements and representations made by Honda.   Specifically, Plaintiff Pereira

sought an Odyssey with all of the available features offered by Honda, including the infotainment system, and chose to pay extra for the "Elite" option.   None of the advertisements reviewed or representations received by Plaintiff Pereira contained any disclosure relating to any defects in the infotainment system.  Had Honda disclosed that the infotainment system in her vehicle suffered from numerous defects which would prevent the full use of her vehicle and pose safety risks, she would not have purchased her vehicle with the infotainment system, or would have paid less for the vehicle.

275.   Plaintiff Pereira consulted a wide variety of sources before buying her Odyssey, and began doing research related to the purchase in early 2018.  In March 2018, for instance, Plaintiff Pereira visited Honda of Kirkland, where a dealership employee reviewed the features of the 2018 Odyssey and, among other things, gave Plaintiff Pereira a Honda-produced booklet on the newly re-designed 2018 model.  During this time, Plaintiff Pereira also reviewed Honda's website and Facebook page, and was drawn by Honda's marketing of the redesigned infotainment system— including the CabinWatch and CabinTalk features, as well as the fact that Apple CarPlay was new in the 2018 model.

276.   On July 7, 2018, Plaintiff Pereira visited a separate Honda dealership in Burlington, Washington, where she and her husband discussed the 2018 Odyssey with a salesperson and inspected two 2018 Odysseys that were present on site (among other things, Plaintiff Pereira looked at the Monroney labels on these vehicles).  Later in July 2018, Plaintiff Pereira returned to Honda of Kirkland once more, and as part of that visit discussed the differences between the 2018 and 2019 Odysseys with a salesman, as well as financing.  On August 3, 2018, Plaintiff Pereira returned to the dealership a third time to purchase the vehicle. 276.   Plaintiff Pereira's problems with her vehicle's infotainment system started almost immediately after purchasing her vehicle in August 2018, when her phone began having issues connecting to wireless internet through the infotainment system's Apple CarPlay feature.  The other problems she has experienced

include, but are not limited to, frequent failure of the CarPlay system's map, text messaging, and calling features; failure of the Bluetooth calling feature; failure of the rear DVD player; and freezing and lockup of the infotainment system as a whole (including all associated controls and functions).  Since the date of purchase, the problems Plaintiff Pereira has experienced with her infotainment system are so frequent and pervasive that she is not able to determine the precise dates she has experienced such problems.

277.  On August 25, 2018, less than three weeks after purchase, Plaintiff Pereira bought her vehicle to Honda of Kirkland to have the infotainment system inspected because of problems connecting her phone to the Apple CarPlay system.  During the visit, dealership employees were unable to reproduce the problem.

278.  Plaintiff Pereira returned to Honda of Kirkland on September 11, 2018, after her problems with the CarPlay system continued.  Although dealership employees were once again unable to reproduce the problem, they performed a system reset on the infotainment system.  In a text message exchange on September 12, a Honda technician suggested that Plaintiff Pereira's problems were attributable to her phone, and recommended she buy a new one.  Although Plaintiff Pereira did so, her problems continued.

279.  Plaintiff Pereira returned to Honda of Kirkland a third time on September 29, 2018.  Initially, dealership employees were again unable to reproduce the problems on site.  However, a technician was finally able to do so after Plaintiff Pereira insisted that he drive the vehicle off site.  In an attempt to fix the problem, the dealership once again performed a system reset of Plaintiff Pereira's infotainment system.

280.  Plaintiff Pereira's problems continued unabated.  Plaintiff Pereira became so frustrated by their persistence that she largely stopped using the Apple CarPlay feature.

281.   On April 21, 2019, while Plaintiff Pereira was returning home with her family from a trip to Bremerton, Washington, the infotainment system froze, including all associated controls.  At the time the system froze, the air conditioning was on, and Plaintiff Pereira was unable to adjust it or disable it afterwards.

282.   When Plaintiff Pereira and her husband turned their vehicle off in an attempt to fix the problem, the infotainment system's screen remained frozen and inoperable.  The system remained frozen until Plaintiff Pereira returned to the Seattle area.

283.   After this incident, Plaintiff Pereira returned to Honda of Kirkland on April 30, 2019.  Once again, dealership employees were unable to reproduce the problem on site.  However, during the same visit, Plaintiff Pereira was told that hers was a known issue to Honda for which it is developing a fix, but that the release date for that fix is unknown.

284.   On May 8, 2019, the rear DVD player in Plaintiff Pereira's vehicle stopped functioning for two days; since resuming function, the DVD player has, to date, only worked intermittently.

285.   On May 20, 2019, Plaintiff Pereira returned to Honda of Kirkland to have the rear entertainment system and infotainment system inspected.  During this visit, Plaintiff Pereira showed dealership employees videos of the malfunction.  However, they were unable to duplicate the problem, and once again performed a factory reset of the infotainment system.

286.   Most recently, on October 12, 2019, Plaintiff Pereira returned to Honda of Kirkland to have the infotainment system inspected.  Dealership employees once again told her that none of the issues she has experienced could be reproduced by the dealership—despite Plaintiff Pereira showing them videos she had previously taken of the system malfunctioning.

287.   Plaintiff Pereira has documented some of these failures in the following photographs:

 

288.   Each time Plaintiff Pereira brings her vehicle in for these unsuccessful services, it places significant demands on her time, energy, and money: Plaintiff Pereira must find a babysitter for her six children, move her car seats into a rental, and drive to and from the dealership (a lengthy drive, particularly when there is traffic).

289.   To date, Plaintiff Pereira has not received any notification from Honda about any potential repair or aftermarket modification that would cure the defects she has experienced.

290.   Plaintiff Pereira has suffered an ascertainable loss as a result of Honda's omissions associated with the infotainment system, including but not limited to, out-of-pocket loss associated with the infotainment system defect alleged herein and attempted repairs, and diminished value of her vehicle.



291.   Neither Honda nor any of its agents, dealers, or other representatives informed Plaintiff Pereira of the existence of the infotainment system's defect prior to purchase.

**B.      Defendant**

292.   Defendant American Honda Motor Co., Inc. is a California corporation with its headquarters in Torrance, Los Angeles County, California.

293.   In this Complaint, when reference is made to any act, deed or conduct of Defendant or Honda, the allegation means that Defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

294.   Honda sells cars in part via communications that it authorized its dealers to make about Honda vehicles, including the Defective Vehicles discussed herein.  This includes authorizing Honda dealers to distribute brochures and other marketing and promotional material.   Honda, through its authorized dealers, has and had the opportunity to disclose all material facts relating to the Defective Vehicles.

295.   Authorized Honda dealers are Honda's agents, such that an opportunity to receive information from an authorized Honda dealership is an opportunity to receive information directly from Honda itself.  *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015).  This agency relationship is established by the fact that, among other things: Honda's logo is displayed at authorized dealerships; Honda issues technical bulletins and service instructions to dealerships detailing potential vehicle problems, and also relies on them to push software updates to customers' vehicles; Honda distributes various adverting and promotional material to its dealerships, including brochures, booklets, and pamphlets; and under the terms of its express

warranty, Honda requires its customers to return to its authorized dealerships to perform warranty repairs.[8]

296.  Furthermore, Honda's relationship with its dealerships is governed by a dealership agreement[9] that imposes a number of reciprocal obligations on both parties. Among other things, it requires:

- that Honda offer to dealers "general and specialized product information and . . . provide field sales personnel to advise and counsel Dealer's sales organization on sales-related subjects such as merchandising, training, and sales management," (Dealership Agreement § 1.2.A), as well as "general and specialized service and parts training courses" (*id.* § 1.2.B);

- that Honda make available to dealers: (1) "sample copies of building layout plans or facility planning recommendations, including sales, service and parts space and the placement, installation and maintenance of recommended signs[;]" as well as, "from time to time," (2) "representatives . . . to counsel and advise Dealer and its personnel in connection with Dealer's planning and equipping the Dealership Premises" (*id.* § 1.3);

- that Honda make available "such sales, service and parts manuals, brochures, special service tools and equipment and other data for Honda Products as American Honda deems necessary for Dealership Operations" (*id.* § 1.4);

- that Honda "agree to maintain a nationwide system of authorized dealerships of Honda Products" and that, "[i]n order that those authorized dealers may be assured of the benefits of comprehensive advertising of Honda Products,"

---

[8] *See* New Vehicle Limited Warranties, *supra* note 4.  For example, page 12 of both the 2018 and 2019 warranties states, in relevant part: "[u]nder normal circumstances, Honda will pay for warranty repairs only when they are performed at an authorized Honda repair facility."

[9] A copy of Honda's Automobile Dealer Sales and Service Agreement (Dealership Agreement), filed with the U.S. Securities and Exchange Commission, is attached as Exhibit A hereto.  A true and correct copy is also available at https://www.sec.gov/Archives/edgar/data/1019849/000095012402000556/k66280ex1 0-2_3.txt.

Honda agree to "establish and maintain general advertising programs in such manner and amount as it may deem appropriate and will make sales promotion and campaign materials available" to dealers (*id.* § 1.5);

- that dealers "promote and sell, at retail, Honda Products, and . . . promote and render service, whether or not under warranty, for those products within the Dealer's Primary Market Area" (*id.* § 3.1);

- that dealers "agree[] to establish and maintain an adequate and trained sales and customer relations organization," and "agree[] to establish and maintain a complete service and parts organization, including a qualified service manager and a qualified parts manager and a number of competent service and parts personnel adequate to care for the service obligations to be performed by Dealer under the Agreement" (*id.* § 3.3);

- that dealers "agree[] to acknowledge, investigate and resolve satisfactorily all complaints received from owners of Honda Products in a businesslike manner in order to secure and maintain the goodwill of the public, and to "promptly report[]" to Honda "[a]ny complaint received by Dealer which . . . cannot be readily remedied" (*id.* § 3.4);

- that dealers "will follow all reasonable directives, suggestions and policies of American Honda," and that "[a]ll written directives, suggestions and policies of American Honda contained in any of its bulletins or manuals, which are in effect as of the date of the Agreement or are issued thereafter, will be deemed a part of the Agreement" (*id.* § 3.9);

- that dealers "perform any and all warranty, recall, product improvement or product update service in compliance with instructions and directives issued by American Honda, regardless of where the Honda Product involved was purchased," and that "to protect and maintain the goodwill and reputation of Honda Products and the Honda Trademarks," dealers "agree[] that [they] will

not charge any customer for warranty service or any work done in connection with such warranty, recall, product improvement or update or any other service as to which Dealer is reimbursed by American Honda" (*id.* § 3.12);

- that dealers "understand[] and agree[] that the only warranties that will be applicable to Honda Products will be such written warranty or warranties as may be furnished by American Honda." The same provision states: "Except for its express liability under such written warranties, American Honda neither assumes nor authorizes any other person or party to assume for it any other obligation or liability in connection with any Honda Product or component thereof" (*id.* § 4.1);

- that dealers "agree[] that [they] will expressly incorporate any warranty furnished by American Honda with a Honda Automobile as a part of each order form or other contract for the sale of such Honda Automobile by Dealer to any buyer," "agree that [they] will deliver to the buyer of all Honda Products, at the time of delivery of such Honda Products, copies of such applicable warranties as may be furnished by American Honda," and "agree[] to abide by and implement in all other respects American Honda's warranty procedures in effect at the time of Dealer's sale" (*id.* § 4.2);

- that dealers "agree[] to develop and actively utilize programs for the advertisement and promotion of Honda Products and its servicing of such products." The provision further states: "Such programs will include the prominent display and use or demonstration of Honda Automobiles. Dealer further agrees to cooperate with all reasonable promotional programs developed by American Honda" (*id.* § 5.1);

- that dealers "agree[] that [they] will not advertise, promote or trade in Honda Products or the servicing thereof in such a manner as to injure or be detrimental to the goodwill and reputation of American Honda and the Honda

Trademarks."  The provision further states: "Dealer further agrees that it will not publish or otherwise disseminate any advertisement or announcement or use any form or media of advertising which is objectionable to American Honda. Dealer agrees to discontinue immediately any advertisement or form of advertising deemed objectionable upon request of American Honda" (*id.* § 5.2);

- that dealers, "[s]ubject to applicable federal, state or local ordinances, regulations and statutes, . . . agree[] to erect and maintain, at the Dealership Location, at Dealer's expense, authorized product and service signs of types required by American Honda, as well as such other authorized signs as are necessary to advertise the Dealership Operations effectively and as are required by American Honda" (*id.* § 5.3);

- that dealers "agree[] that American Honda has the exclusive right to and to control the use of the Honda Trademarks and but for the right and license granted by Paragraph 6.2 hereof to use and display the Honda Trademarks, Dealer would have no right to use the same" (*id.* § 6.1);

- that dealers are "granted the nonexclusive right and license to use and display the Honda Trademarks at the Dealership Premises."  The provision further states: "Such use or display is limited to that which is necessary in connection with the sale, offering for sale and servicing of Honda Products at retail at the Dealership Location. Dealer agrees that it will promptly discontinue the use of any of the Honda Trademarks or change the manner in which any of the Honda Trademarks is used when requested to do so by American Honda" (*id.* § 6.2);

- that dealers "agree[] to keep complete and current records regarding the sale and servicing of Honda Products and to prepare for American Honda such reports, based on those records, as American Honda may reasonably request."

SECOND AMENDED COMPLAINT                           - 81 -

The provision further states: "In order that policies and procedures relating to the applications for reimbursement for warranty and other applicable work and for other credits or reimbursements may be applied uniformly to all authorized dealers, Dealer agrees to prepare, keep current and retain records in support of requests for reimbursement or credit in accordance with policies and procedures designated by American Honda" (*id.* § 7.3);

- that dealers "agree[] to permit, during reasonable business hours, American Honda, or its designee, to examine, audit, reproduce and take copies of all reports, accounts and records pertaining to the sale, servicing and inventorying of Honda Products, including, but not limited to, records in support of claims for reimbursement or credit from American Honda, and with the prior approval of Dealer, which approval will not be unreasonably withheld, to interview Dealer employees with respect thereto" (*id.* § 7.4);

- that the Dealership Agreement is terminated where a dealer fails "to provide adequate representation, promotion, sales or service, including warranty work" (*id.* § 9.4.N); and that, "not later than the effective date of the termination or expiration of the Agreement," dealers "will, at [their] sole expense, discontinue any and all uses of any Honda Trademarks and any words, symbols and marks which are confusingly similar thereto; will remove all signs bearing any Honda Trademark and will destroy all stationery, repair orders, advertising and solicitation materials, and all other printed matter bearing any Honda Trademark or referring directly or indirectly to American Honda or Honda Products in any way which might make it appear to members of the public that Dealer is still an authorized dealer," including, but not limited to, "discontinuing the use of a Honda Trademark as part of Dealer's business and corporate name." The provision continues: "Dealer will also deliver to American Honda, at American Honda's place of business, or to a

person designated by American Honda, or will destroy the same upon request by American Honda, any and all technical or service literature, advertising and other printed material then in Dealer's possession which relates to Honda Products and which was acquired or obtained by Dealer from American Honda. Dealer will destroy any sign bearing a Honda Trademark which has not been repurchased by American Honda." (*id.* § 10.3).

## IV.   FACTUAL ALLEGATIONS

### A.   The Honda Infotainment System

297.   Honda first introduced the infotainment system found in the Class Vehicles in the 2018 Odyssey, and later to the 2019 Pilot and 2019 Passport. It replaced Honda's proprietary "HondaLink" infotainment system, and its operating system is based on a modified Android operating system developed by Honda.

298.   The Vehicles' infotainment system consists of either two or three LCD screens: (1) a primary touch screen located in the center console; (2) a screen located above the steering wheel that functions as a digital speedometer/odometer, and that displays other information as well (e.g., remaining fuel, current song, turn-by-turn directions); and (3) in certain upgraded Odyssey and Pilot models[10], a screen—marketed as the "Rear Entertainment System" (or "RES")—that folds down from the top of the vehicle's cabin and can be used by back seat passengers via a Honda-provided remote control to watch DVDs and interact with various applications.

299.   The following photograph depicts the first two screens (which each and every Defective Vehicle has) described above as they appear to a driver:

---

[10] Specifically, for both 2018-2019 Odysseys and 2019 Pilots, the RES is available as an upgrade for the "EX-L" trim, and comes with both the "Touring" and "Elite" trims. The RES is not available as an upgrade for both the "LX" and "EX" trims. The RES is not an available feature in the 2019 Passport.

1



2

3

4

5

6

7

8

9

10

11    300.   The centerpiece of the Vehicles' infotainment system is an 8-inch

12 touchscreen located in the center stack, depicted in the photograph below:

13



14

15

16

17

18

19

20

21

22

23    301.   As can be seen above, the touchscreen interface is akin to a horizontally-

24 oriented tablet.  It is organized around a customizable tile-based user interface with tap,

25 swipe, pinch, and zoom functionality, and controls all access to the vehicle's audio,

26 safety (including the CabinWatch rear seat monitor), navigation, communications,

27 entertainment, and climate control features.

28

SECOND AMENDED COMPLAINT                    - 84 -
010811-11/1205802 V1

302.   The second LCD interface is located directly in front of the driver, as depicted in the photograph below:



303.   This interface mimics a traditional instrument panel, and displays additional information as well, including turn-by-turn directions, current song, and the numbers recently dialed by a Bluetooth-paired phone.  It is not a touchscreen; rather, it is operated by buttons on the steering wheel, which can be used to perform some of the same functions that can be performed on the center stack interface, albeit on a more limited basis (e.g., to switch between Honda's user interface and Apple CarPlay/Android Auto, change audio, or toggle between different in-car applications).

304.   The third LCD interface—an optional rear entertainment system—is a 10.2 inch high-resolution screen mounted to the top of the vehicle cabin, between the front driver and passenger seats, as depicted below:



305.   This interface functions as a DVD/Blu-ray media player, and can also be used with a number of built-in entertainment apps.  It is not a touchscreen; rather, it is operated via a Honda-provided remote control.

**B.     Defendant's Failure to Fix or Disclose the Defect**

306.   Defendant engineered, manufactured, tested, warranted, advertised, distributed, sold, and leased the 2018-2019 Odyssey, 2019 Pilot, and 2019 Passport vehicles equipped with defective infotainment systems.

307.   It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of its vehicles.  Honda did so for the Defective Vehicles and tested the operation of the infotainment systems prior to selling the Defective Vehicles.  Given the immediacy and frequency of consumer complaints about the infotainment system contained in the Defective Vehicles, it is clear that Honda knew about the defects before the Defective Vehicles were sold.

308.   Because the Vehicles' infotainment systems are responsible for a wide variety of vehicle functions (including navigation, audio, video, handsfree phone, backup cameras, etc.), the defect causes a wide range of problems for the Vehicles.  For

instance, the defect can cause the entire center console to go black or blue while the vehicle is in motion, thereby posing a substantial distraction to the driver.

309.   These serious defects have plagued the Vehicles' infotainment systems since the system's launch.  For example, the database maintained by the National Highway Transportation Safety Administration contains numerous customer complaints about the Vehicles' infotainment systems, some of which are set forth below include:

**Date Complaint Filed:** December 19, 2017
**Date of Incident:** October 14, 2017
**NHTSA ID Number:** 11055584
**Vehicle Identification Number:** 5FNRL6H8XJB****
**Vehicle Type:** 2018 Odyssey

FAILURE OF THE REAR ENTERTAINMENT SYSTEM: THE REAR CAMERA AND ENTERTAINMENT SYSTEM WILL LOST "NETWORK CONNECTIVITY" AND STOP FUNCTIONING…. FAILURE OF THE INFOTAINMENT SYSTEM: THE INFOTAINMENT SYSTEM WILL TURN OFF AND GO INTO A SERIES OF FAILURES, ULTIMATELY TURNING OFF COMPLETELY AND NOT FUNCTIONING. THE INFOTAINMENT SYSTEM WILL ALSO EXPERIENCE POWER ERRORS RESULTING IN ERRORS WITH THE ANTI THEFT SYSTEM. IN ADDITION, THE RADIO/SPEAKERS PERIODICALLY STOP WORKING.

**Date Complaint Filed:** February 13, 2018
**Date of Incident:** August 23, 2017
**NHTSA ID Number:** 11072728
**Vehicle Identification Number:** 5FNRL6H78JB****
**Vehicle Type:** 2018 Odyssey

THE CENTER CONSOLE, WHICH IS THE MONITOR THAT UTILIZES GPS NAVIGATION, REAR VIEW CAMERA DISPLAY, CONTROLS HEAT/AC, VOLUME CONTROL, ETC. HAS CONTINUED TO FAIL SINCE DATE OF PURCHASE (7/15/17). THE MONITOR SHUTS DOWN AT RANDOM TIMES, FOR UNIDENTIFIED REASONS, LEAVING THE DRIVER, DISTRACTED AND ATTEMPTING TO RESOLVE. THE SHUT DOWN CAN OCCUR WHILE IN THE VAN IS MOVING OR STATIONARY. NAVIGATION SHUTS DOWN WHILE THE DRIVER IS IN ROUTE TO A LOCATION CAUSING SIGNIFICANT

DISTRACTION.… Honda WAS MADE AWARE OF THIS PROBLEM IN AUGUST 2017. WE BROUGHT OUR VAN IN TO THE SHOP TWICE AND NO RESOLUTION WAS FOUND. WE FILED A COMPLAINT WITH Honda AMERICA (VOICE MAILS ARE RETAINED AS RECORD). AFTER SEVERAL MONTHS OF NO RESOLUTION, Honda AMERICAN TOLD US OUR CASE WAS BEING CLOSED BECAUSE THE COMPANY CONTINUED TO HAVE NO RESOLUTION. 7 MONTHS AFTER PURCHASE THE CENTER CONSOLE/MONITOR CONTINUES TO RANDOMLY FAIL. SOMETIMES THE MONITOR GOES BLACK, SOME FEATURES WORK WHILE OTHERS STOP (FOR EXAMPLE THE RADIO MAY WORK WHILE THE SCREEN IS BLACK). SOMETIMES THE MONITOR GOES BLUE AND EVERYTHING SHUTS DOWN. PHOTOS AND VIDEOS OF THESE OCCURRENCES WERE SUBMITTED TO Honda VIA EMAIL. THE PROMOTED FEATURES BY Honda AMERICA LEAD THE BUYER TO BELIEVE THERE IS ADDED SAFETY IN THIS VAN. THE OPPOSITE HAS TURNED OUT TO BE TRUE. THESE FAILURES CAUSE SERIOUS SAFETY CONCERNS FOR THE DRIVER AND THE YOUNG FAMILIES UTILIZING THE VAN.

**Date Complaint Filed:** September 5, 2018
**Date of Incident:** September 2, 2018
**NHTSA ID Number:** 11124525
**Vehicle Identification Number:** 5FNRL6H89JB****
**Vehicle Type:** 2018 Odyssey

TOURING-REAR ENTERTAINMENT SYSTEM SHUTS OFF TO BLACK SCREEN AND CABINWATCH LOSES SIGNAL AND GIVES AN ERROR CODE. WHILE DRIVING LONG DISTANCES, THE KIDS CAN ONLY WATCH THE FIRST 30 MINUTES OF THEIR DVD BEFORE THE SYSTEM SEEMS TO OVERHEAT AND COMPLETELY SHUTDOWN. WE HAVE RESORTED TO TURNING IT OFF TO LET IT COOL DOWN (DVD THAT IS REMOVED FROM THE PLAYER COMES OUT SCALDING HOT) BEFORE RETRYING TO LET THEM WATCH AND HAVE IT FAIL A FEW MINUTES LATER. CABINWATCH SEEMS TO ACT UP AT THE SAME TIME THE REAR ENTERTAINMENT SYSTEM FAILS.

**Date Complaint Filed:** October 29, 2018
**Date of Incident:** October 23, 2018
**NHTSA ID Number:** 11143895

**Vehicle Identification Number:** n/a
**Vehicle Type:** 2018 Odyssey

ENTIRE DASH TURNED OFF WHILE DRIVING INCLUDING SPEEDOMETER AND INFORMATION SCREEN-REPLACED RADIOHEAD…. IT'S A BAD REAR ENTERTAINMENT SYSTEM. I BOUGHT MY CAR 1 YEAR AGO AND IT'S OBVIOUSLY FLAWED.

**Date Complaint Filed:** December 25, 2018
**Date of Incident:** October 22, 2018
**NHTSA ID Number:** 11163391
**Vehicle Identification Number:** 5FNRL6H76JB****
**Vehicle Type:** 2018 Odyssey

CRAKLING SOUND ON DASH FROM SIDE TO SIDE, NOISY AND STRONGER BY THE WEEKS. TOOK CA TO THE DEALER WITH 12K MILES; THREE ATTEMPTS WERE MADE. Honda SERVICE REPLACED THE AUDIO SYSTEM, NEXT ATTEMPTS THEY SAID IT WAS MY IPHONE CABLE. NOW, WITH 14K MILES, CAN'T USE RADIO, BLUETOOTH, CARPLAY AND THE ENT SYSTEM FREEZES. ANY CALL I MAKE OR RECEIVE, THE CRACKLIN STARTS AND CALL FREEZES UNTIL GETS DISCONNECTED. DOES NOT MATTER IF THE CAR IS PARKED OR ON THE ROAD. HAVE MORE THAN 10 VIDEOS SHOWING THE PROBLEM. WILL GO NOW TO THE 4TH ATTEMPT TO SEE IF IT CAN BE FIXED.

**Date Complaint Filed:** January 5, 2019
**Date of Incident:** November 15, 2018
**NHTSA ID Number:** 11165340
**Vehicle Identification Number:** n/a
**Vehicle Type:** 2019 Pilot

WHILE DRIVING, BOTH HIGHWAY AND AROUND TOWN, LOUD CRACKLING WOULD OCCUR THROUGH THE SPEAKERS. THEN BOTH THE NAVIGATION SCREEN AND/OR THE SPEEDOMETER SCREEN WOULD GO COMPLETELY BLACK. THE MESSAGE "NETWORK CONNECTION LOST" WOULD SOMETIMES APPEAR. ALL BLUETOOTH CONNECTIVITY AND SPEAKER USAGE WAS LOST. THIS OCCURS ALMOST EVERY DAY WHILE COMMUTING. CAR HAS BEEN BROUGHT TO Honda SERVICE TWICE FOR REPAIRS.

**Date Complaint Filed:** March 20, 2019
**Date of Incident:** March 16, 2019
**NHTSA ID Number:** 11190215
**Vehicle Identification Number:** 5FNYF6H09KB****
**Vehicle Type:** 2019 Pilot

RECURRENT PROBLEM. STARTED WHEN VEHICLE WAS 2 MONTHS OLD. TAKEN CAR TO DEALER SERVICE DEPARTMENT. NO SOLUTION.

WHEN IN MOTION (HIGHWAYS, CITY ROADS) SPEAKERS MAKE A SPARKLING SOUND FOLLOWED BY THE ENTERTAINMENT SCREEN (NAVIGATION, HANDHELD PHONE, REAR VISION...) AND THE ODOMETER SCREEN (SPEED DISPLAY, ALL THE SIGNALS) BECAME DEAD. IT COULD LAST FEW SECONDS AND REBOOT BACK OR UP TO 30 MINUTES. IN A 15 MILE JOURNEY, COULD HAPPEN AROUND 15 TIMES. SO THE DANGEROUS SITUATION IS THAT I AM DRIVING WITH NO IDEA HOW MUCH SPEED I AM GOING, I AM NOT ABLE TO USE MY HANDHELD PHONE (ALSO VERY IMPORTANT TO ME AS A BUSY DOCTOR TRYING TO ANSWER EMERGENCY CALLS), NO NAVIGATION SYSTEM AVAILABLE, THE REAR VISION CAMERA BECOMES USELESS WITH A BLANK SCREEN...

I LEARNT FROM THE INTERNET THAT THIS IS AN ONGOING PROBLEM AND NO SOLUTION HAVE BEEN FOUND.

PROBLEM HAPPENS IN MOTION AND ALSO OR WHEN CAR IS PARKED.

**Date Complaint Filed:** April 7, 2019
**Date of Incident:** March 31, 2019
**NHTSA ID Number:** 11194482
**Vehicle Identification Number:** 5FNYF5H60KB****
**Vehicle Type:** 2019 Pilot

WHEN DRIVING THE CAR, THE INSTRUMENT PANEL (INCLUDING THE SPEEDOMETER) WILL SHUT OFF FOR APPROXIMATELY 2 MINUTES, AND THE REBOOT. THIS RESULT IN THE INABILITY TO TELL EXACTLY HOW FAST THE VEHICLE IS MOVING. THIS WILL

OCCUR UNDER MULTIPLE CONDITIONS WHILE THE CAR IS IN DRIVE, AND IS NOT DEPENDENT ON THE TYPE OF ROAD BEING DRIVEN ON. ADDITIONALLY, THE CENTER CONSOLE INFOTAINMENT SCREEN, WHICH ALSO SERVES AS THE SCREEN FOR THE BACK UP CAMERA WILL SHUT OFF, FOR VARYING AMOUNTS OF TIME, RENDERING THE ABILITY TO SEE/USE THE BACK UP CAMERA USELESS. I HAVE ENCOUNTERED, ON NUMEROUS OCCASIONS, BOTH SYSTEMS SHUTTING OFF AT THE SAME TIME, WHILE THE CAR IS IN DRIVE OR REVERSE, LEAVING ME WITH THE UNABLE TO SAFELY GAUGE HOW I AM OPERATING THE VEHICLE.

**Date Complaint Filed:** April 3, 2019
**Date of Incident:** April 3, 2019
**NHTSA ID Number:** 11193522
**Vehicle Identification Number:** 5FNRL6H73JB\*\*\*\*
**Vehicle Type:** 2018 Odyssey

I SHOULD HAVE NEVER GONE BACK TO Honda! MY 2018 Honda ODYSSEY HAS BEEN ANOTHER LEMON! BOUGHT THE CAR AS A CPO ON DECEMBER 21, 2018 WITH JUST OVER 3,000 MILES. SINCE THEN THE CAR HAS BEEN IN THE SHOP 4 TIMES TO FIX THIS INFOTAINMENT SYSTEM. I HAD THE ENTIRE DASHBOARD BLACK OUT ON ME AND COULDN'T SEE MY SPEED, YET THE Honda DEALERSHIP NEAR ME TOLD ME JUST DRIVE IT TO WORK, IT'LL BE OKAY. THEN THE INFOTAINMENT WENT OUT AND NOTHING WORKED FOR WEEKS UNTIL ANOTHER DEALERSHIP WAS NICE ENOUGH TO REPLACE IT. JUST YESTERDAY MY INFOTAINMENT SYSTEM MAKES A VERY LOUD 'BEEP' AND SHUTS DOWN WHILE I'M DRIVING ON A BUSY HIGHWAY! THEN THE DASHBOARD BLACKS OUT AND THE CAR SAFETY FEATURES CAUSE IT TO BREAK! WHEN I SPOKE TO THE DEALERSHIP I AM TOLD WE WILL HAVE TO RECREATE THAT PROBLEM BEFORE ANYTHING IT DONE ARE YOU SERIOUS?! I TAKE MY KIDS AROUND IN THIS MINI VAN. I PUSHED TO GO BACK TO Honda BECAUSE THEY HAVE GOTTEN SO MUCH BETTER, BUT IT TURNS OUT THEY HAVEN'T.

**Date Complaint Filed:** April 30, 2019
**Date of Incident:** April 16, 2019
**NHTSA ID Number:** 11204651

**Vehicle Identification Number:** 5FNYF6H67KB****
**Vehicle Type:** 2019 Pilot

8 DAYS AFTER PURCHASE AND LESS THAN 200 MILES, THE REAR ENTERTAINMENT SCREEN STOPPED WORKING. THE DEALER KEPT THE VEHICLE FOR 7 DAYS AND REPLACED THE RES SCREEN. WHEN THE VEHICLE WAS RETURNED TO US, THE RES SCREEN IMMEDIATELY FAILED TO TURN ON. THIS IS A KNOWN ISSUE RELATED TO THE INFOTAINMENT SYSTEM AND THERE IS AN OPEN CLASS ACTION LAWSUIT. Honda IS AWARE OF THE ISSUE AND HAS NO FIX, YET THEY ARE STILL SELLING CLASS VEHICLES.

**Date Complaint Filed:** April 19, 2019
**Date of Incident:** April 19, 2019
**NHTSA ID Number:** 11202559
**Vehicle Identification Number:** 5FNRL6H9XKB****
**Vehicle Type:** 2019 Odyssey

THERE IS AN ISSUE WITH THE INFOTAINMENT SYSTEM. REAR BACK UP CAMERA DOES NOT WORK. RADIO DOES NOT WORK AND CARPLAY DOES NOT WORK.

**Date Complaint Filed:** May 1, 2019
**Date of Incident:** February 11, 2019
**NHTSA ID Number:** 11205095
**Vehicle Identification Number:** 5FNYF5H41KB****
**Vehicle Type:** 2019 Pilot

 AT ABOUT 300 MILES ENTIRE DISPLAY DOES NOT WORK ON COLD START AND THROUGHOUT THE DAY. SCREEN FLASHES BLUE AND THEN ACTIVATES, HOWEVER DOES NOT REMAIN ON. NO REAR VIEW CAMERA, NAVIGATION, OR OTHER APPS AVAILABLE TO THE DRIVER. SCREEN FLASHES WHILE DRIVING WHICH IS A SAFETY ISSUE AND DISTRACTION. REAR VIEW CAMERA NON-OPERATION IS ALSO A SAFETY ISSUE SINCE UNABLE TO VIEW CHILDREN AS THEY CROSS BEHIND THE VEHICLE."

**Date Complaint Filed:** May 11, 2019
**Date of Incident:** March 29, 2019

**NHTSA ID Number:** 11206993
**Vehicle Identification Number:** 5FNYF6H04KB****
**Vehicle Type:** 2019 Pilot

TAKATA RECALL CRACKING NOISE THROUGHOUT VEHICLE STARTED A MONTH INTO OWNING THE CAR. SLOWLY THE SYSTEM STARTED TO FAIL PHONE WOULD WORK RADIO WOULDN'T WORK SCREENS WOULD GO OFF AND ON AND FINALLY THE SCREEN WENT BLACK AND NEVER RECOVERED. THEY PUT NEW DRIVER INTERFACE INSTRUMENTAL PANEL AND IT STILL DIDN'T WORK SO Honda CHANGED THE WIRING HARNESSES INFLOWTAINMENT SYSTEM. IT NOW BACK IN THE SERVICE BC STILL NOT WORKING. VEHICLE IN MOTION. DOESN'T MATTER IF IT MOVING GOING FAST OR SLOW.

**Date Complaint Filed:** July 10, 2019
**Date of Incident:** July 9, 2019
**NHTSA ID Number:** 11230644
**Vehicle Identification Number:** 5FNYF8H09KB****
**Vehicle Type:** 2019 Passport

NOTE. ALL HAS TAKEN PLACE WHILE IN MOTION EXCEPT FOR THE RESTART. STARTED WITH INTERMITTENT SPEAKER CRACKLES. YESTERDAY CRACKLES WITH RADIO ON REOCCURRING CRACKLES FOLLED BY INFOTAINMENT SCREAN NOTING RADIO SIGNAL LOSS FOLLED BY DATA COMMUNICATIONS LOSS. (PARAPHRASING) FOLLWED BY BLANK SCREEN. FOLLOWED BY BLANK INSTRUMENT SCREEN. FOR SOME SECONDS. THEN ALL SCREANS BECAME FUNCTIONAL. TODAY AS RADIO PLAYED THERE WAS A LOSS OF SOUND WITH VISUAL INDICATION RADIO OPERATION WAS CONTINUING AS A BUMP IN THE ROAD WAS NOTED. RADIO REMAINED SILENT TILL LATER AS ENGINE WAS RESTARTED. RADIO THEN SOUNDED THROUGH SPEAKERS.

**Date Complaint Filed:** July 19, 2019
**Date of Incident:** July 13, 2019
**NHTSA ID Number:** 11233479
**Vehicle Identification Number:** 5FNYF7H9XKB****
**Vehicle Type:** 2019 Passport

MULTIPLE ISSUES WITH THE INFOTAINMENT SYSTEM. THE FIRST ISSUE HAPPENED AROUND 300 MILES, THE APPLE CARPLAY WOULD NOT CONNECT. HAD TO REPEATEDLY DISCONNECT AND RECONNECT APPLE XS MAX. AT TIMES THE SOUND WOULD JUST STOP WORKING. SWITCHING FROM CARPLAY, XM RADIO, AND FM WOULD FIX THE ISSUE.

THE INFOTAINMENT COMPLETELY SHUT DOWN ON JULY 13TH. I TRIED TO "FIX" BY TURNING THE PASSPORT OFF AND ON, GETTING OUT OF THE PASSPORT AND LOCKING THE DOORS, GETTING BACK IN AND STARTING IT. I TRIED THIS ABOUT 10 TIMES AND NOTHING WORKED. I DROVEE STRAIGHT TO THE DEALERSHIP. THEY QUICKLY DISCONNECTED THE BATTER FROM THE PASSPORT AND THIS RESOLVED THE ISSUE.

THE ISSUES HAPPENED BOTH WHILE THE PASSPORT WAS IN DRIVE AND WHILE IN MOTION.

I HAVE ALSO HAD ISSUES WITH THE DRIVER SIDE MIRROR NOT HOLDING MEMORY. THE MIRROR SOMETIMES DOES A FACTORY RESET, SO I AM FINDING MYSELF HAVING TO RESET THE MIRROR EVERY TIME I GO TO DRIVE.

**Date Complaint Filed:** July 30, 2019
**Date of Incident:** June 18, 2019
**NHTSA ID Number:** 11240582
**Vehicle Identification Number:** 5FNYF6H38KB****
**Vehicle Type:** 2019 Pilot

CENTER DISPLAY AND DASHBOARD DISPLAY GO BLANK WHILE DRIVING. IT RESTARTS AFTER SOME TIME. THE CENTER DISPLAY SOMETIMES FLICKERS, SOMETIMES IT MAKES A POPPING NOISE. YOU GET A MESSAGE NETWORK CONNECTION LOST BEFORE THE WHOLE SEQUENCE OF EVENTS START. IT IS A BRAND NEW VEHICLE AND NO ONE IS TAKING OWNERSHIP. THE SCARY THING IS YOU ARE DRIVING ON THE ROAD AND THIS HAPPENS ALL OF A SUDDEN. YOU ARE FORCED TO MOVE OVER TO THE RIGHT LANE AND I HAVE TAKEN IT TO THE DEALER MULTIPLE TIMES. AM HOPING HONDA CAN TAKE OWNERSHIP

AND FIX THE ISSUE. IN ALL INSTANCES, I WAS DRIVING ON THE HIGHWAY AT AROUND 60MPH.

**Date Complaint Filed:** August 7, 2019
**Date of Incident:** August 7, 2019
**NHTSA ID Number:** 11242203
**Vehicle Identification Number:** 5FNYF6H92KB****
**Vehicle Type:** 2019 Pilot

DRIVERS SIDE MIRROR SHAKES WHILE DRIVING. CENTER CONTROL STOPPED WORKING COMPLETELY. LOUD SOUND WILL COME OVER ON THE RADIO AND THEN ALL SYSTEMS STOP WORKING. BACK UP CAMERA DOES NOT WORK, RADIO DOES NOT WORK. VEHICLE IS TURNED OFF BUT THE CENTER CONTROL SCREEN IS FROZEN ON AND WILL NOT TURN OFF. WHEN ON THE BLUETOOTH, RECIPIENT CALLER CANNOT HEAR PERSON INITIATING THE CALL.

**Date Complaint Filed:** August 8, 2019
**Date of Incident:** May 1, 2019
**NHTSA ID Number:** 11242489
**Vehicle Identification Number:** 5FNYF5H30KB****
**Vehicle Type:** 2019 Pilot

THE RADIO IN THIS VEHICLE FREEZES, PRODUCES STATIC FEEDBACK AND ELECTRICAL FEEDBACK WHILE OPERATING THE TOUCHSCREEN. SOUND FROM THE SPEAKERS BECOMES DISTORTED AND LACKING POWER. ELECTRICAL SURGING CAN BE HEARD. THIS OCCURRED WITHIN THE FIRST 1000 MILES SINCE PURCHASED NEW.

REAR HATCH ALIGNMENT WAS ALSO NOT INSTALLED PROPERLY FROM THE FACTORY AND REQUIRED A BODY SHOP TO ATTACH IT CORRECTLY. SEAT FABRIC MATERIAL WAS ALSO DEFECTIVE AND COMING APART.

**Date Complaint Filed:** August 9, 2019
**Date of Incident:** July 31, 2019
**NHTSA ID Number:** 11242740
**Vehicle Identification Number:** 5FNYF8H09KB****
**Vehicle Type:** 2019 Passport

THE INFOTAINMENT INFORMATION DISPLAY BECOMES BLANK INTERMITTENTLY. DATA CONNECTION LOSS RADIO SIGNAL LOSS INTERMITTENTLY WHEN SCREEN IS ACTIVE. SPEED INDICATOR PANEL GOES BLANK INTERMITTENTLY. IT IS CURRENTLY UNKNOWN IF SAFETY FEATURES ARE COMPROMISED AT THIS TIME. HONDA HAS REPLACED SYSTEMS AND THE PROBLEM HAS REOCCURRED. GIVEN THESE PROBLEMS THE VEHICLE IS NOT BEING DRIVEN. THESE EVENTS ARE WHILE VEHICLE IS IN MOTION ON VERY FAT, TO SLIGHTLY BUMPY SURFACES. HARDER JARRING HAS NOT CREATED SIMILAR EVENTS. THIS ISSUE HAS BEEN REPORTED PREVIOUSLY. AND CONTINUES AFTER HONDA RECOMMENDED REPAIR.

**Date Complaint Filed:** August 11, 2019
**Date of Incident:** July 26, 2019
**NHTSA ID Number:** 11243163
**Vehicle Identification Number:** 5FNYF5H93KB****
**Vehicle Type:** 2019 Pilot

HONDA INFOTAINMENT ISSUE: PURCHASED A NEW 2019 PILOT (TOURING) WITH 22 MILES ON IT ON 22 JULY 2019. ON 26 JULY 2019 WHILE DRIVING ON I-10 FROM PHOENIX THE AUDIO QUIT AND THE SCREEN WENT BLANK. ONCE WE STOPPED AND USED REVERSE DISCOVERED THERE WAS NO BACK UP CAMERA AND THE SCREEN WOULD NOT TURN OFF WHEN THE CAR WAS TURNED OFF.TOOK TO DEALER, THEY "FIXED" IT. ON 5 AUG 2019 SAME PROBLEM REOCCURRED. TOOK TO THE DEALER AND THEY FIXED IT AGAIN. FROM 5 AUG TO TODAY (11 AUG) THE SYSTEM HAS OPERATED LIKE IT SHOULD. I DID HAVE THE ABILITY TO SEE WHAT SPEED I WAS GOING AND OTHER GAUGES WORKED. I HAVE READ NUMEROUS REPORTS THAT EVEN THOSE FEATURES WENT BLANK FOR OTHERS.DRIVING FROM TUCSON AZ TO SAN DIEGO, CA TOMORROW AND I AM VERY CONCERNED ABOUT THIS DEFECT HAPPENING WHILE IN THE MIDDLE OF NOWHERE ON I-8! THERE IS NO EXCUSE FOR AN AUTO MANUFACTURER TO NOT LET PEOPLE KNOW WHAT THE STATUS OF A FIX IS AND WHEN TO EXPECT A RESOLUTION TO THE PROBLEM. I HAVE READ NUMEROUS ARTICLES AND EXPERIENCED IT MYSELF, THE DEALERS ACT LIKE THEY HAVE

NOT HEARD OF THIS ISSUE. HOW COULD PEOPLE INVOLVED ON THE CAR BUSINESS NOT KNOW OF MAJOR PROBLEM THAT 1000S OF PEOPLE ARE HAVING, IT IS LIKE THE HONDA CORP PASSED THE WORD TO PLAY DUMB. I TRULY LIKE THE HONDA PILOT, TRADED IN A 2016 EXL FOR THIS NEW CAR. WOULD REALLY LIKE FOR THE CAR TO PREFORM AS ADVERTISED FOR MY (FAMILY) COMFORT AND SAFETY. SAFETY BEING THE MAIN CONCERN HERE.

**Date Complaint Filed:** September 3, 2019
**Date of Incident:** August 30, 2019
**NHTSA ID Number:** 11253049
**Vehicle Identification Number:** 5FNYF6H49KB****
**Vehicle Type:** 2019 Pilot

WHILE DRIVING THE CAR IN MOTION, THE INFOTAINMENT SYSTEM PERIODICALLY AND RANDOMLY WILL 'LOSE CONNECTION' AND BLACKOUT. WHEN THIS HAPPENS THE ENTIRE DASHBOARD BLACKS OUT AND THERE IS NO INFORMATION REGARDING EMERGENCY WARNINGS OR SPEEDOMETER FOR AT LEAST 10 SECONDS, SOMETIMES MORE. I HAVE NO IDEA OF HOW FAST I AM GOING OR IF THERE ARE ANY EMERGENCY WARNINGS. I HAVE TAKEN TO HENNESSY HONDA IN WOODSTOCK, GA FOUR TIMES AND THEY HAVE NOT FIXED THE PROBLEM. THERE IS ALSO RANDOM STATIC ON THE ENTIRE SYSTEM.

**Date Complaint Filed:** September 16, 2019
**Date of Incident:** September 14, 2019
**NHTSA ID Number:** 11255531
**Vehicle Identification Number:** 5FNYF6H92KB****
**Vehicle Type:** 2019 Pilot

THE TRANSMISSION HAS SLIPPED NOW TWICE WHILE DRIVING. ONCE ON THE HIGHWAY AND AGAIN YESTERDAY AFTER TURNING RIGHT ONTO A BUSY NARROW ROAD. THE NAVIGATION SYSTEM AND SCREEN DISPLAY HAS BLACKED OUT AND BECOME NON-FUNCTIONAL WHILE DRIVING AT LEAST 6-7 TIMES (NO RADIO, NAVIGATION, OR ANYTHING FUNCTIONS WHEN THIS OCCURS). THE CAR HAS HAD TO BE TURNED OFF IN ORDER RESET THE SCREEN AND FUNCTION AGAIN. IT IS NOT

POSSIBLE TO TURN OFF THE CAR WHEN DRIVING ON A HIGHWAY OR NARROW COUNTRY ROAD. LASTLY, THE CAR HAS BREAKED UNNECESSARILY ON SEVERAL OCCASIONS DESPITE ADJUSTING THE SETTINGS TO NOT BE OVERLY SENSITIVE. ONCE IT CAME TO A COMPLETE STOP UNNECESSARILY, THANKFULLY NO ONE WAS BEHIND ME. IT HAS STARTED BREAKING UNNECESSARILY WHILE DRIVING ON A HIGHWAY AND ON A COUNTRY ROAD WHEN NO VEHICLES OR ANYTHING WERE AROUND. THESE SITUATIONS HAVE BEEN SCARY AND UNSETTLING.

**Date Complaint Filed:** September 17, 2019
**Date of Incident:** April 16, 2019
**NHTSA ID Number:** 11256170
**Vehicle Identification Number:** 5FNYF5H96KB****
**Vehicle Type:** 2019 Pilot

I PURCHASED MY VEHICLE IN MARCH OF 2019, BY MAY MY DASH/RADIO WENT OUT. FIRST IT STARTED WHEN BLUETOOTH WAS CONNECTED, IT WOULD SOUND LIKE A CRACKING NOISE, LIKE STATIC. THIS IS ALL WHILE VEHICLE IS ON AND IN DRIVING MODE. IT WAS A SCARY SOUND LIKE THAT OF AN ELECTRICAL FIRE WAS GOING TO HAPPEN AT ANY SECOND. ULTIMATELY, BOTH DASH AND RADIO COMPLETELY SHUT OFF AND DIDN'T COME BACK ON. I TOOK IT IN TO THE DEALERSHIP, THEY KEPT MY CAR FOR ALMOST A MONTH AND FINALLY GAVE IT BACK AND STATED THAT THE WIRE HARNESS WAS LOOSE, OR NOT PROPERLY INSTALLED AND THEY HAD RE DONE IT PROPERLY. ALMOST 2 MONTHS LATER THE CRACKING NOISES STARTED AGAIN, AND WOULD SPONTANIOUSLY CUT OFF THE BLUETOOTH. THEN A FEW WEEKS LATER THE DASH WOULD RE START ( SHUT OFF AND THEN BACK ON) BLUETOOTH WOULD NOT CONNECT AND SAME NOISES ALL OVER AGAIN. NOW MY DASH TURNS ON SOMETIMES AND THE RADIO DOES NOT CONNECT AND IS A BLACK SCREEN. IT DOES TURN ON SOMETIMES, BUT THIS IS A NEW CAR AND IT'S VERY ANNOYING. HONDA WAS NOT ABLE TO FIX THE PROBLEM, AND I HAVE HEARD SIMILAR ISSUES FROM OTHER OWNERS OF MY SAME VEHICLE.

**Date Complaint Filed:** September 17, 2019

**Date of Incident:** June 27, 2019
**NHTSA ID Number:** 11256266
**Vehicle Identification Number:** 5FNYF6H08KB****
**Vehicle Type:** 2019 Pilot

THERE ARE SEVERAL ISSUES AND THEY HAVE HAPPENED MANY TIMES - ALL RELATED TO ELECTRICAL SYSTEM, SPEEDOMETER AND INFOTAINMENT DEFECTS. THE INFOTAINMENT AND DASH DISPLAY INCLUDING THE SPEEDOMETER SHUT OFF WHILE DRIVING. THIS INCLUDES THE SPEEDOMETER, ALL SAFETY FEATURES, CRUISE CONTROL SHUTTING OFF WHILE DRIVING. ALSO THE AUDIO WILL COMPLETELY SHUT OFF WHILE DRIVING AND I WILL HAVE NO AUDIO FOR HOURS AT A TIME. ALSO THERE ARE POPS AND CRACKLES OUT OF THE SPEAKERS EVERY TIME I DRIVE THE VEHICLE.

I HAVE DETAILED DOCUMENTATION FOR THESE ISSUES INCLUDING VIDEOS OF THE ISSUES HAPPENING WHILE DRIVING. DEALERSHIP HAS ATTEMPTED TO REPAIR SEVERAL TIMES AND THE ISSUES GET WORSE, NOT BETTER.

**Date Complaint Filed:** September 18, 2019
**Date of Incident:** July 2, 2019
**NHTSA ID Number:** 11256408
**Vehicle Identification Number:** 5FNYF8H08KB****
**Vehicle Type:** 2019 Passport

WHILE DRIVING IN MOTION AND RUNNING OVER SLIGHTLY BUMPY SURFACE I WILL HEAR STATIC IN THE SPEAKERS AFTER HITTING A FEW MORE BUMPS THE AUDIO WILL SHUT OFF. THEN THE INFOTAINMENT SCREEN WITH EITHER SAY "FM RADIO UNAVAILABLE" OR "NETWORK COMMUNICATIONS LOST" FOLLOWING THIS THE INFOTAINMENT SCREEN WILL EITHER REBOOT OR STAY OFF UNTIL THE CAR IS RESTARTED. IN SOME CASES WHEN THE INFOTAINMENT SCREEN WENT OFF THE DRIVER SCREEN THAT DISPLAYS SPEED, RPM AND OTHER SAFETY WARNING MESSAGE SHUTS OFF AND REBOOTS WHILE DRIVING IN MOTION WHICH IS VERY DISTRACTING AND UNSAFE. I HAVE HAD MY 2019 PASSPORT AT THE DEALER FOUR TIMES WHERE THEY HAVE CHECKED CONNECTIONS, REPLACED WIRING HARNESS AND EVEN REPLACED THE DRIVER SCREEN

SECOND AMENDED COMPLAINT
010811-11/1205802 V1

- 99 -

MODULE. WEEKS AFTER THIS LAST FIX THE SAME ISSUES HAPPENED AGAIN AND NOW BOTH SCREENS ARE BLANK AND WILL NOT COME BACK ON AFTER RESTARTING THE CAR. IT IS HEADING TO THE DEALER FOR YET ANOTHER DIAGNOSTIC. NOTE DURING MOST OF THESE ISSUES I WAS USING CAR PLAY BUT HAVE ALSO EXPERIENCED IT JUST USING FM RADIO. THE PROBLEMS USUALLY DON'T SURFACE TILL AFTER DRIVING ON A BUMPY ROAD.

**Date Complaint Filed:** September 30, 2019
**Date of Incident:** September 28, 2019
**NHTSA ID Number:** 11258912
**Vehicle Identification Number:** 5FNYF6H95KB****
**Vehicle Type:** 2019 Pilot

I PURCHASED THE VEHICLE ON AUGUST 10, 2019. WITHIN 2 WEEKS THE RADIO BEGAN MAKING A POPPING AND CRACKING SOUND THAT SOUNDED LIKE ROCKS HITTING THE WINDSHIELD. THIS SOUND HAPPENS DAILY WHEN I DRIVE THE VEHICLE. ABOUT ONE WEEK AFTER THIS HAPPENED, THE DVD PLAYER WOULD STOP WORKING AND THE SOUND FROM THE RADIO WOULD BEGIN TO COMPLETELY GO OUT. IT WOULD COME BACK ON EVENTUALLY, SOMETIMES AS MUCH AS 30 - 45 MINUTES LATER. AFTER ABOUT TWO WEEKS, THESE PROBLEMS CONTINUED AND THE SCREEN FOR NAVIGATION, ALONG WITH THE SPEEDOMETER SCREEN WOULD COMPLETELY GO BLACK WHILE THE VEHICLE WAS IN MOTION. IT RESTARTS AFTER ABOUT 10 - 20 SECONDS. IN TWO INSTANCES THE REAR BACKUP CAMERA HAS SHUT OFF WHILE I WAS BACKING UP AS WELL. I HAVE REPORTED THE ISSUE TO TWO DEALERSHIPS INCLUDING THE ONE WHERE I MADE THE PURCHASE. I AM SCHEDULED TO TAKE IT IN TO HAVE REPAIRS DONE TOMORROW.

**Date Complaint Filed:** October 2, 2019
**Date of Incident:** June 12, 2019
**NHTSA ID Number:** 11265747
**Vehicle Identification Number:** 5FNYF8H57KB****
**Vehicle Type:** 2019 Passport

TL THE CONTACT OWNS A 2019 HONDA PASSPORT. WHILE DRIVING AT ANY SPEED, THE BLUETOOTH SEIZED AFTER A FEW

MINUTES OF DRIVING. ALSO, THE CLOCK AND RADIO DID NOT AUTOMATICALLY SET TO THE CONTACT'S CURRENT LOCATION. THERE WAS NO WARNING INDICATOR ILLUMINATED. THE SYSTEM RESTARTED AFTER THE VEHICLE WAS TURNED OFF AND RESTARTED. THE VEHICLE WAS TAKEN TO DCH KAY HONDA (732-982-2732, LOCATED AT 200 NJ-36, EATONTOWN, NJ 07724), BUT THE FAILURE COULD NOT BE DUPLICATED. THE FAILURES RECURRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURES AND STATED THAT THERE WAS A COMPUTER UPDATE THAT SHOULD HAVE BEEN PERFORMED. THE CONTACT WAS PROVIDED CASE NUMBER: 09932490 AND WAS REFERRED BACK TO THE SAME DEALER; HOWEVER, THE DEALER STATED THAT THERE WAS NO UPDATE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 2,000.

**Date Complaint Filed:** October 6, 2019
**Date of Incident:** October 2, 2019
**NHTSA ID Number:** 11266621
**Vehicle Identification Number:** 5FNYF6H08KB****
**Vehicle Type:** 2019 Pilot

1ST PROBLEM...VIDEO DISPLAY WORKED ONLY INTERMITTENTLY. 1ST VISIT, WOLFCHASE HONDA UPDATED SOFTWARE, PROBLEM CONTINUED. 2ND VISIT THEY REPLACED VIDEO UNIT.

2ND PROBLEM...SPEAKERS STARTED MAKING CRACKLING NOISE. WENT ON THEIR SITE TO MAKE APPT AND RECEIVED A NOTICE THAT OT A RECALL NOTICE ABOUT ELECTRICAL ISSUE (OR A FLEET CAMPAIGN NOT SURE WHICH). THEY UPDATED SOFTWARE ON THAT 3RD VISIT. SPEAKER PROBLEM WORSENED AFTER THAT VISIT AND SPEEDOMETER DISPLAY AND VIDEO (STEREO SYSTEM, NAVIGATION ETC) WOULD BLANK OUT WHILE DRIVING. SYSTEM WOULD GENERALLY RESET BUT ONLY AFTER 30 SECONDS OF NON VISIBILITY TO MY SPEED, CRUISE CONTROL STATUS ETC.. TOOK IT BACK FOR 4TH VISIT. THEY STATED THEY FOUND AN ISSUE WITH TAILGATE SENSOR. PICKED IT UP ON FRIDAY OCT 4TH AND IT STARTED MAKING THE CRACKLING NOISE IN THE SPEAKERS AGAIN YESTERDAY, OCT 5TH. LAST TIME, IT EVENTUALLY GOT WORSE UNTIL SPEEDOMETER

STOPPED WORKING. PLAN TO MAKE ANOTHER APPT (MY 5TH) THIS WEEK. CRACLKING NOISE OCCURS WHEN STOPPED, WHEN DRIVING, WHEN VEHICLE IS TURNED OFF (AFTER BEING ON). VIDEO AND SPEEDOMETER DISPLAY STOP WORKING WHEN DRIVING.

**Date Complaint Filed:** October 8, 2019
**Date of Incident:** September 9, 2019
**NHTSA ID Number:** 11267053
**Vehicle Identification Number:** 5FNYF6H53KB****
**Vehicle Type:** 2019 Pilot

THE ISSUE IS RELATED TO THE HONDA INFOTAINMENT SYSTEM. AFTER ONLY 2000 MILES THE SYSTEM BEGAN HAVING ISSUES. WHILE THE DRIVER IS DRIVING, THE CENTER DISPLAY AND THE DISPLAY ON THE CONTROL PANEL WILL FREQUENTLY GO BLANK. WHEN THIS HAPPENS THE DRIVER IS UNABLE TO ACTIVATE OR DEACTIVATE SPECIFIC SAFETY CONTROLS INCLUDING LANE KEEP ASSIST, ADAPTIVE CRUISE CONTROL AND AUTOMATIC BRAKING. THE AUTOMATIC BRAKING WARNING IS ALSO LOST WHEN THE DISPLAY GOES OUT. THE DRIVER ALSO LOSES THE SPEEDOMETER. FROM THE CENTER DISPLAY, THE DRIVER IS UNABLE TO USE THE BACKUP CAMERA, THE RADIO, NAVIGATION AND THE ABILITY TO MAKE HANDS FREE PHONE CALLS.

**Date Complaint Filed:** October 16, 2019
**Date of Incident:** October 1, 2019
**NHTSA ID Number:** 11268786
**Vehicle Identification Number:** 5FNYF6H04KB****
**Vehicle Type:** 2019 Pilot

PURCHASED 2019 HONDA PILOT ELITE IN FEBRUARY 2019. NOTICED A POPPING SOUND WHILE DRIVING IT HOME THAT SOUNDED LIKE SAND OR ROCKS SLIGHTLY AMPLIFIED HITTING THE WINDSHIELD INTERMITTENTLY. THIS HAS CONTINUED AND OVER THE NEXT FEW MONTHS IT BECAME APPARENT THE SOUND WAS NOT ACTUALLY FROM THE WINDSHIELD BUT ASSOCIATED WITH THE SPEAKERS/ELECTRICAL SYSTEM. IN AUGUST A LOUD CRACKLING SOUND INTERRUPTING THE

SATELLITE RADIO STARTED HAPPENING INTERMITTENTLY FOLLOWING PERIODS OF THE ORIGINAL POPPING SOUNDS. BY OCTOBER, THAT LOUD POP HAS BEEN FOLLOWED BY A COMPLETE BLACKOUT OF THE SYSTEM SCREEN (BOTH) INCLUDING THE SPEED, ETC. FOLLOWED AFTER 30 SECONDS - A MINUTE BY THE SYSTEM RESTARTED. PRIOR TO THAT THERE WERE SEVERAL CASES OF APPLE CAR PLAY SHUTTING DOWN DURING PHONE CALLS THAT MAY HAVE BEEN ALSO ASSOCIATED WITH THIS PROBLEM WITHOUT A COMPLETE SHUTDOWN. I HAVE 27,000+ MILES AS OF 10/15/19, DRIVE A LOT AND NO DEALER CLOSE BY AND ALSO DEPEND DAILY ON HAVING THE VEHICLE. CONTACTED THE DEALER CAR WAS PURCHASED FROM THIS WEEK AND THEY ADMITTED HAVING A PILOT IN THE SHOP NOW WITH SIMILAR SYMPTOMS THAT THEY HAD NOT BEEN ABLE TO DIAGNOSE OR FIX YET. SUGGESTED I MAKE AN APPOINTMENT AND LEAVE IT WITHOUT THEM KNOW HOW LONG IT MIGHT BE. AGREED I WOULD CALL BACK AND SEE WHAT THEY WERE ABLE TO DO ON THE PILOT THEY ALREADY HAD IN THEIR SHOP. HAVE SINCE THEM FOUND NUMEROUS SIMILAR REPORTS WITH 2019 PILOTS ON THIS SITE AND OTHERS WITH ALL REPORTING HONDA NOT ADMITTING TO A SYSTEMIC PROBLEM AND ALSO NO PERMANENT REPAIRS. PROBLEMS HAVE ALWAYS OCCURRED WHILE DRIVING ON INTERSTATE HIGHWAYS AT FULL SPEED. OTHERS HAVE REPORTED BACKUP CAMERAS GOING OUT BUT I HAVE NOT HAD THE PROBLEM EXCEPT WHEN DRIVING AT FULL SPEED BUT EXPECT THAT BACKUP CAMERA WOULD HAVE ALSO BEEN OUT HAD I BEEN STOPPED AT THE TIME OF THE PROBLEM. I THINK HONDA SENSING SAFETY FEATURES NOT AFFECTED.

**Date Complaint Filed:** October 24, 2019
**Date of Incident:** October 23, 2019
**NHTSA ID Number:** 11270566
**Vehicle Identification Number:** 5FNYF8H90KB****
**Vehicle Type:** 2019 Passport

INFOTAINMENT SYSTEM AND INSTRUMENT PANEL BOTH WENT BLACK TODAY AND STOPPED WORKING FOR NO REASON. CAR HAS ONLY 3000 MILES ON IT. VEHICLE WAS DRIVEN TO WORK THIS MORNING WITH EVERYTHING WORKING. WHEN I STARTED IT TO GO HOME AT END OF DAY NEITHER THE INSTRUMENT

PANEL OR INFOTAINMENT SYSTEM WOULD WORK; BOTH WERE JUST BLACK SCREENS. HAVE SINCE DISCOVERED THERE IS A CLASS ACTION LAWSUIT FILED AGAINST HONDA FOR INFOTAINMENT SYSTEM PROBLEMS AND WANT TO REPORT MY ISSUE. EXTREMELY CONCERNING SITUATION AS CAR UNSAFE TO DRIVE WITHOUT INSTRUMENT PANEL.

310.   Complaints posted on various websites paint a strikingly similar picture:

- "The infotainment on this car really sucks. It has a mind of its own. And, to add insult to injury the whole thing froze rendering the infotainment useless. Went to the dealer to do a hard reset since there was no way in the world that everything else I could have tried worked. The Dealer informed that the infotainment is a known issue yet nothing has been done to fix it. Recently, it simply refused to shut off. This is a brand new car and having problems like these says a lot about the quality of the accessories." (complaint posted on carcomplaints.com dated December 20, 2017).

- I bought 2018 elite model in August 2018. Within two month all entertainment system stopped working. I bought this car because I have kids and I want them to have something like rear entertainment for long trip. But, no luck. Took car to dealer they install some part. Got car back. Use car only on weekend. Now display screen not turning all at all and staying blank. Took car again to dealer they install part (had to leave with them for week because part is not in stock). Got car back again and now back to entertainment problem. Music stop playing automatically in between FM, USB, etc. Even on corner it shows phone is connected through Bluetooth. But when try to play music through phone message keep coming saying no phone connected. Had to send car again to dealer. (complaint posted on Edmunds.com dated January 3, 2019).

- "Biggest regret of our lifetime of new vehicle buying. There are so many bugs and issues, I can't even begin to list them all. CabinWatch was the main feature for choosing Odyssey over Toyota or Chrysler. It continues to glitch and stop working. It affects the DVD entertainment system which makes it hell with children. Honda say they are aware but not concerned about fixing these issues since the vehicle still drives. I can find alot of vehicles that just drive from point A to B, I paid

THOUSANDS more to have extra luxury features!!" (complaint posted on Edmunds.com dated December 4, 2018).

- Got the car in November and problem started about 3 weeks after I got it. The screen does not load properly, it crashes, reboots, freezes, has error messages, sometimes the radio stays dead, sometimes its on. No hands free operation, no GPS. Honda Replaced the unit 1st week of Jan 2019 and 1st of Feb, the problem reappeared. First they thought it was caused by Car play - with the cable being faulty. The new unit - I have not connected carplay and it still occurred. To get it working - i have to exit the car lock and unlock and hopefully the start sequence will work. I think this makes the car unusable, (complaint posted on carcomplaints.com on February 1, 2019).

- "13 months with the same problem. We have taken it to several dealerships and no one can fix it. Honda is "aware" of the problem and says for us to keep waiting until they resolve the issue. We are paying extra money to have features that don't work. We didn't get a rebate since they are high demand, if people only knew...Please make sure you test the entertainment system thoroughly before you leave the dealership. Take the headphones out of the bubble wrap and the take a DVD with you." (complaint posted on Edmunds.com dated December 4, 2018).

- "We acquired the 2018 Odyssey Elite with all the options. We're very unhappy with the upgrade because the entertainment system occasionally stops working. That means the Blue Ray, CabinWatch, everything all of the sudden shuts off. We need to stop the car, turn it off, turn it back on, and hope the system comes back to life. We brought it to the dealership immediately, and we were told this is a known problem, Honda knows about it, and there's no solution. "Check back in 90 days" is the answer we got in writing! Can you believe this?! Please save yourself headaches and buy something else. Of course the sales people at the Honda dealerships will never tell you that. This model is full of other smaller bugs, too many to list here. Looks like a car that was not fully tested before getting to market. (complaint posted on Edmunds.com dated June 4, 2018).

- This car has numerous electronic and software issues that Honda America is unable to fix. Dealers continue to sell these vehicles without

SECOND AMENDED COMPLAINT                              - 105 -
010811-11/1205802 V1

disclosing the problems.… If you buy the Elite, plan on the following; Sirius XM Radio will work occasionally, CabinWatch and park sense cameras will lock up and won't work until the car goes through a hard reset, the cabin doors will not respond to the auto open and close until a hard reset is performed, the DVD system will lock up and won't play until a hard reset is performed, the infotainment system is immature and is still being debugged by Honda Engineers, the voice command system seldom works or responds. The dealer service department will acknowledge that they can't fix the problems. We brought it back 9 times since Jan 2018-April 18 without any fixes made other than reseting which involves disconnecting the battery and waiting 15 minutes for the system to reset.… It is a Lemon Law candidate as well as a class action law suit for fraud." (complaint posted on Edmunds.com dated April 10, 2018).

- "I just bought 2018 odyssey less then 1000miles and my rear entertainment system stop working and went to dealer and find out software problem and honda cannot fix it until they have new update software so I was upset because it's not my fault honda has to replace with new RES but they are not so please before you buy make sure it works and it's not only mine there so many people having same issues....Go to Odyssey forum and you will find details." (complaint posted on Edmunds.com dated September 16, 2017).

- 2018 is redesigned model and maybe it explains why it has so many bugs… A few more issues also happen randomly while driving are: screen goes completely blank or frozen, GPS stops giving a guidance, music doesn't play from USB or creating a horrible noise, Bluetooth connection goes off (consequently phone cannot connect), anti theft system losing a power, speakers producing distorted sound." (complaint posted on Edmunds.com dated August 13, 2018).

- "We purchased the 2018 Honda Odyssey with DVD. The first time we tried it out, the DVD shut off after 10 minutes saying 'network connection lost' and wouldn't turn back on. The sound still worked, the drop-down TV just turned black. After the car had been off for a while, it worked again, for about 10 minutes and then again said, 'network connection lost.' Every single time it overheats after 10 to 30 minutes of play and says "network connection lost." Finally, I brought it to the

dealership. After keeping my car almost all day, they informed me that this was a KNOWN ISSUE that they don't have a fix for. They told me that even when they replace the DVD system it still overheats and does the same thing. They told me they would call me 'whenever they come up with a solution.' Totally unacceptable to keep selling these cars with DVD systems that don't work and no known repair. DEFECTIVE!!" (complaint posted on Edmunds.com dated April 18, 2018).

- "We purchased our 2018 Honda Odyssey Elite in July of 2017 and many of the key features still do not work. Almost every time we are on a road trip and use the Rear Entertainment System, the screen turns black and there is weeping and gnashing of teeth in the back. The CabinWatch camera often freezes or is unable to connect altogether. The hands-free voice commands/calling while connected to ApplyPlay stops working often. I have spent HOURS documenting the errors and trying to speak with HondaCare, but they closed my case until an update was available. There was an update on Wednesday and I have had issues with all three of the aforementioned problems in the past 16 hours. Keeping notes, pictures and videos of all the things wrong with my nice, EXPENSIVE, new van has been a part-time job since I purchased this vehicle." (complaint posted on Edmunds.com dated March 23, 2018).

- "Buy at your own risk, Honda blames everything on Apple, Bluetooth skips, siri does not connect, messages I haven't seen or sent one, screen goes black and does not respond or goes blue with a loud beep while you are driving." (complaint posted on Edmunds.com dated November 29, 2017).

- "This car touts the software and technology but it is a complete rip off for the price. 5k miles in and It hardly ever works and the dealer just sends it back saying non-reproducable. I finally recorded a video to show them the problem and now they blame my Disney original DVD. Are all of my brand new DVDs bad?? Absolute nonsense!" (complaint posted on Edmunds.com dated February 25, 2018).

- "I am normally impressed with Honda's quality. However, I would not recommend buying this car if you have a family. We bought it specifically for family road trips. The Rear Entertainment System failed within a month. This made the 4 hour road trip for the solar eclipse painful!! Took it back to the dealer, they said Honda knows about the

problem, but there is no fix right now. Until this is fixed, do not buy this vehicle if you have young kids." (complaint posted on Edmunds.com dated November 3, 2017).

- "We have had to take our brand new Odyssey into the dealership for repairs 4 times now since October 2018. The dealership and Honda Manufacturing have been working together to resolve the issue but can't seem to find the solution. We are starting to discuss the lemon law and how we can get out of the car. It started at only 800 miles on the car with the radio along with the instrument panel cutting in/out along with a static and popping noise coming from the dashboard. They have replaced several items and performed software updates which seems to resolve the issue temporarily. It works for a week or so and then we are completely inconvenienced of having to schedule a time to drop off the car, remove and transfer car seats to the loaner vehicle, and take time out of our schedule. We went with a brand new vehicle to make sure we had a reliable van for our family. I have always thought of Honda as reliable but not anymore." (complaint posted on Edmunds.com dated January 10, 2019).

I have had my new 2019 Passport for about three weeks. Twice now the infotainment system stopped working. Both times, I was using Apple Play and Waze. A loud beep came on and then nothing. No Apple Play, no radio, ...nothing. The display was on (in fact it wouldn't turn off even when the car was off) and I was not able to use the radio (check tuner message appeared) or an[y] other features. When I would try to check Bluetooth I got a message that said the car was still in motion even though I was parked. I took it to the dealer who took out a fuse and reset the system. That worked for about two days and then it happened again. Any ideas? I have an appointment at the dealership but I am not optimistic. I do not want to have to reset the fuse every time I use Waze. I have read on other forums that using a USB keyboard to Cntl-Alt-Del will also work to reset the system but who wants to keep a keyboard in their car? Is anyone else having this problem? (complaint posted on passportforums.com dated March 20, 2019).

- Just picked my [2019 Passport] up from the dealer. They included a copy of the manufacturer's instructions to technicians. It's a known software issue, and they believe it is related to CarPlay. Once they've fixed the problem a notice will go out to PP owners recommending we come to the dealer for a software update.  In the meantime, when it happens you can either disconnect the battery, or pull the "Radio/USB"

fuse. The latter is easier; the fuse box is on the passenger side of the engine compartment. There is a diagram of the fuse box inside the lid (pay attention to the arrow signifying which way is front). It's the 15 amp fuse closest to the driver. I think I'm going to buy a cheap USB keyboard and keep it handy. With my luck this will happen again while I'm wearing a suit and it's 105 outside. (complaint posted on passportforums.com dated May 18, 2019).

- Using my iPhone XS lately in my EX-L, my Infotainment system is becoming unusable. Plugged in via usb or on Bluetooth the pops (or crackles like how wooden logs sound like in a fire pit) that I keep hearing during phone calls or while streaming music is so bad that o don't even use this system anymore until I can bring it into a dealer. My fear is they will simply say they can't recreate it and I'll be on my way...I spoke to Honda and they have no fix for it. (complaint posted on passportforums.com dated June 15, 2019).

- My experience suggests your problems are due to Honda defects, that the service rep repeated to me that "Honda is aware of the problems". I video and audio recorded the problem such that when the Honda dealer knew there is a problem. Infotainment system, wire harness and instrument panel component is being replace this day at the instruction of "Honda" not the dealer. expecting the problem to be resolved. Given the problem menu safety issues are there. Speed undetected at times, Display screen does not provide back up information and who know what other safety devices are connected to these systems. have a great day. BTW California as i read may be suing Honda over Dis[play issues. Display issues go back a couple of years. (complaint posted on passportforums.com dated July 24, 2019)

- "I have been a honda fan for a long time. Owned accord, civic, odysseys in the past. This is my 3rd minivan and luckily I leased it. Mine is Elite model. Since we got this, we have not been able to use DVD player. Some module was replaced by the dealer; started working, then broke again. Very often (97% of the time), i would hear fireworks going off in the speakers which can be very annoying and make it hard to drive the van. Only to fix this is muting the whole volume off. Then display monitor randomly would go dead and stays dead until vehicle is restarted. I was told by the dealer that they are seeing lot of similar issues with 2018/2019 models. Vehicle drives good. Have been to the

dealer 4 times so far. They are clueless; only thing they can tell me is Honda is aware of these problems and are working to fix it. I would stay away from Honda vehicles until they figure out these issues. Hope this helps." (complaint posted on Edmunds.com dated April 2, 2019).

- I learned the hard way that Honda is having a major issue with the "RES", rear entertainment system, of all 2018, 2019 models. There are numerous glitches through out the navigation, Bluetooth, dvd, blue ray and other bells and whistles. Honda is aware of this but does not have a fix for it. If you are lucky to have bought from an honest dealership than they will admit that they sold you the van knowing that it could possibly be back in less than 3 weeks. There are too many issues to list. Do your research or you will be researching yours states lemon law sooner than later.  (complaint posted on Edmunds.com dated March 27, 2019).

311.   In fact, Consumer Reports has downgraded its rating of the 2018 Honda Odyssey to "No Longer Recommended" due to "much-worse-than-average reliability, with problems including the infotainment display freezing and losing all functionality."

312.   A Car and Driver review of the 2018 Honda Odyssey observed, "Our Odyssey continues to be plagued by infotainment glitches, freezes, and outright refusals to turn on (the last most often after using the standard factory remote-start feature), even after a field technician visited the van at our office and replaced the infotainment head unit under warranty at 12,800 miles."

313.   Most recently, according to a consumer survey published in the June 2019 issue of Consumer Reports, Honda's infotainment system received an overall score of 56 (out of 100), placing Honda 19th among the 28 automobile manufacturers whose systems were included in the survey.[11]

314.   Honda has already publicly acknowledged several manifestations of the defect, and conceded that a fix for it is not yet known.

---

[11] According to Consumer Reports, the survey's overall score is a composite based on the percentage of vehicles for which owners responded that they are very satisfied with the operation of audio, calls, and navigation.

SECOND AMENDED COMPLAINT                     - 110 -

315.   In April 2019, Honda released a Tech Line Summary Article for 2018-2019 Odyssey with Touring or Elite trim.  The article states:

> We're currently investigating an issue that when using CabinWatch and the RES [rear entertainment system] is streaming an application or playing a DVD for **10 minutes** or more, a **Camera System Problem. Image cannot be displayed.** message appears on the Display Audio screen.  At the same time, the overhead screen freezes, but the audio keeps playing.
>
> So far, we know it's software related, so don't replace any components.  When we come up with a fix, we'll release an OTA [over-the-air] software update.

316.   In April and July of 2019, Honda released identical documents—the former captioned a "Tech Line Summary Article" and the latter a "ServiceNews Article"— titled "Radio Stays On with Ignition OFF."  Both identify all trim levels of the 2018-19 Odyssey, 2019 Pilot, and 2019 Passport as affected vehicles, and state:

> Are you having this issue while using Apple CarPlay?
>
> - CarPlay beeps and stops working.
> - If you try to switch to a different audio source, you see the message **XM-Check Tuner or FM-Radio Unavailable.**
> - When you turn the ignition to OFF, the navigation display stays on.
>
> We're aware of this issue and have it under investigation.  So far, we know it's software related, so don't replace any components.  When we come up with a fix, we'll release an OTA software update.
>
> As a temporary measure, just remove and install the radio backup fuse or disconnect and connect the battery.  This will reset the system.

317.   In March and May 2019, Honda released a "ServiceNews Article" that identifies the 2018-19 Odyssey (all trims except LX), 2019 Pilot (all trims except LX), and 2019 Passport (all trims except Sport) as affected vehicles.  The article is titled "Popping or Crackling from the Speakers?  Check the MOST Bus Network," and states:

Are you hearing a popping or crackling from the speakers? This may be due to a connection issue in the MOST bus network, which can be identified by the unique red and green connectors at each component of the infotainment system.

During component inspection or replacement, you can easily damage these connectors if the cable is used for leverage when unplugging them.

To save you time during troubleshooting, check the repair history on the vehicle. Most reported cases happened after a separate previous repair was made to the system. Be sure to inspect the MOST connectors at all components and any connections between the harnesses. If a connector is found to be damaged, like you see here, the entire harness must be replaced. These connectors are **not** repairable.



If you want more info on what the MOST bus network does, look up the Tech2Tech® video, "Lets Talk MOST Bus Network and ECL Diagnostics." And If you want to know how to check for damaged or loose connections, be sure to check out "A Look at MOST Bus Network Connectors."

318.  Additionally, as documented above, numerous Honda customers—including various named plaintiffs in this action—have been told by dealership employees since at least mid-2018 that their problems are known to Honda.  However, with the exception of the Tech Line Summary Article noted above, Honda has yet to

publicly acknowledge the scope and severity of these problems, or to release any kind of long-promised fix or update to its customers.

319.   Honda's New Vehicle Limited Warranty requires it to "repair or replace any part that is defective in material or workmanship under normal use." But as countless consumers have reported, Honda has been unable to repair these defects despite being given numerous opportunities.  In violation of this express warranty, and as evidenced by the many complaints and repeat infotainment system failures, Defendant merely replaces a defective part with another defective part.

320.   Due to the inherent and permanent nature of the common defect in the Defective Vehicles which cause them to fail, even after repeated replacements, Plaintiffs and the members of the Class have incurred and will continue to incur significant expenses.  All Defective Vehicles suffer from the same defect.

321.   Additionally, because the infotainment system may fail at any time, thereby startling the driver and putting the passengers' safety at risk, the defect makes these Defective Vehicles unfit for the use for which they were intended in that they cannot be relied upon as a safe and reliable means of transport.

C.   **Defendant's Warranties and Response to the Defect**

322.   Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

323.   However, Defendant knew, or at least should have known, of the defects at the time of sale or lease of the Defective Vehicles.  Plaintiffs and Class members, however, had no such knowledge.  The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

324.   Despite having more than adequate opportunity to successfully remedy the defect(s) in the Vehicles, Honda has failed to do so, and in many instances has instead merely replaced defective components with defective components.

325.   Honda concealed, and continues to conceal, the fact that the Defective Vehicles contain the defective infotainment systems.  Honda also continues to conceal the fact that the replacement components it provides in an attempt to repair the defect are equally defective.  In spite of its knowledge of this defect, Honda continues to sell Defective Vehicles that contain the defective infotainment system. Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

326.   Plaintiffs and the other class members reasonably relied on Honda's warranties regarding the quality, durability and other material characteristics of their Vehicles, including but not limited to the representation that the Vehicles contained no known defects (defects known to Honda) at the time of sale or lease.

## V.   CLASS ACTION ALLEGATIONS

327.   Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

328.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

> All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Alabama (the "Alabama Class")

> All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Arizona (the "Arizona Class")

> All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot,

or 2019 Honda Passport vehicle in the State of Colorado (the "Colorado Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Connecticut (the "Connecticut Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Florida (the "Florida Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Georgia (the "Georgia Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Illinois (the "Illinois Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Kansas (the "Kansas Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Kentucky (the "Kentucky Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Maryland (the "Maryland Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot,

SECOND AMENDED COMPLAINT                    - 115 -
010811-11/1205802 V1

or 2019 Honda Passport  vehicle in the State of Massachusetts (the "Massachusetts Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Missouri (the "Missouri Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Ohio (the "Ohio Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Oklahoma (the "Oklahoma Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of South Carolina (the "South Carolina Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Tennessee (the "Tennessee Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Texas (the "Texas Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle in the State of Virginia (the "Virginia Class")

All persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot,

or 2019 Honda Passport vehicle in the State of Washington (the "Washington Class")

(Collectively, the "Class," unless otherwise noted).

329.   Excluded from the Class are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel.

330.   Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class Members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

331.   While the exact number of Class Members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Classes is ascertainable based upon the records maintained by Honda and governmental officials.   Upon information and belief, Honda sold and leased over one hundred thousand Defective Vehicles nationwide during the relevant time period, all of which have the defective infotainment systems at issue.  Therefore, the Class Members are so numerous that individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

332.   Common questions of law and fact exist as to all Class Members. These common legal and factual questions include:

(a)   whether each Defective Vehicle was sold or leased with defective infotainment systems;

(b)   whether Defendant's express warranty covers the defect;

(c)   whether Defendant breached express warranties made to the Class Members;

(d)   whether Defendant breached implied warranties made to the Class Members;

SECOND AMENDED COMPLAINT

- 117 -

010811-11/1205802 V1

(e)     whether Defendant replaced defective parts with defective parts;

(f)     whether Defendant knew about the defect and, if so, how long Defendant has known about the defect;

(g)     whether Defendant concealed the defect;

(h)     whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(i)     whether the Class Members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value and deprivation of the benefit of the bargain; and

(j)     whether the Class Members are entitled to injunctive relief.

333.    Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class Member have a Defective Vehicle with the same defective infotainment system.

334.    Plaintiffs will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class Members.  Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Therefore, the interests of the Class Members will be fairly and adequately protected.

335.    A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy.  In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant.  Further, neither Plaintiffs nor their counsel are aware

of any on-going litigation concerning this controversy already begun by any of the Class Members.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.  Defendant's records and the records available publicly will easily identify the Class Members.  This defect is common to all Defective Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class Members.  Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

336.   A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Honda has acted or refused to act on grounds that apply generally to the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## VIOLATIONS ALLEGED

**A.     Claims Brought on Behalf of the Nationwide Class**

**COUNT I[12]**
**BREACH OF EXPRESS WARRANTY—**
**MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *ET SEQ.*)**

337.   Plaintiffs repeat and incorporate the allegations set forth above as if fully alleged herein.

338.   The Defective Vehicles are consumer products as defined in 15 U.S.C. § 2301(1)

---

[12] By order dated October 17, 2019, the Court dismissed this count.  Plaintiffs include it in their Second Amended Complaint solely to preserve it for appeal.

SECOND AMENDED COMPLAINT
010811-11/1205802 V1

- 119 -

339.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

340.   Honda is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

341.   Honda provided Plaintiffs and Class Members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

342.   15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

343.   In the course of selling the Defective Vehicles, Defendant expressly warranted in its New Vehicle Limited Warranty that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

344.   Upon information and belief, Defendant's standard warranty language is identical for all Defective Vehicles sold nationwide.

345.   Defendant did not provide at the time of sale, and has not provided since then, vehicles conforming to the express warranties.

346.   Defendant breached and continues to breach express warranties because the defective infotainment systems were present in the Defective Vehicles at the time of sale.

347.   Defendant breached and continues to breach express warranties because Defendant did not (and does not) cover the full expenses associated with repairing and/or replacing the defective infotainment systems in Plaintiffs' and the Class Members' Defective Vehicles.

348.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Defendant breached and continues to breach express warranties because it merely replaces the defective components with additional defective components and is unable to successfully repair the defects in Plaintiffs' and the Class Members' Defective

Vehicles, despite having had reasonable opportunities to do so.  As such, the express warranties fail their essential purpose.

349.   Defendant's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

350.   Despite the fact that the Vehicles' infotainment systems continue to fail despite being "repaired," Defendant continues to replace the defective parts with identical or substantially similar defective parts.  Thus, the defect is inherent and permanent in nature.

351.   Defendant fraudulently concealed material information from Plaintiffs and the Class regarding the existence and extent of the defects.  Defendant also fraudulently concealed the material fact that the replacement components were defective.  Therefore, any limitations imposed by Defendant as to the scope of its obligations under the express warranties to repair and replace defective parts and/or any disclaimers in the written warranties prepared by Defendant that purport to preclude recovery by Plaintiffs or the Class Members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

352.   Any such limitations or exclusions have been imposed unilaterally by Defendant via adhesive, "take it or leave it" contracts with no ability by Plaintiffs or the Class Members to negotiate the substance or coverage of the warranties, and Plaintiffs and the Class Members did not have any meaningful choices of reasonably available alternative sources of supply of suitable Vehicles free of the above unconscionable conditions.

353.   Furthermore, Defendant's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Class Members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

354.   Also, as alleged herein, at the time that Defendant warranted and sold the Vehicles, it knew that the Vehicles were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs and the Class Members were therefore induced to purchase the Vehicles under false and/or fraudulent pretenses.

355.   Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that Defendant simply placed defective components in the Vehicles when those Vehicles are brought in for repairs.

356.   Moreover, many of the damages flowing from the Vehicles cannot be resolved by the limited remedies contained in the express warranty as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time.   Therefore, any limitation on Plaintiffs' and the Class Members' remedies would cause the available remedy to be insufficient to make them whole.

357.   Defendant was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

358.   Plaintiffs and the Class Members have suffered damages directly and proximately caused by Defendant's breach of the express warranty and are entitled to recover damages including, but not limited to, out of pocket expenses and diminution of value.

**COUNT II[13]**
**BREACH OF IMPLIED WARRANTY—**
**MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *ET SEQ.*)**

359.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein

360.   Plaintiffs bring this claim on behalf of the Nationwide Class.

361.   The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301.

362.   Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

363.   Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

364.   15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

365.   Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

366.   Defendant made written and implied warranties regarding the Vehicles to Plaintiffs and Class Members within the meaning of 15 U.S.C. § 2301.   Defendant provided Plaintiffs and other Class Members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

367.   Defendant breached the implied warranty of merchantability because the Vehicles were not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the Vehicles contain defects which render them

---

[13] By order dated October 17, 2019, the Court dismissed this count.  Plaintiffs include it in their Second Amended Complaint solely to preserve it for appeal.

SECOND AMENDED COMPLAINT                    - 123 -
010811-11/1205802 V1

unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

368.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

369.   Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

370.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

371.   Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its written and/or implied warranties.

**B.     Claims Brought on Behalf of the Alabama Class**

**COUNT I**
**VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(ALA. CODE § 8-19-1 ET SEQ.)**

372.   Plaintiff Brandi Bishop ("Plaintiff" for purposes of all Alabama Class counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

373.   Plaintiff brings this Count on behalf of the Alabama Class.

374.   The Alabama Deceptive Trade Practices Act declares several specific actions to be unlawful, including: "(11) Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions"; and "(27)

SECOND AMENDED COMPLAINT                          - 124 -
010811-11/1205802 V1

engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

375.   Plaintiff and Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

376.   Plaintiff, Class members, and Honda are "persons" within the meaning of Ala. Code § 8-19-3(3).

377.   Honda was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

378.   Honda's conduct, as set forth above, occurred in the conduct of trade or commerce. In the course of its business, Honda concealed and suppressed material facts concerning the class vehicles.   These acts were unconscionable, false, misleading, and/or deceptive within the meaning of Ala. Code § 8-19-5.

379.   Plaintiff and the Class were injured as a result of Honda's conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and have suffered damages as a result.

380.   Honda's conduct proximately caused the injuries to Plaintiffs and the Class.

381.   Pursuant to Alabama Code § 8-19-10, Plaintiff seeks monetary relief against Honda measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff.

382.   Plaintiff also seeks an order enjoining Honda's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ala. Code § 8-19-1 *et seq.*

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(ALA. CODE § 7-2-313)**

383.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

SECOND AMENDED COMPLAINT                        - 125 -
010811-11/1205802 V1

384.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

385.   In the course of selling its vehicles, Honda expressly warranted in writing that the Class Vehicles were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain.

386.   In its Limited Warranty, Honda expressly warranted that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

387.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

388.   Honda breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replaced, the Class Vehicles' materials and workmanship defects.

389.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

390.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

391.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the

other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

392.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

393.   Finally, due to Honda's breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in Ala. Code § 7-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all vehicles currently owned.

394.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and the Class.

395.   As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(ALA. CODE § 7-2-314)**

396.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

397.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

398.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Ala. Code § 7-2-314.

399.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiff and Class Members would not have purchased the Vehicles had they known of the defects.

400.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

401.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

402.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Alabama Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**C.     Claims Brought on Behalf of the Arizona Class**

**COUNT I**
**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. § 44-1521 ET SEQ.)**

403.   Plaintiffs Brigid Hirth, Michael Hirth, and Mark Ankrom ("Plaintiffs" for purposes of all Arizona Class counts) hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

404.   Plaintiffs bring this claim on behalf of the Arizona Class.

405.   The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact

SECOND AMENDED COMPLAINT                          - 128 -
010811-11/1205802 V1

been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A). Honda concealed and failed to disclose the infotainment system defect. Honda had an ongoing duty to Plaintiff and the Arizona Class to refrain from unfair and deceptive practices under the Arizona CFA in the course of its business.

406.   Honda is a "person" within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(6). Each class vehicle at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

407.   Honda's conduct, as set forth above, occurred in the conduct of trade or commerce. In the course of its business, Honda concealed and suppressed material facts concerning the class vehicles.

408.   The facts concealed and omitted by Honda from Plaintiffs and the other Arizona Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the class vehicles or pay a lower price. Had Plaintiffs and the other Arizona Class members known of the true facts at the time they purchased or leased their Vehicles, they would not have purchased or leased those Vehicles, or would have paid substantially less for the Vehicles than they did.

409.   Pursuant to the Arizona CFA, Plaintiffs seek monetary relief against Honda in an amount to be determined at trial. Plaintiffs also seeks punitive damages because Honda engaged in aggravated and outrageous conduct with an evil mind.

410.   Plaintiffs also seeks an order enjoining Honda's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(ARIZ. REV. STAT. § 47-2313)**

411.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

SECOND AMENDED COMPLAINT                           - 129 -
010811-11/1205802 V1

412.   Plaintiffs bring this Count on behalf of the Arizona Class.

413.   Honda is and was at all relevant times a merchant with respect to motor vehicles under Ariz. Rev. Stat. § 47-2104(A).

414.   In its Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

415.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Arizona Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

416.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

417.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Arizona Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

418.   Accordingly, recovery by Plaintiffs and the other Arizona Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Arizona Class members, seek all remedies as allowed by law.

419.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective.  Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiffs and the other Arizona Class members were

therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

420.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Arizona Class members' remedies would be insufficient to make Plaintiffs and the other Arizona Class members whole.

421.   Finally, due to Honda's breach of warranties as set forth herein, Plaintiffs and the other Arizona Class members assert as an additional and/or alternative remedy, as set forth in Ariz. Rev. Stat. § 47-2711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Arizona Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Ariz. Rev. Stat. §§ 47-2711 and 47-2608.

422.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class.

423.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the Arizona Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(ARIZ. REV. STAT. § 47-2314)**

424.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

425.   Plaintiffs bring this Count on behalf of the Arizona Class.

SECOND AMENDED COMPLAINT
010811-11/1205802 V1

- 131 -

426.   Honda is and was at all relevant times a merchant with respect to motor vehicles under Ariz. Rev. Stat. § 47-2014.

427.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Ariz. Rev. Stat. § 47-2314.  These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used.  Specifically, the Class Vehicles contain infotainment system defects that render the Vehicles unsafe and prevent users from enjoying many of the Vehicles' features that Class members paid for.

428.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class.

429.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**D.     Claims Brought on Behalf of the Connecticut Class**

**COUNT I**
**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**(CONN. GEN. STAT. § 42-110A ET SEQ.)**

430.   Plaintiff Anthony Rossomando ("Plaintiff," for purposes of all Connecticut Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

431.   This claim is brought by Plaintiff on behalf of the Connecticut Class.

432.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

433.   Honda is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

434.   Honda's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

435.   Honda had an ongoing duty to Plaintiff and the Connecticut Class to refrain from unfair and deceptive practices under the Connecticut UTPA in the course of its business.

436.   Plaintiff and the Connecticut Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments and/or failure to disclose material information.

437.   Plaintiff and Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

438.   Honda acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(CONN. GEN. STAT. ANN. § 42A-2-313)**

439.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

440.   Plaintiff brings this Count on behalf of the Connecticut Class.

441.   Honda is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

442.   Honda breached its express warranty to repair and to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.  Therefore, Defendant has violated Conn. Gen. Stat. Ann. § 42a-2-313.

SECOND AMENDED COMPLAINT                              - 133 -
010811-11/1205802 V1

443.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

444.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

445.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

446.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

447.   Finally, due to Honda's breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in Conn. Gen. Stat. Ann. § 42a-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Conn. Gen. Stat. Ann. §§ 42a-2-711and 42a-2-608.

SECOND AMENDED COMPLAINT                           - 134 -
010811-11/1205802 V1

448.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Class.

449.   As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CONN. GEN. STAT. ANN. § 42A-2-314)

450.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

451.   Plaintiff brings this Count on behalf of the Connecticut Class.

452.   Honda was at all relevant times a "merchant" with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

453.   A warranty that the class vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Conn. Gen. Stat. Ann. § 42a-2-314.

454.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles contain infotainment system defects that render the Vehicles unsafe and prevent users from enjoying many of the Vehicles' features that Class members paid for.

455.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and the Class.

456.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**E.     Claims Brought on Behalf of the Colorado Class**

**COUNT I**
**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
**(COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*)**

457.    Plaintiffs Heidi and Peter Phan ("Plaintiffs," for purposes of all Colorado Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

458.    Plaintiffs bring this claim on behalf of the Colorado Class.

459.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods."  Colo. Rev. Stat. § 6-1-105(1)(b), (e).

460.    Honda is a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

461.    In the course of Honda's business, it failed to disclose, and actively concealed, the dangerous risk of infotainment system failure in Class Vehicles as described above.  Accordingly, Honda engaged in a deceptive trade practice.

462.    Honda's actions as set forth above occurred in the conduct of trade or commerce.

463.    Honda's conduct proximately caused injuries to Plaintiffs and the other Class members.

464.    Plaintiffs and the other Class members were injured as a result of Honda's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Honda's omissions.

# COUNT II
## BREACH OF EXPRESS WARRANTY
### (BASED ON COLORADO LAW)

465.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

466.   Plaintiffs bring this claim on behalf of the Colorado Class.

467.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

468.   In its Limited Warranty, Honda expressly warranted that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

469.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

470.   Honda breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replaced, the Class Vehicles' materials and workmanship defects.

471.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

472.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

473.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's

Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

474. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

475. Due to Honda's breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Colo. Rev. Stat. § 4-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Colo. Rev. Stat. §§ 4-2-711 and 4-2-608.

476. Plaintiffs have attempted to have their Vehicles repaired under the warranty. And Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

477. As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON COLORADO LAW)**

478.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

479.   Plaintiffs bring this claim on behalf of the Colorado Class.

480.   Honda is a merchant with respect to motor vehicles.

481.   Under COL. REV. STAT. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from Honda.

482.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

483.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

484.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

485.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Colorado Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**F.     Claims Brought on Behalf of the Florida Class**

COUNT I<br>
VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT<br>
(FLA. STAT. § 501.201, ET SEQ.)

486.    Plaintiffs Larry Simkin and Laura Mohr ("Plaintiffs" for purposes of all Florida Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

487.    Plaintiffs bring this claim on behalf of the Florida Class.

488.    Plaintiffs and the other Florida Class members are 'consumers', as defined by § 501.203(7) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

489.    Honda engaged in "trade or commerce", as defined by § 501.203(8) of the FDUTPA.

490.    The sale of the Vehicles to Plaintiffs and other Florida Class members was a "consumer transaction", as defined by § 1345.01 of the FDUTPA.

491.    Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Fla. Stat. § 501.204(1). Honda participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

492.    By not disclosing the defective nature of the infotainment system Honda has willfully and knowingly engaged in unfair and deceptive acts in the conduct of trade and commerce within the State of Florida.

493.    In purchasing or leasing the Vehicles, Plaintiffs and the other Florida Class members were deceived by Honda's failure to disclose that the infotainment system in the Vehicles was defective.

494.    Plaintiffs and the other Florida Class members reasonably relied upon Honda's f omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda willfully and knowingly

engaged in a pattern of deception and public silence in the face of a known defect with its infotainment system. Plaintiffs and the other Florida Class members did not, and could not, unravel Honda's deception on their own.

495.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

496.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

497.   Honda willfully and knowingly omitted material facts regarding the Vehicles with intent to mislead Plaintiffs and the other Florida Class members.

498.   Honda knew or should have known that its conduct violated the FDUTPA.

499.   Honda owed Plaintiffs and the other Florida Class members a duty to disclose the truth about its faulty infotainment system because the defect created a safety hazard and Honda:

      i.     Possessed exclusive knowledge of the defect in the infotainment system;

      ii.    Intentionally concealed the foregoing from Plaintiffs and the other Florida Class members; and/or

      iii.   Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the infotainment system was defective.

500.   Honda had a duty to disclose that the infotainment system in the Vehicles was fundamentally flawed as described herein, because the defect created a safety hazard and Plaintiffs and the other Florida Class members relied on Honda's material omissions regarding the technology, benefits, efficiency, convenience, performance, and safety features of the infotainment system.

501.   Honda's conduct proximately caused injuries to Plaintiffs and the other Florida Class members who purchased or leased the Vehicles and suffered harm as alleged herein.

502.   Plaintiffs and the other Florida Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiffs and the other Florida Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

503.   Honda's violations cause continuing injuries to Plaintiffs and the other Florida Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

504.   Plaintiffs and the other Florida Class members seek damages and treble damages for Honda's knowing violations.

505.   Plaintiffs and the other Florida Class members also seek court costs and attorneys' fees.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON FLORIDA LAW)**

506.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

507.   Plaintiffs bring this claim on behalf of the Florida Class.

508.   Honda intentionally concealed that the infotainment system is defective.

509.   Honda further misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling had no significant defects, that the infotainment system was a safety feature, reliable, and would perform and operate properly.

510.   Honda knew about the defect in the infotainment system when these representations were made.

SECOND AMENDED COMPLAINT                         - 142 -
010811-11/1205802 V1

511.   The Vehicles purchased by Plaintiffs and the other Florida Class members contained a defective infotainment system.

512.   Honda had a duty to disclose that the infotainment system contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiffs and the other Florida Class members relied on Honda's material representations.

513.   As alleged herein, at all relevant times, Honda has held out the Vehicles to be free from defects such as the defect related to the infotainment system. Honda touted and continues to tout the many benefits and advantages of the infotainment system, but nonetheless failed to disclose important facts related to the defect. This made Honda's other disclosures about the infotainment system deceptive.

514.   The truth about the defective infotainment system was known only to Honda; Plaintiffs and the other Florida Class members did not know of these facts and Honda actively concealed these facts from Plaintiffs and the other Florida Class members.

515.   Plaintiffs and the other Florida Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete. As consumers, Plaintiffs and the other Florida Class members did not, and could not, unravel Honda's deception on their own. Rather, Honda intended to deceive Plaintiffs and the other Florida Class members by concealing the true facts about the Vehicles' infotainment systems.

516.   Honda's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

517.   Honda had a duty to disclose the infotainment system defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and

because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

518.   Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the Vehicles.

519.   Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the infotainment system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and the other Florida Class members.

520.   Honda has still not made full and adequate disclosures, and continues to defraud Plaintiffs and the other Florida Class members by concealing material information regarding the defect in the infotainment system.

521.   Plaintiffs and the other Florida Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and the other Florida Class members' actions were justified. Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

522.   Because of the concealment and/or suppression of facts, Plaintiffs and the other Florida Class members sustained damage because they own(ed) Vehicles that are diminished in value as a result of Honda's concealment of the true quality of those Vehicles' infotainment systems. Had Plaintiffs and the other Florida Class members been aware of the defect in the infotainment systems installed in the Vehicles, and the

Company's disregard for the truth, Plaintiffs and the other Florida Class members who purchased or leased a Vehicle would have paid less for it or would not have purchased or leased it at all.

523.   The value of Plaintiffs' and the other Florida Class members' Vehicles has diminished as a result of Honda's fraudulent concealment of the defective infotainment system of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

524. Accordingly, Honda is liable to Plaintiffs and the other Florida Class members for damages in an amount to be proven at trial.

525.   Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and the other Florida Class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (FLA. STAT. § 672.313)

526.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

527.   Plaintiffs bring this claim on behalf of the Florida Class.

528.   Plaintiffs were at all relevant times "buyers", as defined by § 672.103 of the Florida Uniform Commercial Code.

529.   Honda was at all relevant times a "merchant", as defined by § 672.104 of the Florida Uniform Commercial Code.

530.   The Vehicles are and were at all relevant times "goods," as defined by § 672.105 of the Florida Uniform Commercial Code.

SECOND AMENDED COMPLAINT                     - 145 -
010811-11/1205802 V1

531.   Honda marketed the Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiffs' and the other Florida Class members' decisions to purchase the Vehicles.

532.   In connection with the purchase or lease of each of the Vehicles, Honda provided warranty coverage for the Vehicles for four years or 50,000 miles, which obliges Honda to repair or replace any part that is defective under normal use.

533.   Honda's warranty formed a basis of the bargain that was reached when Plaintiff and other Florida Class members purchased their Vehicles.

534.   Plaintiffs and the other Florida Class members owned Vehicles with defective infotainment systems within the warranty period but had no knowledge of the existence of the defect, which was known and concealed by Honda.

535.   Despite the existence of the warranty, Honda failed to inform Plaintiffs and the other Florida Class members that the Vehicles contained the defective infotainment systems during the warranty periods.

536.   Honda breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

537.   Honda knew about the defect in the infotainment systems, allowing Honda to cure their breach of its warranty if it chose.

538.   However, Honda concealed the defect and has failed to repair or replace the infotainment systems despite the defect's existence at the time of sale or lease of the Vehicles.

539.   Any attempt by Honda to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and the other Florida Class members. Among other things, Plaintiffs and the other

Florida Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Florida Class members, and Honda knew that the infotainment systems were defective at the time of sale.

540.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Florida Class members whole because the replacement part used by Honda contains the same defect. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

541.    Accordingly, Honda is liable to Plaintiffs and the other Florida Class members for damages in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**
**(FLA. STAT. § 672.314)**

542.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

543.    Plaintiffs bring this claim on behalf of the Florida Class.

544.    Plaintiffs were at all relevant times a "buyer" as defined by § 672.103 of the Florida Uniform Commercial Code.

545.    Honda was at all relevant times a "merchant" as defined by § 672.104 of the Florida Uniform Commercial Code.

546.    The Vehicles are and were at all relevant times "goods", as defined by § 672.105 of the Florida Uniform Commercial Code.

547.    Honda marketed the Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiffs' and the other Florida Class members' decisions to purchase the Vehicles.

548.  Plaintiffs and the other Florida Class members purchased or leased the Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Vehicles.

549.  Honda knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

550.  Honda impliedly warranted that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

551.  Because of the defect in the infotainment system, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

552.  Honda knew about the defect in the infotainment systems, allowing Honda to cure their breach of its warranty if it chose.

553.  Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and the other Florida Class members. Among other things, Plaintiffs and the other Florida Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Florida Class members, and Honda knew of the defect at the time of sale.

554.  Plaintiffs and the other Florida Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a

reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

555.   Accordingly, Honda is liable to Plaintiffs and the other Florida Class members for damages in an amount to be proven at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(BASED ON FLORIDA LAW)**

556.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

557.   Plaintiffs bring this claim on behalf of the Florida Class.

558.   Honda has benefitted and been enriched by the conduct alleged herein. Honda has generated substantial revenue from the unlawful conduct described herein. Honda has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the other Florida Class members.

559.   Honda has voluntarily accepted and retained this benefit.

560.   The circumstances, as described herein, are such that it would be inequitable for Honda to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the other Florida Class members.

561.   Plaintiffs and the other Florida Class members are entitled to the amount of Honda's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**G.     Claims Brought on Behalf of the Georgia Class**

**COUNT I**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390 ET SEQ.)**

562.   Plaintiff Harmeet Gill ("Plaintiff," for purposes of all Georgia Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

SECOND AMENDED COMPLAINT                         - 149 -
010811-11/1205802 V1

563.   Plaintiff brings this claim on behalf of the Georgia Class.

564.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

565.   Plaintiff and Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

566.   Defendant engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

567.   Honda violated the Georgia FBPA by concealing and failing to disclose the infotainment defect.  Honda had an ongoing duty to Plaintiff and the Georgia Class to refrain from unfair and deceptive practices under the Georgia FBPA in the course of its business.

568.   Plaintiff and the Georgia Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments and/or failure to disclose material information.

569.   Plaintiff and Class members are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a).  On June 10, 2019, Plaintiffs provided Honda with a written demand for relief pursuant to Ga. Code Ann. § 10-1-399(b).

570.   Plaintiff also seeks an order enjoining Defendant unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per GA Code Ann. § 10-1-399.

SECOND AMENDED COMPLAINT                           - 150 -

## COUNT II
## BREACH OF EXPRESS WARRANTY

571.   Plaintiff Harmeet Gill ("Plaintiff," for purposes of all Georgia Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

572.   Plaintiff brings this claim on behalf of the Georgia Class.

573.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

574.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

575.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

576.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

577.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

578.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

579.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

580.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

581.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

582.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

583.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(GA. CODE. ANN. §§ 11-2-314 AND 11-2A-212)**

584.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

585.   Plaintiff brings this claim on behalf of the Georgia Class.

586.   Honda was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

587.   The Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

588.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

589.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

590.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

591.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

592.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Georgia Class members have been damaged

in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**H.      Claims Brought on Behalf of the Illinois Class**

**COUNT I**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1 *ET SEQ.* AND 720 ILCS 295/1A)**

593.    Plaintiff Yazeed Issa ("Plaintiff," for purposes of all Illinois Class Counts) incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

594.    Plaintiff brings this claim on behalf of the Illinois Class.

595.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

596.    Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

597.    Plaintiff and Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

598.    Honda violated the Illinois CFA by concealing and failing to disclose the infotainment system defects.  Honda had an ongoing duty to Plaintiff and the Illinois Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of its business.

599.    Plaintiff and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments  and/or failure to disclose material information.

SECOND AMENDED COMPLAINT                      - 154 -
010811-11/1205802 V1

600.   Pursuant to 815 ILCS 505/10a(a), Plaintiff seek monetary relief against Defendant in the amount of actual damages as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

601.   Plaintiff also seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1 ET SEQ.

## COUNT II
## BREACH OF EXPRESS WARRANTY[14]

602.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

603.   Plaintiff brings this claim on behalf of the Illinois Class.

604.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

605.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

606.   Honda's warranty formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the defective infotainment system from Honda.

607.   Plaintiff and the Class members experienced defects within the warranty period.  Despite the existence of its warranty, Honda failed to inform Plaintiff and Class members that the Class Vehicles were defective and failed to fix the defective infotainment system.

---

[14] By order dated October 17, 2019, the Court dismissed Plaintiff Issa's express warranty claim because he had yet to offer Honda an opportunity to repair or replace the defect, with leave to amend.  *See* DE 49 at p. 16.  As discussed above, Plaintiff Yazeed Issa now alleges that he has presented Honda with such an opportunity.

608.   Affording Honda a reasonable opportunity to cure its breach of written warranty would be unnecessary and futile here.

609.   Also, as alleged in more detail herein, at the time Honda warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to Honda's warranty and were inherently defective.  Honda wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

610.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints filed against it, including the instant Complaint, within a reasonable amount of time after the defect was discovered.

611.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(810 ILL. COMP. STAT. §§ 5/2-314 AND 5/2A-212)[15]**

612.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

613.   Plaintiff brings this claim on behalf of the Illinois Class.

614.   Honda was at all relevant times a "merchant" with respect to motor vehicles under 810 ILL. COMP. STAT. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

---

[15] By order dated October 17, 2019, the Court dismissed Plaintiff Issa's implied warranty claim because he had yet to offer Honda an opportunity to repair or replace the defect, with leave to amend.  *See* DE 49 at p. 21-22.  As discussed above, Plaintiff Yazeed Issa now alleges that he has presented Honda with such an opportunity.

615.   The Vehicles are and were at all relevant times ""goods" within the meaning of 810 ILL. COMP. STAT. §§ 5/2-105(1) and 5/2A-103(1)(h).

616.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

617.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

618.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

619.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

620.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Illinois Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

I.     **Claims Brought on Behalf of the Kansas Class**

**COUNT I**
**VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT**
**(KAN. STAT. ANN. § 50-623 *ET SEQ.*)**

621.   Plaintiff Ashley Pfeifer for all Kansas state law claims ("Plaintiff") hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

622.   Plaintiff brings this claim on behalf of the Kansas Class.

623.   The Kansas Consumer Protection Act ("Kansas CPA") states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a). Deceptive acts or practices include, but are not limited to, "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact"; "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact"; "making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions," "whether or not any consumer has in fact been misled." Kan. Stat. Ann. § 50-626.

624.   Plaintiff and Class members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased the vehicles at issue.

625.   Each sale of the Class Vehicles to Plaintiff and Class members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

626.   Honda violated the Kansas CPA by concealing and failing to disclose the infotainment defects.  Honda had an ongoing duty to Plaintiff and the Kansas Class to refrain from unfair and deceptive practices under the Kansas CPA in the course of its business.

627.   Plaintiff and the Kansas Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments and/or failure to disclose material information.

628.   Pursuant to Kan. Stat. Ann. § 50-634, Plaintiff and Class members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.

629.   Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623 ET SEQ.

SECOND AMENDED COMPLAINT                    - 158 -
010811-11/1205802 V1

## COUNT II
## BREACH OF EXPRESS WARRANTY[16]

630.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

631.   Plaintiff brings this claim on behalf of the Kansas Class.

632.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

633.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

634.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

635.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

636.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

637.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials

_____

[16] By order dated October 17, 2019, the Court dismissed Plaintiff Pfeifer's express warranty claim because she did not adequately plead that she had yet to offer Honda an opportunity to repair or replace the defect, with leave to amend.  *See* DE 49 at p. 16.  As discussed above, Plaintiff Pfeifer now alleges that she has presented Honda with such an opportunity.

SECOND AMENDED COMPLAINT
010811-11/1205802 V1

or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

638.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

639.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

640.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

641.  Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

642.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(KAN. STAT. §§ 84-2-314 AND 84-2A-212)**

643.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

644.   Plaintiff brings this claim on behalf of the Kansas Class.

645.   Honda was at all relevant times a "merchant" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and a "seller" of motor vehicles under § 84-2-103(1)(d).

646.   The Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

647.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. §§ 84-2-314 and 84-2A-212.

648.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

649.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

650.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

651.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Kansas Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**J.     Claims Brought on Behalf of the Kentucky Class**

**COUNT I**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**(KY. REV. STAT. § 367.110, *ET SEQ.*)**

652.   Plaintiff William Lampton ("Plaintiff," for purposes of all Kentucky Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

653.   Plaintiff brings this claim on behalf of the Kentucky Class.

654.   Honda and Plaintiff are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

655.   Honda engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

656.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce ...." Ky. Rev. Stat. § 367.170(1).  Honda participated in misleading, false, or deceptive acts that violated the Kentucky CPA.  By systematically concealing the defects in the Class Vehicles, Honda engaged in deceptive business practices prohibited by the Kentucky CPA.  These defects would be material to a reasonable consumer.

657.   Honda's actions, as set forth above, occurred in the conduct of trade or commerce.

658.   In the course of its business, Honda systematically concealed the defects in the Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Honda also engaged in unlawful trade practices by

employing deception, deceptive acts or practices, fraud or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

659.   Honda knew that the infotainment systems in the Class Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use.   Honda was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.   Honda nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

660.   By failing to disclose and by actively concealing the defects in Plaintiffs' vehicles, which it marketed as safe, reliable, and of high quality, Honda engaged in unfair and deceptive business practices in violation of the Kentucky CPA.

661.   In the course of Honda's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff's vehicle.

662.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of their vehicles.

663.   Honda intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiff.

664.   Honda knew or should have known that its conduct violated the Kentucky CPA.

665.   As alleged above, Honda made material statements about the safety and reliability of the Class Vehicles and the Honda brand that were either false or misleading.

666.   Honda owed Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles because Honda:

a.      Possessed exclusive knowledge about the defects in the Class Vehicles;

b.　　Intentionally concealed the foregoing from Plaintiff; and/or

c.　　Made incomplete representations about the safety and reliability of the
Class Vehicles.

667.　Because Honda fraudulently concealed the defects in Honda vehicles, Class Vehicle owners were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Further, Plaintiff had to spend his time and money to bring his Class Vehicles in for repair.　Had Honda Class Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Class Vehicles or would have paid less for them.

668.　Honda Class Vehicle owners were also harmed by Honda's unfair and deceptive trade practices since their vehicles were worth less as the result of Honda's concealment of, and failure to remedy, the defects.　This diminished value is directly attributed to Honda's dishonesty and omissions with respect to the quality and safety of the Class Vehicles.

669.　Honda's concealment of the defects in Plaintiff's vehicle was material to Plaintiff.

670.　Plaintiff suffered ascertainable loss caused by Honda's omissions and its concealment of and failure to disclose the defects in his vehicle.

671.　Honda's violations present a continuing risk to Plaintiff as well as to the general public.　In particular and as alleged herein, Honda's has yet to attempt to fix, much less acknowledge, the defects in Class Vehicles' infotainment systems.　Honda's unlawful acts and practices complained of herein affect the public interest.

672.　As a direct and proximate result of Honda's violations of the Kentucky CPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above.　As a direct result of Honda's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their vehicles.

SECOND AMENDED COMPLAINT　　　　　　- 164 -
010811-11/1205802 V1

673.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs seek to recover actual damages in an amount to be determined at trial; an order enjoining Honda's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**

674.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

675.   Plaintiff brings this claim on behalf of the Kentucky Class.

676. Honda is and was at all relevant times a merchant with respect to motor vehicles.

677.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

678.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

679.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

680.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

681.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials

SECOND AMENDED COMPLAINT                    - 165 -
010811-11/1205802 V1

or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

682. Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

683. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

684. Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

685. Plaintiffs have attempted to have their Vehicles repaired under the warranty. Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

686.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**K.     Claims Brought on Behalf of the Maryland Class**

**COUNT I**
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(MD. CODE COM. LAW § 13-101, ET SEQ.)**

687.   Plaintiff Jacob Szajowitz ("Plaintiff," for purposes of all Maryland Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

688.   This claim is brought on behalf of the Maryland Class.

689.   Honda and Plaintiff are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

690.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good.  Md. Com. Law Code § 13-303.  Honda participated in misleading, false, or deceptive acts that violated the Maryland CPA.  By systematically concealing the defects in the Class Vehicles, Honda engaged in deceptive business practices prohibited by the Maryland CPA.  These defects would be material to a reasonable consumer.

691.   Honda's actions, as set forth above, occurred in the conduct of trade or commerce.

692.   In the course of its business, Honda concealed the defects in Plaintiff's vehicle as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Honda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

693.   Honda knew that the infotainment systems in the Class Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use.  Honda was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.  Honda nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

694.   By failing to disclose and by actively concealing the defects in Plaintiff's vehicle, which it marketed as safe, reliable, and of high quality, Honda engaged in unfair and deceptive business practices in violation of the Maryland CPA.

695.   In the course of Honda's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff's vehicle.

696.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

697.   Honda intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiffs.

698.   Honda knew or should have known that its conduct violated the Maryland CPA.

699.   As alleged above, Honda made material statements about the safety and reliability of the Class Vehicles and the Honda brand that were either false or misleading.

700.   Honda owed Plaintiff a duty to disclose the true safety and reliability of the Class Vehicles because Honda:

a.     Possessed exclusive knowledge about the defects in the Class Vehicles;

b.     Intentionally concealed the foregoing from Plaintiff; and/or

c.     Made incomplete representations about the safety and reliability of the Class Vehicles.

SECOND AMENDED COMPLAINT
010811-11/1205802 V1

- 168 -

701.   Because Honda fraudulently concealed the defects in the Class Vehicles, Honda Class Vehicle owners were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects.   Further, Plaintiff had to spend his time and money to bring his Class Vehicle in for repair.   Had Honda Class Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Class Vehicles or would have paid less for them.

702.   Honda Class Vehicle owners were also harmed by Honda's unfair and deceptive trade practices since their vehicles were worth less as the result of Honda's concealment of, and failure to remedy, the defects.   This diminished value is directly attributed to Honda's dishonesty and omissions with respect to the quality and safety of the Class Vehicles.

703.   Honda's concealment of the defects in Plaintiff's vehicles was material to Plaintiff.

704.   Plaintiff suffered ascertainable loss caused by Honda's omissions and its concealment of and failure to disclose the defects in his vehicle.

705.   As a direct and proximate result of Honda's violations of the Maryland CPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above.   As a direct result of Honda's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their vehicles.

706.   Pursuant to Md. Code Com. Law § 13-408, Plaintiff seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY

707.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

708.   This claim is brought on behalf of the Maryland Class.

709.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

710.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

711.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

712.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

713.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

714.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

715.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

716.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

717.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

718.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

719.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Maryland Class members have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MD. CODE COM. LAW § 2-314)

720.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

721.   This claim is brought on behalf of the Maryland Class.

722.   Honda was a merchant with respect to motor vehicles within the meaning of MD. COM. LAW § 2-104(1).

SECOND AMENDED COMPLAINT                             - 171 -
010811-11/1205802 V1

723.   Under MD. COM. LAW § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased their Class Vehicles from Honda.

724.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' infotainment systems rendering certain crucial safety, communication, navigational, and entertainment functions inoperative.

725.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

726.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiff and the other Maryland Class members have been damaged in an amount to be proven at trial.

**L.     Claims Brought on Behalf of the Massachusetts Class**

**COUNT I**
**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECT ACT**
**(MASS. GEN. LAWS CH. 93A)**

727.   Plaintiff Michaela Hetzler ("Plaintiff," for purposes of all Massachusetts Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

728.   Plaintiff brings this claim on behalf of the Massachusetts Class.

729.   The conduct of Honda as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, including but not limited to Honda's manufacture, and sale of Class Vehicles with the defective infotainment system, which Honda failed to adequately investigate, disclose, and remedy, and its omissions regarding the safety, reliability, and functionality of its Class Vehicles, which omissions possessed the tendency to deceive.

730.   Honda engages in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

731.   Therefore, Plaintiff seeks monetary and equitable relief under the Massachusetts Consumer Protection Act as a result of Honda's unfair and deceptive acts and practices.   On June 10, 2019, and pursuant to Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiffs sent notice and demand to Honda of its violations of the Massachusetts Consumer Protection Act.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(MASS. GEN. LAWS CH. 106, § 2-313)**

732.   Plaintiff Michaela Hetzler ("Plaintiff," for purposes of all Massachusetts Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

733.   Plaintiff brings this claim on behalf of the Massachusetts Class.

734.   Honda is and was at all relevant times a "merchant" with respect to motor vehicles.

735.   In its Limited Warranty, Honda expressly warranted that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

736.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

737.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

738.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make

SECOND AMENDED COMPLAINT                    - 173 -
010811-11/1205802 V1

Plaintiff and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

739.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

740.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.   Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

741.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

742.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, as set forth in Mass. Gen. Laws Ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Mass. Gen. Laws Ch. 106, §§ 2-711 and 2-608.

743.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.   Honda was also provided notice of these issues by numerous complaints

against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

744.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MASS. GEN. LAWS CH. 106, § 2-314)**

745.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

746.   Plaintiff brings this claim on behalf of the Massachusetts Class.

747.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

748.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

749.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' infotainment systems rendering certain crucial safety, communication, navigational, and entertainment functions inoperative.

750.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

751.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be proven at trial.

## M.   Claims Brought on Behalf of the Missouri Class

### COUNT I
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (MO. REV. STAT. § 407.010 *ET SEQ.*)

752.   Plaintiff Michelle Beckwith ("Plaintiff," for purposes of all Missouri Class Counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

753.   This claim is brought by Plaintiff on behalf of the Missouri Class.

754.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

755.   Defendant, Plaintiff, and Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

756.   Defendant engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. REV. STAT. § 407.010(7).

757.   Honda violated the Missouri MPA by concealing and failing to disclose the infotainment system defects.  Honda had an ongoing duty to Plaintiff and the Missouri Class to refrain from unfair and deceptive practices under the Missouri MPA in the course of its business.

758.   Plaintiff and the Missouri Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, and/or failure to disclose material information.

759.   Defendant is liable to Plaintiff and Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT II
## BREACH OF EXPRESS WARRANTY

760.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

761.   Plaintiff brings this claim on behalf of the Missouri Class.

762.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

763.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

764.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

765.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

766.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

767.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

768.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's

Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

769. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

770. Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

771. Plaintiffs have attempted to have their Vehicles repaired under the warranty. Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

772. As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Missouri Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MO. REV. STAT. § 400.2-314)**

773.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

774.   Plaintiff brings this Count on behalf of the Missouri Class.

775.   Honda was at all relevant times a "merchant" as defined by Mo. Rev. Stat. § 400.2-104 and a "seller" of motor vehicles under § 400.2-103(1)(d).

776.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

777.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

778.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

779.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

780.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

781.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Missouri Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**N.    Claims Brought on Behalf of the Ohio Class**

**COUNT I**
**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE §§ 1345.01, *ET SEQ.*)**

782.    Plaintiffs Leslie and Tom Conti ("Plaintiffs," for purposes of all Ohio Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

783.    Plaintiffs bring this claim on behalf of the Ohio Class.

784.    Plaintiffs and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA"). Honda is a "supplier" as defined by the OCSPA.  Plaintiffs' and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

785.    By failing to disclose and actively concealing the defects in the infotainment systems in the Class Vehicles, Honda engaged in deceptive business practices prohibited by the OCSPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

786.    Honda knew that the infotainment systems in the Class Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use.  Honda nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

787.    Honda owed Plaintiffs a duty to disclose the defective nature of the infotainment systems in the Class Vehicles, because Honda:

    i)    Possessed exclusive knowledge of the defects rendering the Class Vehicles more unreliable than similar vehicles;

    ii)    Intentionally concealed the defects associated with infotainment system; and/or

iii)   Made incomplete representations about the characteristics and performance of the infotainment system generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

788.   Honda's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of Honda's infotainment system.

789.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Honda in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA.   These cases include, but are not limited to, the following:

a.   *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b.   *State ex rel. Betty D. Montgomery v. Honda Motor Co.* (OPIF #10002123);

c.   *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

d.   *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e.   *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Oho App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f.   *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g.   *Mark J. CrawHonda, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

SECOND AMENDED COMPLAINT                                    - 181 -
010811-11/1205802 V1

h.      *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i.      *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j.      *Khouri v. Don Lewis* (OPIF #100001995);

k.      *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l.      *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524);

m.      *Brown v. Spears* (OPIF #10000403);

n.      *State ex rel. Brown v. Bud Fletcher Used Cars, Inc.* (OPIF #10000228) (Ohio Ct. C.P. Apr. 27, 1982);

o.      *State ex rel. Celebrezze v. Metro Toyota, Inc.* (OPIF #10001194); and

p.      *Shellhorn v. Kohler Chrysler-Plymouth, Inc.*, PIF Number:10001309.

790.   As a result of its violations of the OCSPA detailed above, Honda caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, a Class Vehicle that is defective.  Defects associated with the infotainment system have caused the value of Class Vehicles to decrease.

791.   Plaintiffs and the Class sustained damages as a result of Honda's unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

792.   Plaintiff also seeks court costs and attorneys' fees as a result of Honda's violation of the OCSPA as provided in Ohio Rev. Code § 1345.09.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(OHIO REV. CODE § 1302.26)**

793.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

794.   Plaintiffs bring this claim on behalf of the Ohio Class.

795.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

796.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

797.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

798.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

799.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

800.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

801.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

802.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and

consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

803.   Due to Honda's breach of warranty as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Ohio Rev. Code § 1302.66, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Ohio Rev. Code §§ 1302.66 and 1302.85.

804.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.   Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

805.   As a direct and proximate result of Honda's breach of express warranty, Plaintiffs and the other Ohio Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY IN TORT**
**(BASED ON OHIO LAW)**

806.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

807.   Plaintiffs bring this claim on behalf of the Ohio Class.

808.   The Class Vehicles contained a defect, namely, an infotainment system that routinely fails, completely or partially, resulting in loss of crucial safety, communications, and entertainment functions, as detailed herein more fully.

809.   The manufacturing, and/or assembly defect existed at the time these Class Vehicles containing the infotainment system left the hands of Honda.

810.   Based upon the dangerous product defect and its certainty to occur, Honda failed to meet the expectations of a reasonable consumer.  The Class Vehicles failed their ordinary, intended use because the infotainment system does not function (when it functions at all) as a reasonable consumer would expect.  Moreover, it presents a serious danger to Plaintiffs and the other Class members that cannot be eliminated without significant cost.

811.   The defect in the infotainment systems in these Class Vehicles was the direct and proximate cause of economic damages to Plaintiff, as well as damages.

**O.   Claims Brought on Behalf of the Oklahoma Class**

**COUNT I**
**VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
**(OKLA. STAT. TIT. 15 § 751, *ET SEQ.*)**

812.   Plaintiffs Ross and Stephanie Conley ("Plaintiffs," for purposes of all Oklahoma Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

813.   Plaintiffs bring this claim on behalf of the Oklahoma Class.

814.   Plaintiffs are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. TIT. 15 § 752.

815.   Honda is a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15 § 15-751(1).

816.   The sale or lease of the Class Vehicles to Plaintiffs was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15 § 752, and Honda's actions as set forth herein occurred in the conduct of trade or commerce.

817.   The Oklahoma CPA declares unlawful, inter alia, the following acts or practices when committed in the course of business:  "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics…, uses, [or]

benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice."  See OKLA. STAT. TIT. 15, § 753.  By failing to disclose and by systematically concealing the defects in the Class Vehicles, Honda engaged in deceptive business practices prohibited by the Oklahoma CPA.  These defects would be material to a reasonable consumer.

818.   In the course of its business, Honda concealed the defects in Plaintiffs' vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Honda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

819.   Honda knew that the infotainment systems in the Class Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use.  Honda was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.  Honda nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

820.   By failing to disclose and by actively concealing the defects in Plaintiffs' vehicle, which it marketed as safe, reliable, and of high quality, Honda engaged in unfair and deceptive business practices in violation of the Oklahoma CPA.

821.   In the course of Honda's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiffs' vehicles.

SECOND AMENDED COMPLAINT                    - 186 -

822.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

823.   Honda intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiffs.

824.   Honda knew or should have known that its conduct violated the Oklahoma CPA.

825.   As alleged above, Honda made material statements about the safety and reliability of the Class Vehicles and the Honda brand that were either false or misleading.

826.   Honda owed Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles, because Honda:

   a.   Possessed exclusive knowledge about the defects in the Class Vehicles;

   b.   Intentionally concealed the foregoing from Plaintiffs; and/or

   c.   Made incomplete representations about the safety and reliability of the Class Vehicles.

827.   Because Honda fraudulently concealed the defects in Honda vehicles, Honda Class Vehicle owners were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects.  Further, Plaintiffs had to spend their time and money to bring their Class Vehicles in for repair.  Had Honda Class Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Class Vehicles or would have paid less for them.

828.   Honda Class Vehicle owners were also harmed by Honda's unfair and deceptive trade practices since their vehicles were worth less as the result of Honda's concealment of, and failure to remedy, the defects.  This diminished value is directly

attributed to Honda's dishonesty and omissions with respect to the quality and safety of the Class Vehicles.

829.   Honda's concealment of the defects in Plaintiffs' vehicles was material to Plaintiffs.

830.   Plaintiffs suffered ascertainable loss caused by Honda's omissions and its concealment of and failure to disclose the defects in their vehicles.

831.   As a direct and proximate result of Honda's violations of the Oklahoma CPA, Plaintiffs have suffered injury-in-fact and/or actual damage, as alleged above.  As a direct result of Honda's misconduct, Plaintiffs incurred damages in at least the form of lost time required to repair their vehicle.

832.   Plaintiffs seek punitive damages against Honda because Honda's conduct was egregious and unconscionable.  Honda's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

833.   Because Honda's unconscionable conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under OKLA. STAT. TIT. 15 § 761.1. Plaintiffs further seeks an order enjoining Honda's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY

834.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

835.   Plaintiffs bring this claim on behalf of the Oklahoma Class.

836.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

837.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under

normal use" and that "all repairs/replacements made under this warranty are free of charge."

838.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

839.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

840.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

841.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

842.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

843.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited

remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

844.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

845.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

846.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Oklahoma Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(12A OKLA. STAT. ANN. § 2-314)**

847.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

848.   Plaintiffs bring this claim on behalf of the Oklahoma Class.

849.   Honda was a merchant with respect to motor vehicles.

850.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicle from Honda.

851.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

852.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

853.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

854.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Oklahoma Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**P.     Claims Brought on Behalf of the South Carolina Class**

**COUNT I**
**VIOLATION OF THE SOUTH CAROLINA**
**UNFAIR TRADE PRACTICES ACT**
**(S.C. CODE ANN. § 39-5-10 *ET SEQ.*)**

855.   Plaintiff Emily Darr ("Plaintiff," for purposes of all South Carolina Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

856.   This claim is brought by Plaintiff on behalf of the South Carolina Class.

857.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).

858.   Defendant is a "person" under S.C. Code Ann. § 39-5-10.

859.   Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiff and Class members seek monetary relief to recover their economic losses. Because Defendant's actions were willful and knowing, Plaintiff's damages should be trebled.

860.   Honda violated the South Carolina UTPA by concealing and failing to disclose the infotainment system defects.  Honda had an ongoing duty to Plaintiff and the South Carolina Class to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of its business.

861.   Plaintiff and the South Carolina Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, omissions, and/or failure to disclose material information.

862.   Plaintiff also seeks punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff to cruel and unjust hardship as a result. Honda's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

863.   Plaintiff further seeks an order enjoining Defendant's unfair or deceptive acts or practices.

## COUNT II
## BREACH OF EXPRESS WARRANTY

864.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

865.   Plaintiff brings this claim on behalf of the South Carolina Class.

866.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

867.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

868.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

869.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

870.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

871.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

872.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

873.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class

members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

874.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

875.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

876.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other South Carolina Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(S.C. CODE §§ 36-2-314 AND 36-2A-212)**

877.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

878.   Plaintiff brings this claim on behalf of the South Carolina Class.

879.   Honda was at all relevant times a "merchant" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and a "seller" of motor vehicles under § 36-2-103(1)(d).

880.   The Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

881.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2-314 and 36-2A-212.

882.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

883.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

884.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

885.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other South Carolina Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**Q.    Claims Brought on Behalf of the Tennessee Class**

**COUNT I**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977**
**(TENN. CODE ANN. § 47-18-101, *ET SEQ.*)**

886.   Plaintiff Pamela Turberville ("Plaintiff," for purposes of all Tennessee Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

887.   This claim is brought by Plaintiff on behalf of the Tennessee Class.

888.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

889.   Plaintiff and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code § 4-18-104.

890.   Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Tenn. Code § 47-18-103(9).

891.   Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

892.   By concealing and failing to disclose the infotainment system defects, Honda violated the Tennessee CPA.  Honda had an ongoing duty to Plaintiff and the Tennessee Class to refrain from unfair and deceptive practices under the Tennessee CPA in the course of its business.

893.   Plaintiff and the Tennessee Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, omissions, and/or failure to disclose material information.

894.   Pursuant to Tenn. Code §§ 47-18-109 and 47-18-109(a)(3), Plaintiff and the Tennessee Class members seek an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, punitive damages, attorneys' fees, and any other just and proper remedy under the Tennessee CPA.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(BASED ON TENNESSEE LAW)[17]**

895.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

---

[17] By order dated October 17, 2019, the Court dismissed Plaintiff Turberville's express warranty claim because she had yet to offer Honda an opportunity to repair or replace the defect, with leave to amend. *See* DE 49 at p. 16.  As discussed above, Plaintiff Turberville now alleges that she has presented Honda with such an opportunity.

SECOND AMENDED COMPLAINT
010811-11/1205802 V1

- 196 -

896.   Plaintiff brings this claim on behalf of the Tennessee Class.

897.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

898.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

899.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

900.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

901.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

902.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

903.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiffs and the

other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

904.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

905.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

906.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

907.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Tennessee Class members have been damaged in an amount to be determined at trial.

**R.    Claims Brought on Behalf of the Texas Class**

**COUNT I**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*)**

908.   Plaintiff Smuti Patel ("Plaintiff," for purposes of all Texas Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

SECOND AMENDED COMPLAINT                        - 198 -
010811-11/1205802 V1

909.   Plaintiff brings this Count on behalf of the Texas Class.

910.   Plaintiff and Honda are each "persons" as defined by Tex. Bus. & Com. Code § 17.45(3).   The Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1).  Plaintiff and the other Texas Class members are "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4).  Honda has at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Class Vehicles in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

911.   The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41, et seq.

912.   By failing to disclose and actively concealing the defects in the infotainment systems in the Class Vehicles, Honda engaged in deceptive business practices prohibited by the DTPA, including  engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

913.   Honda knew that the infotainment systems in the Class Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use.  Honda nevertheless failed to warn Plaintiff about these defects despite having a duty to do so.

914.   Honda owed Plaintiff a duty to disclose the defective nature of the infotainment systems in the Class Vehicles, because Honda:

i)      Possessed exclusive knowledge of the defects rendering the Class Vehicles more unreliable than similar vehicles;

ii)     Intentionally concealed the defects associated with the infotainment systems; and/or

iii)    Made incomplete representations about the characteristics and performance of the infotainment system generally, while purposefully

withholding material facts from Plaintiff that contradicted these representations.

915.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the Class Vehicles' infotainment systems.

916.   Honda's intentional concealment of and failure to disclose the defective nature of the Class Vehicles to Plaintiff and the other Class members constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff and the other Class members, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff and the other Class members.

917.   Honda is also liable under Tex. Bus. & Com. Code § 17.50(a) because Honda's breach of the implied warranty of merchantability set forth herein was a producing cause of economic damages sustained by Plaintiff and the other Class members.

918.   As a result of its violations of the DTPA detailed above, Honda caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff.  Plaintiff currently owns or leases, or within the class period has owned or leased, a Class Vehicle that is defective.  Defects associated with the Class Vehicles' infotainment systems have caused the value of Class Vehicles to decrease.

919.   All procedural prerequisites, including notice, have been met.  The giving of notice to Honda is rendered impracticable pursuant to Tex. Bus. & Com. Code § 17.505(b) and unnecessary because Honda has notice of the claims against it through the numerous complaints filed against it.  On October 29, 2019, pursuant to Tex. Bus. & Com. Code § 17.505(a), Plaintiff, individually and on behalf of the other Class members, sent  Honda a written notice that advised Honda in reasonable detail of

Plaintiff Patel and the Class' specific complaint and the amount of economic damages and expenses, including attorneys' fees, reasonably incurred to date in asserting the claim against Honda. On November 4, 2019, pursuant to Tex. Bus. & Com. Code § 17.501, Plaintiff, individually and on behalf of the other Class members, sent the Texas Consumer Protection Division a copy of this Complaint.

920.   Plaintiff and the Class sustained damages as a result of the Honda's unlawful acts and are, therefore, entitled to damages and other relief as provided under the DTPA.

921.   Plaintiff and the other Texas Class members should be awarded three times the amount of their economic damages because Honda intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(TEX. BUS. & COM. CODE § 2.313)**

922.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

923.   Plaintiff brings this Count on behalf of the Texas Class.

924.   Honda is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

925.   In its Limited Warranty, Honda expressly warranted that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

926.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

927.   Honda breached the express warranty to repair and replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not

repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

928.   In addition to this Limited Warranty, Honda otherwise expressly warranted several attributes, characteristics, and qualities of the infotainment system.

929.   These warranties are only a sampling of the numerous warranties that Honda made relating to safety, reliability, and operation.   Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the infotainment system.   These warranties were made, inter alia, in advertisements, on Honda's website, and in uniform statements provided by Honda to be made by salespeople, or made publicly by Honda executives or by other authorized Honda representatives.   These affirmations and promises were part of the basis of the bargain between the parties.

930.   These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Honda did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to these express warranties.

931.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

932.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

933.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Honda wrongfully and fraudulently omitted and/or

concealed material facts regarding its Class Vehicles.   Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

934.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

935.   Due to Honda's breach of warranties as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, as set forth in Tex. Bus. & Com. Code § 2.711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Tex. Bus. & Com. Code §§ 2.711 and 2.608.

936.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.   Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

937.   As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other Texas Class members have been damaged in an amount to be determined at trial.

1
2

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON TEXAS LAW)**

3      938.   Plaintiff incorporates by reference all preceding allegations as though fully

4  set forth herein.

5      939.   Plaintiff brings this Count on behalf of the Texas Class.

6      940.   Honda is and was at all relevant times a merchant with respect to motor

7  vehicles under Tex. Bus. & Com. Code § 2.104.

8      941.   A warranty that the Class Vehicles were in merchantable condition was

9  implied by law in the instant transactions, pursuant to Tex. Bus. & Com. Code § 2.314.

10  These vehicles and the infotainment systems in the Class Vehicles, when sold and at all

11  times thereafter, were not in merchantable condition and are not fit for the ordinary

12  purpose for which they are used.   Specifically, the Class Vehicles are inherently

13  defective in that there are defects in the infotainment system which prevent users from

14  enjoying many features of the Class Vehicles they purchased and/or leased and that they

15  paid for; and the infotainment system was not adequately tested.

16      942.   Honda was provided notice of these issues by numerous complaints against

17  it, including the instant Complaint, and by customer complaints, letters, emails and other

18  communications from Class Members and from dealers and other repair facilities.

19      943.   As a direct and proximate result of Honda's breach of the warranties of

20  merchantability, Plaintiff and the Texas Class have been damaged in an amount to be

21  proven at trial.

22
23
24
25
26
27
28

**S.**   **Claims Brought on Behalf of the Virginia Class**

**COUNT I**
**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. §§ 59.1-196, *ET SEQ.*)**

944.   Plaintiff Ann Morgan ("Plaintiff," for purposes of all Virginia Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

945.   Plaintiff brings this Count on behalf of the Virginia Class.

946.   The Virginia Consumer Protection prohibits "(14) using any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  Va. Code Ann. § 59.1-200(A).

947.   Honda is a "person" as defined by Va. Code Ann. § 59.1-198.   The transactions between Plaintiff and the other Class members on one hand and Honda on the other, leading to the purchase or lease of the Class Vehicles by Plaintiff and the other Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

948.   In the course of Honda's business, it willfully failed to disclose and actively concealed the dangerous risk of infotainment system failure in Class Vehicles as described above.  Accordingly, Honda engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including engaging in conduct likely to deceive.

949.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

950.   Honda's conduct proximately caused injuries to Plaintiff and the other Class members.

951.   Plaintiff and the other Class members were injured as a result of Honda's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered

1   a diminution in value.  These injuries are the direct and natural consequence of Honda's

2   omissions.

3      952.   Honda actively and willfully concealed and/or suppressed the material

4   facts regarding the defective and unreasonably dangerous nature of the infotainment

5   system and the Class Vehicles, in whole or in part, with the intent to deceive and mislead

6   Plaintiff and the other Class members and to induce Plaintiff and the other Class

7   members to purchase or lease Class Vehicles at a higher price, which did not match the

8   Class Vehicles' true value.  Plaintiff and the other Virginia Class members therefore

9   seek treble damages.

10                          **COUNT II**
                  **BREACH OF EXPRESS WARRANTY**
11                   **(VA. CODE ANN. § 8.2-313)**

12      953.   Plaintiff incorporates by reference all preceding allegations as though fully

13   set forth herein.

14      954.   Plaintiff brings this Count on behalf of the Virginia Class.

15      955.   Honda is and was at all relevant times a merchant with respect to motor

16   vehicles.

17      956.   In its New Vehicle Limited Warranty, Honda expressly warranted that it

18   "will repair or replace any part that is defective in material or workmanship under

19   normal use" and that "all repairs/replacements made under this warranty are free of

20   charge."

21      957.   Honda's Limited Warranty formed the basis of the bargain that was

22   reached when Plaintiff and the other Class members purchased or leased their Class

23   Vehicles equipped with an infotainment system from Honda.

24      958.   Honda breached the express warranty to repair or replacement to correct

25   defects in materials and workmanship of any part supplied by Honda.  Honda has not

26   repaired or replaced, and has been unable to repair or replace, the Class Vehicles'

27   materials and workmanship defects.

28

SECOND AMENDED COMPLAINT                    - 206 -

959.   Furthermore, the limited warranty of repair and/or replacement to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

960.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

961.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, and Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

962.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

963.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, as set forth in Va. Code Ann. § 8.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Va. Code Ann. §§ 8.2-711 and 8.2-608.

964.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

965.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Virginia Class members have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(VA. CODE ANN. § 8.2-314)**

966.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

967.   Plaintiff brings this Count on behalf of the Virginia Class.

968.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

969.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

970.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

971.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

972.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

973.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Virginia Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**T.     Claims Brought on Behalf of the Washington Class**

**COUNT I**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*)**

974.   Plaintiff Julie Pereira ("Plaintiff," for purposes of all Washington Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

975.   Plaintiff brings this Count on behalf of the Washington Class.

976.   The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with infotainment system defect(s), which Honda failed to adequately investigate, disclose and remedy.  Further, Honda knew about these defects prior to the sale of the Class Vehicles but did not disclose the existence of these defects to Plaintiff and the Washington Class members and concealed those defects.   Honda also omitted information regarding the safety and reliability of the Class Vehicles.

977.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

978.   Honda's actions constituted a generalized course of deception that impacts the public interest because Plaintiff and the Washington Class members were injured in exactly the same way as millions of others purchasing and/or leasing Honda vehicles and that the failure to follow the practices pertaining to motor vehicle warranties in

Wash. Rev. Code § 19.18 is recognized by statute as matters vitally affecting the public interest. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business and has the potential for repetition.

979. Honda's actions as set forth above induced Plaintiff and the Washington Class members to purchase their Class Vehicles from Honda and/or pay a higher price for their Class Vehicles than they otherwise would have.

980. Plaintiff and the Washington Class members were injured as a result of Honda's conduct. Due to Honda's deceptive or unfair conduct, Plaintiff and the Washington Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain. Their vehicles have also suffered a diminution in value.

981. Honda's conduct proximately caused the injuries to Plaintiff and the Washington Class members.

982. Honda is liable to Plaintiff and the Washington Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

983. Pursuant to Wash. Rev. Code § 19.86.095, Plaintiff will serve the Washington Attorney General with a copy of this complaint as Plaintiff and the Washington Class members seek injunctive relief.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(REV. CODE WASH. § 62A.2-313)**

984. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

985. Plaintiff brings this Count on behalf of the Washington Class.

986. As an express warrantor and manufacturer and merchant, Honda had certain obligations under Wash. Rev. Code § 62A.2-313 to conform the Class Vehicles to the express warranties.

987. When Plaintiff and the Washington Class members purchased or leased their Class Vehicles, Honda expressly warranted in writing that the Class Vehicles were

covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain. As set forth above, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

988.   The defects at issue in this litigation were present at the time of sale and lease to Plaintiffs and members of the Washington Class.

989.   Honda breached the Limited Warranty to repair or replace defects in materials and workmanship of any part supplied by Honda as Honda has been unable to repair or replace the Class Vehicles' materials and workmanship defects.

990.   Furthermore, the Limited Warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the Washington Class members whole and because Honda has failed and/or refused to adequately provide the promised remedies within a reasonable time.

991.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles, and while knowing that the Class Vehicles did not conform to Honda's Limited Warranty and were inherently defective, Honda wrongfully and fraudulently concealed material facts regarding the Class Vehicles.  Plaintiff and the Washington Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

992.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda and its agent dealers have failed and refused to conform the Class Vehicles to the express warranties.

993.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as those incidental and consequential damages have already been suffered due to the Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such

limited remedy within a reasonable time, and any limitation on Plaintiff's and the Washington Class members' remedies would be insufficient to make Plaintiff and the Washington Class whole.

994.   Honda received timely notice regarding the problems at issue in this litigation. Honda was also provided notice of these issues almost immediately after launching the first Class Vehicles through the receipt of numerous complaints regarding those vehicles' infotainment systems. Honda has received, on information and belief, numerous complaints and other notices from consumers advising them of the defects at issue in this litigation.

995.   Plaintiff has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Honda or by operation of law in light of Honda's unconscionable conduct.

996.   Plaintiff has had sufficient dealings with either Honda or its agents (dealerships) to establish privity of contract. Privity is not required in this case because Plaintiff and the Washington Class members are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's express warranties and these warranties were advertised to Plaintiff and the Washington Class members as the ultimate consumers.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

997.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the Washington Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value.

## COUNT III
## BREACH OF IMPLIED WARRANTY

998.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

999.   Plaintiff brings this Count on behalf of the Washington Class.

1000.   Honda is and was at all relevant times a merchant with respect to the Class Vehicles.

1001. A warranty that the Class Vehicles were in merchantable condition is implied by law pursuant to Wash. Rev. Code § 62A.2-614.

1002. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiff and Class Members would not have purchased the Vehicles had they known of the defects.

1003. Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

1004. Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

1005. Washington Plaintiff has had sufficient dealings with either Honda or its agents (dealerships) to establish privity of contract. Privity is not required in this case because Plaintiffs and the Washington Class members are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

1006. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial.

1

2
## PRAYER FOR RELIEF

3
WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class

4
Members, respectfully request judgment against Defendant as follows:

5
(A)    certifying the proposed State Law Classes;

6
(B)    appointing Plaintiffs and their counsel to represent the Class;

7
(C)    ordering injunctive relief, restitution, disgorgement, and/or other

8
appropriate relief;

9
(D)    awarding compensatory, punitive, exemplary, and other recoverable

10
damages;

11
(E)    awarding reasonable attorney's fees and expenses;

12
(F)    awarding pre-judgment and post-judgment interest;

13
(G)    awarding such other and further relief as this Court may deem just and

14
proper.

15
## JURY DEMAND

16
Plaintiffs demand a trial by jury of all issues so triable.

17

18

19

20

21

22

23

24

25

26

27

28

Dated: November 4, 2019          Respectfully submitted,

                                 HAGENS BERMAN SOBOL SHAPIRO LLP

                                 By */s/ Christopher R. Pitoun*
                                     Christopher R. Pitoun (SBN 290235)
                                 301 North Lake Avenue, Suite 920
                                 Pasadena, California 91101
                                 Telephone: (213) 330-7150
                                 Facsimile: (213) 330-7152
                                 *christopherp@hbsslaw.com*

                                 Steve W. Berman (*pro hac vice*)
                                 Sean R. Matt (*pro hac vice*)
                                 HAGENS BERMAN SOBOL SHAPIRO LLP
                                 1301 Second Avenue, Suite 2000
                                 Seattle, Washington 98101
                                 Telephone: (206) 623-7292
                                 Facsimile: (206) 623-0594
                                 *steve@hbsslaw.com*
                                 *sean@hbsslaw.com*

                                 Jeffrey S. Goldenberg (*pro hac vice* to be filed)
                                 Todd Naylor (*pro hac vice* to be filed)
                                 GOLDENBERG SCHNEIDER, LPA
                                 One West Fourth Street, 18th Floor
                                 Cincinnati, Ohio 45202
                                 Tel: (513) 345-8291
                                 Fax: (513) 345-8294
                                 *jgoldenberg@gs-legal.com*
                                 *tnaylor@gs-legal.com*

                                 John C. Weisensell (*pro hac vice* to be filed)
                                 NIEKAMP, WEISENSELL, MUTERSBAUGH &
                                 MASTRANTONIO LLP
                                 23 South Main Street, Third Floor
                                 Akron, OH 44308
                                 Tel: (330) 434-1000
                                 Fax: (330) 434-1001
                                 *jack@nwm-law.com*

                                 *Counsel for Plaintiffs and Class*

SECOND AMENDED COMPLAINT                  - 215 -
010811-11/1205802 V1