STEVE W. BERMAN (*pro hac vice*)
SEAN R. MATT (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:   (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California  91101
Telephone:   (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LESLEY CONTI, et al., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>        vs.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation,<br><br>                    Defendants. | Case Number:  2:19-cv-2160-CJC-GJS<br><br>[*The Honorable Cormac J. Carney*]<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(e)**<br><br>Hearing Date:  June 14, 2021<br>Time:  1:30 p.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on June 14, 2021, at 1:30 p.m., or as soon thereafter as the matter can be heard, in Courtroom of the Hon. Cormac J. Carney, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, CA 92701, Courtroom 9 B, Plaintiffs Lesley Conti, Tom Conti, Brandi Bishop, Brigid Hirth, Michael Hirth, Mark Ankrom, Heidi Phan, Peter Phan, Anthony Rossomando, Laura Mohr, Larry Simkin, Harmeet Gill, Yazeed Issa, Ashley Pfeifer, William D. Lampton, Jacob Szajowitz, Michaela Hetzler, Michelle Beckwith, Ross Conley, Stephanie Conley, Emily Darr, Pamela Turberville, Smruti Patel, Ann Morgan, and Julie Pereira ("Plaintiffs") on behalf of themselves all others similarly situated, will, and hereby do, move this Court to:

1.     Preliminarily approve the settlement described in the Amended Class Action Settlement Agreement and Release, attached as Exhibit 2 to the Declaration of Sean R. Matt in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement;

2.     Conditionally certify the Settlement Class;

3.     Appoint the named Plaintiffs as Settlement Class Representatives;

4.     Appoint the undersigned counsel as Settlement Class Counsel;

5.     Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

6.     Appoint American Honda Motor, Inc. as the Settlement Administrator; and

7.     Set a hearing date and briefing schedule for Final Settlement Approval and Plaintiffs' motion for fees and expenses.

This Motion is based upon: (1) this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Class Notice; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement and Class Notice; (3) the Declaration of Sean R. Matt; (4) the Settlement Agreement; (5) the Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.) in Support of Motion for

Preliminary Approval of Class Settlement; (6) the records, pleadings, and papers filed in this action; and (7) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  May 14, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Sean R. Matt*

Steve W. Berman (*pro hac vice*)
Sean R. Matt  (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:  (213) 330-7150
Facsimile:    (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................................. 1

II. CASE HISTORY ................................................................ 2

III. TERMS OF THE SETTLEMENT ........................................ 6

IV. RELEVANT LEGAL STANDARDS .................................... 9

V. THE PROPOSED SETTLEMENT MERITS PRELIMINARY
APPROVAL ...................................................................... 10

    A. Class Representatives and Class Counsel have zealously
represented the Class. ................................................... 10

    B. The Proposed Settlement is the product of good faith, informed,
and arm's-length negotiations, and it is fair. ................... 11

    C. The Proposed Settlement provides significant benefits in
exchange for the compromise of claims. ........................ 12

    D. The Proposed Settlement mitigates the risks, expenses, and
delays the Class would bear with continued litigation. .... 12

        1. The Proposed Settlement allows Class Members to easily
obtain relief. ........................................................... 13

        2. Counsel will seek reasonable attorneys' fees and costs,
which will be paid separately by AHM and not dilute any
recovery to Class Members. ..................................... 14

    E. The Proposed Settlement treats all Class Members equitably. ... 14

VI. CERTIFICATION IS APPROPRIATE FOR SETTLEMENT
PURPOSES ...................................................................... 15

    A. The Settlement Class meets the requirements of Rule 23(a). ... 15

        1. The Settlement Class is sufficiently numerous. ......... 15

        2. There are common questions of law and fact. ........... 15

3.    Plaintiffs' claims are typical of the Settlement Class Members' claims.................................................................. 16

4.    Plaintiffs and Class Counsel have protected, and will continue to protect, the interests of the Settlement Class. ................. 16

B.    The Settlement Class meets the requirements of Rule 23(b)(3). ................. 17

1.    Common issues of law and fact predominate. .................................... 17

2.    Class treatment is superior to other available methods. ..................... 18

VII.    THE PROPOSED NOTICE PROGRAM IS ADEQUATE .................................... 19

VIII.    CONCLUSION.................................................................................... 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).................................................................................15, 17, 19

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..............................................................................12

*Byrne v. Santa Barbara Hosp. Serv., Inc.*,
   2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ....................................................11

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ............................................................................18

*Chamberlan v. Ford Motor Co.*,
   223 F.R.D. 524 (N.D. Cal. 2004).......................................................................18

*Churchill Vill., L.L.C., v. GE*,
   361 F.3d 566 (9th Cir. 2004) ..............................................................................19

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..............................................................................9

*Cohen v. Trump*,
   303 F.R.D. 376 (S.D. Cal. 2014) ........................................................................15

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ......................................................................16, 17

*Glover v. City of Laguna Beach*,
   2018 WL 6131601 (C.D. Cal. July 18, 2018)......................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................9, 10, 12, 16, 17, 18

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ............................................................................15

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012)........................................................................18

*Kim v. Space Pencil, Inc.*,
   2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ....................................................12

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .................................................................................9

*Loritz v. Exide Tech.*,
   2015 WL 6790247 (C.D. Cal. July 21, 2015)......................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .........................................................................11, 13

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) .............................................................................19

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..............................................................................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).............................................................10, 12, 13

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009)......................................................12

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................9, 10

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................................13

*Palmer v. Stassinos*,
   233 F.R.D. 546 (N.D. Cal. 2006).........................................................................15

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)........................................................................18

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ...............................................................................16

*Radcliffe v. Experian Info. Sols., Inc.*,
   715 F.3d 1157 (9th Cir. 2013) .............................................................................16

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ...................................................................16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ....................................................................14

*Rosales v. El Rancho Farms*,
   2015 WL 4460918 (E.D. Cal. July 21, 2015)................................... 12, 13

*Rosen v. J.M. Auto Inc.*,
   270 F.R.D. 675 (S.D. Fla. 2009) ..............................................................18

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000)...............................................................15

*Stockwell v. City & Cty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ..................................................................15

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)......................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)...............................................................................18

*In re Volkswagen "Clean Diesel" Marketing, Sales
   Practices, & Prods. Liab. Litig*,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...................................................................................15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .................................................... 16, 18, 19

**Statutes & Rules**

Class Action Fairness Act, 28 U.S.C. § 1715 ..........................................20

Fed. R. Civ. P. 23 ............................................................... *passim*

**Other Authorities**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (5th ed.)...........9

The Manual for Complex Litigation (Fourth) (2004)..................9, 15

# I.   INTRODUCTION

Plaintiffs and Defendant American Honda Motor Company, Inc. ("AHM") have reached a proposed settlement (the "Proposed Settlement") to resolve class allegations regarding an alleged defect in the "Infotainment System" contained in 2018 and 2019 Honda Odyssey vehicles (Elite, EX, EX-L, EX-LNR and Touring trims), 2019 Honda Pilot vehicles (2EX-LNR, 2TRG, 2TRG 7P, 4Elite, 4EX, 4EX-L, 4EX-LNR, 4TRG and 4TRG 7P trims), and a 2019 Honda Passport (2EX-L, 2TRG, 4Elite, 4EX-L, or 4TRG trims) ("Settlement Class Vehicles").   This Settlement is the result of prolonged arm's length negotiations during numerous mediation sessions between February 2020 and September 2020 with the Honorable Dickran M. Tevrizian (ret.).   As a result of documents produced in *Banh v. American Honda Motor Co. Inc*., Case No. 2:19-cv-05984 (C.D. Cal.), a related lawsuit involving similar technology, that contain technical information about the Settlement Class Vehicles in this case, as well as confirmatory discovery specifically relating to the Settlement Class Vehicles, Plaintiffs understand that Honda has worked to address the problems Plaintiffs identified in the Settlement Class Vehicles. For example, AHM has issued three recalls and four Service Bulletins applicable to the Infotainment Systems at issue in this case as well as the Infotainment Systems at issue in the *Banh* litigation.   AHM has provided numerous software updates that are wirelessly delivered to many of the Settlement Class Vehicles (referred to as "Over-the-Air" or OTA updates) and also are available for installation at dealerships for those Settlement Class Vehicles not configured to receive such updates remotely.

The Proposed Settlement builds upon this work and provides substantial relief to the proposed Settlement Class.   It provides for an independent engineering expert to further validate the efficacy of the countermeasures that AHM has developed; facilitates the further implementation of these countermeasures in the field; provides a two-year/24,000 mile warranty extension covering these issues; obligates AHM to work in good faith to continue to improve Infotainment System performance in all Settlement Class Vehicles at least through the extended warranty period; creates a Dealership Assistance and Assessment

Program (the "DAAP") that provides additional training to AHM's authorized dealerships to help them implement additional service strategies; creates the Infotainment System Online Resource to, *inter alia*, inform Settlement Class Members about the countermeasures now available and the symptoms they are designed to address and permit Settlement Class Members to report directly to AHM any new Infotainment System symptoms or problems they may experience; provides a mechanism to compensate qualifying Settlement Class Members for the inconvenience and hassle they may have experienced because of relevant Infotainment System problems, including either two free years of HondaLink Security Service (for Elite and Touring trim vehicles) or one free year of SiriusXM Select service (for EX and EX-L trim vehicles); and provides a mechanism for qualifying Settlement Class Members to receive full reimbursement for eligible out-of-pocket expenses. Further, the Proposed Settlement provides a mechanism for AHM to separately pay reasonable attorneys' fees and costs and Plaintiff service awards so that these payments will not dilute any of the benefits available to the Class.

As described in detail below, the Proposed Settlement is fair, adequate and reasonable and provides direct and significant benefits to the Settlement Class, while avoiding the risks and delay associated with further litigation. Accordingly, Plaintiffs request that the Court grant this motion for preliminary approval, approve the form and manner of notice to the Settlement Class, and set the Final Approval Hearing.

## II.    CASE HISTORY

The alleged defect at issue in this case relates to what is known in the automobile industry as an "Infotainment System." All of the vehicles in the proposed Settlement Class contain an Infotainment System consisting of one or more LCD screens: (1) a primary touch screen located in the center console; and, in certain trim levels, (2) a screen located above the steering wheel that functions as a digital speedometer/odometer, and displays other

information as well (e.g., remaining fuel, current song, turn-by-turn directions).[1] The screen(s) serve as a conduit or gateway between the user and certain of the vehicle's safety, navigation, communications, entertainment, and climate control features. Among other operations, the vehicles' Infotainment System allows the vehicle owner to operate the audio systems in the vehicle (including the radio); use the GPS navigation technology; control the vehicles' climate systems; view the backup camera and CabinWatch rear seat monitor;[2] and operate a Bluetooth-enabled mobile telephone or other device (including Apple devices through the CarPlay application).[3]

Plaintiffs allege that the Settlement Class Vehicle Infotainment Systems suffered from software and hardware defects that caused the systems to freeze, crash, fail to boot up, fail to shut down, or suffer intermittent failures to connect to peripheral devices such as phones. *See* Second Amended Complaint, Dkt. 50 ("SAC"). Plaintiffs initiated this action on March 22, 2019, contending that AHM should have disclosed the defects prior to sale or remedied the defects under warranty within a reasonable period of time after sale. Plaintiffs brought claims for violation of relevant state consumer protection acts and for breach of express and implied warranties. A second related case alleging similar infotainment defect claims against Honda for certain 2019-2020 Acura vehicles was filed on July 11, 2019. *See Banh v. American Honda Motor Co*., C.D. Cal. No. 2:19-cv-05984. The Infotainment Systems utilized in the Settlement Class Vehicles (2018-2019 Odyssey,

---

[1] Certain upgraded Odyssey and Pilot models have a third screen, marketed as the "Rear Entertainment System" (or "RES"), that folds down from the top of the vehicle's cabin and can be used by back seat passengers via a Honda-provided remote control to watch DVDs and interact with various applications.

[2] The CabinWatch rear seat monitor is a feature available in certain Odyssey models (or "trims") that allows front seat occupants to monitor the 2nd and 3rd row passengers on the primary LCD screen via a ceiling-mounted camera.

[3] Apple CarPlay is a software application compatible with many manufacturers' infotainment systems, including the infotainment systems found in the Settlement Class Vehicles. It enables an infotainment system to act as a controller for Apple devices, and provides access to other Apple-specific applications (including music, messaging, maps, and podcasts, among others), as well as other third-party applications.

2019 Pilot, and 2019 Passport) and the 2019-2020 Acura RDX vehicles at issue in the *Banh* case are similar, though they are not identical. Because of the schedule adopted by the *Banh* Court, the parties in *Banh* completed the discovery process prior to reaching the settlement to resolve both the *Conti* and *Banh* cases. Many of the technical documents produced in the *Banh* litigation included documents and information about the Infotainment Systems in 2018-2019 Honda Odyssey, 2019 Honda Pilot, and 2019 Honda Passport vehicles, as these Infotainment Systems are similar to the Infotainment Systems in 2019 and 2020 Acura RDX vehicles at issue in the *Banh* litigation. Declaration of Sean R. Matt in Support of Plaintiffs' Motion for Preliminary Approval ("Matt Decl."), ¶¶ 3-10.

For example, an Acura Service Bulletin covered by the *Banh* settlement, 20-031 (popping/crackling from the speakers; blank display, no sound from the audio system, network loss message), addresses the same issues as Service Bulletins relevant to *Conti*. *See* Honda Service Bulletins 20-049 (popping or crackling from the speakers, no sound from the audio system, network loss message and/or display issues); and 20-058 (popping or crackling from the speakers, no sound from the audio system, network loss message and/or display issues). Plaintiffs' counsel reviewed thousands of pages of documents and questioned multiple deponents (including an American Honda Motor Company Fed. R. Civ. P. 30(b)(6) witness in May 2020 and two Honda of America Manufacturing engineers in June 2020), regarding this and other similar issues that overlapped the *Banh* and *Conti* litigation. *See also* Acura Service Bulletin 20-001 (addressing problems with affected vehicles' gauge control modules) and Honda Recall Notice 20V-439 (addressing problems with affected vehicles' gauge control modules). *Id.*, ¶ 9.

On August 2, 2019, AHM moved to dismiss Plaintiffs' First Amended Class Action Complaint. On October 17, 2019, the Court granted the motion in part and denied it in part (Dkt. No. 49), after which Plaintiffs filed the SAC (Dkt. No. 50). A similar motion was granted in part and denied in part by Judge Klausner in *Banh* on January 17, 2019. *See* C.D. Cal No. 2:19-cv-05984, Dkt. No. 60. AHM answered the SAC, denying all material allegations and interposing affirmative defenses.

In the *Banh* case, AHM and other Honda entities produced more than 20,000 pages of documents, comprised of emails, company procedures, technical engineering documents, warranty data, and communications with dealerships and certain proposed class members. Subpoenas were issued to AHM corporate affiliates Honda R&D Americas, Inc. and Honda of America Manufacturing, Inc., and to companies that supplied parts or technology used in the Infotainment Systems.   Class Counsel took depositions of relevant AHM employees and those of its related companies, including multiple 30(b)(6) depositions.  Class Counsel also engaged a liability expert (engineer Steve Loudon) and damage experts (marketing expert Steve Gaskin and economist Colin Weir), each of whom issued a report and had their depositions taken.  Plaintiffs also analyzed the expert reports of two experts retained by AHM and took their depositions.  Fact and expert discovery in *Banh* concluded before the Parties agreed to this proposed Settlement.  Matt Decl., ¶¶ 4-7.

On April 9, 2020, the *Banh* plaintiffs moved for class certification, which was granted in part and denied in part by Judge Klausner on July 28, 2020.  *See* C.D. Cal No. 2:19-cv-05984 Dkt. No. 154.  Judge Klausner certified the following Class: "All persons or entities who purchased a new Class Car [*i.e.*, a new 2019 or 2020 Acura RDX vehicle] from an authorized Acura dealer in California."  *Id*.  On August 11, 2020, AHM filed a Rule 23(f) Petition for Leave to Appeal with the Ninth Circuit Court of Appeals, which remains pending but has been stayed pending approval of the Proposed Settlement in *Banh.*

On February 25, March 24, September 3, and October 1, 2020, the parties in both actions conducted formal private mediation sessions with the Honorable Dickran M. Tevrizian (ret.), and several additional informal mediation sessions were held with Judge Tevrizian.  While only limited progress was made in the February and March sessions, mediation efforts intensified after the Parties completed fact and expert discovery in Banh and the *Banh C*ourt issued its orders on the salient motions to certify a class, exclude witnesses, and compel arbitration.  The mediation was successful. The Parties signed a Memorandum of Understanding in October and, later, a Settlement Agreement.  *See*

Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.) in Support of Motion for Preliminary Approval ("Tevrizian Decl."), attached as Exhibit 1 to the Matt Decl.

### III.   TERMS OF THE SETTLEMENT

The Settlement Class generally includes all current owners and lessees of the Settlement Class Vehicles who reside in, and who purchased or leased their vehicles (other than for purposes of resale or distribution) in the United States, Puerto Rico, and all United States territories, as well as former owners and lessees of Settlement Class Vehicles who submit a Claim.  AHM will pay for and provide Class Notice by first class mail (and electronic mail to Settlement Class Members, where possible).  Agreement, ¶¶ 4.1-4.12.

The major Settlement benefits are as follows:

1.    *Independent Review of Countermeasures*.  The Parties retained an independent engineering expert to validate that the countermeasures that AHM has implemented are robust efficacious.  Agreement, ¶ 7.6.  This process has begun and remains ongoing.

2.    *Extended Warranty*.  AHM will extend the Settlement Class Vehicles' Limited Warranty to cover qualified Infotainment System repairs. The extension will add an additional two (2) years or 24,000 miles to the original three (3) years or 36,000 miles Limited Warranty (thereby providing warranty coverage for covered repairs for five (5) years or 60,000 miles from the original purchase or lease date).  Agreement, ¶¶ 3.8-3.15.

3.    *Ongoing Software Updates*.  AHM will, in good faith, support the Settlement Class Vehicles by continuing to research, develop, and offer software updates to address identified Infotainment System problems for a period of no less than the Settlement Class Vehicles' Extended Warranty period.  Agreement, ¶¶ 3.11.

4.    *The Dealership Assistance and Assessment Program ("DAAP")*.  Through the DAAP, AHM will direct its authorized dealerships and their technicians to undergo additional training so they can implement additional service strategies to resolve problems. Technicians will be trained to make software and/or hardware repairs for known Infotainment System problems even if a specific symptom described by the Settlement Class Member does not manifest at the time of the dealership visit.  Agreement, ¶¶ 3.6-3.7.

This is notable because Plaintiffs alleged that Honda dealerships were frequently unable to replicate the often-intermittent Infotainment System issues.  As a result, the Plaintiffs were often told there was nothing the dealership could do to address the issues.  Given the uneven approaches to addressing Infotainment System problems (including Plaintiffs previously being turned away by dealers), the DAAP provides a significant benefit.

5.    *The Infotainment System Online Resource*.  AHM will create, maintain, and update for at least 24 months after the Effective Date an Infotainment System Online Resource for Settlement Class Members that will, among other things (a) include a list of potential Infotainment System-related issues, that, when selected, will open a drop-down menu to offer potential solutions to the problem such as updating the vehicle's or phone's software or presenting the vehicle at a dealership for an assessment or repair; (b) provide a means by which Settlement Class Members can review information related to the Infotainment Systems in their vehicles; (c) provide a means by which Settlement Class Members can report to AHM issues or symptoms they believe to be attributable to the Infotainment System; and (d) post relevant recall notices, Service Bulletins, and over-the-air (OTA) updates relating to the Infotainment System.  Agreement, ¶¶ 3.2-3.5.

6.    *The Delayed Warranty Repair Service Benefit*.  Settlement Class Members who, prior to the Notice Date, made more than one visit to an authorized Honda dealership for Infotainment System issues that were not effectively repaired will be eligible to receive, depending on the trim of their vehicle, either two free years of HondaLink Security Service (Elite and Touring trim vehicles), which is a $178 value ($89 per year),[4] or one free year of SiriusXM Select service (EX and EX-L trim vehicles), a $204 value ($16.99 per month), provided that the visits appear in AHM's warranty database and the second visit was not

---

[4] The HondaLink Security Service app allows vehicle owners to connect to their vehicle from their smartphone.  Some of the features included are "Automatic Collision Notification," in which a live agent will reach out to check on the driver and request that help be sent in the event of a collision; "Emergency Call Function," in which a live agent will request that help be sent in the event of an emergency; and "Enhanced Roadside Assistance," which allows the driver to easily summon towing and repair services using a button in their vehicle.  *See* https://hondalink.honda.com/#/.

the result of a recall or product update.[5]  If a Settlement Class Member already subscribes to HondaLink or SiriusXM Select service, he or she can tack on service for an additional time period from when their paid-for service expires.  Agreement, ¶¶ 3.16-3.17, 3.20-3.22.

7.     *The Related Warranty Repair Service Benefit*.  Settlement Class Members who, on or before the Notice Date, made more than one service visit for a single Infotainment System issue not resolved during the initial warranty service visit (provided both service visits appear in AHM's warranty database and relate to the same Infotainment System issue and the second visit was not the result of a recall or product update), will be automatically eligible to receive, depending on the trim of their vehicle, either two free years of HondaLink Security Service (Elite and Touring trim vehicles), which is a $178 value ($89 per year), or one free year of SiriusXM Select service (EX and EX-L trim vehicles), a $204 value ($16.99 per month).  Those Class Members who qualify will not have to file a claim form to obtain this benefit.  Agreement, ¶¶ 3.18-3.22.

8.     *Compensation for Certain Costs Related to Delayed Warranty Claims*.  Claim Forms can be filed seeking reimbursement for (a) qualifying transportation costs incurred if the Settlement Class Member returned a Settlement Class Vehicle more than once to a dealership to obtain a repair for Infotainment Systems Symptoms; and/or (b) qualifying battery recharging costs incurred as a result of a car battery that drained because the Infotainment System did not turn off when it should have.  Agreement, ¶¶ 3.25-3.26.

9.     *Attorneys' Fees and Costs*.  AHM will pay Class Counsel's reasonable attorneys' fees and expense reimbursements in an amount consistent with the terms of the Settlement Agreement and as approved by the Court.  Agreement, ¶¶ 5.3-5.7.  AHM's payment of attorneys' fees and expense reimbursement will not impact or diminish any of the Settlement benefits available to the Class.

In exchange for these benefits, all Settlement Class members who do not opt-out of the Settlement Class will be subject to a release of their claims against AHM related to

---

[5] AHM's warranty database shall constitute complete and valid evidence of warranty service visits having been made but shall not be the exclusive evidence of a Delayed Warranty Repair Visit.

Infotainment Systems and Infotainment System Symptoms, as asserted, or as could have been asserted, in the litigation or any other proceedings, and that are based on the same factual predicate asserted in the operative complaint.  Agreement, ¶¶ 6.1-6.6.

## IV.   RELEVANT LEGAL STANDARDS

The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) (the "*Manual*") describes a three-step process to approve a class settlement: (i) preliminary approval; (ii) dissemination of the notice to class members, providing for an objection period; and (iii) a formal fairness and final settlement approval hearing. *Id.* at §21.63. The preliminary approval stage is an "initial evaluation" of the fairness of the settlement. *Id.* at § 21.632. This motion invokes the first two steps.  Preliminary approval should be granted "[i]f the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Glover v. Laguna Beach*, 2018 WL 6131601, at *2 (C.D. Cal. July 18, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007)).[6]

Rule 23(e)(2) directs courts to consider a number of factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account the costs, risks, and delay, the effectiveness of distributing relief to the class, the terms of any proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative

---

[6] Evaluating fairness is not a trial, and the court does not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Rather, the Court's "only role" is to ensure that the settlement is "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  As a matter of "express public policy," federal courts favor settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS ("*Newberg*") §13:1 (5th ed.).

to each other.  These factors are not intended "to displace any factor [previously utilized by district courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23, 2018 Amendment Notes to Section (e)(2).

Similar to the Rule 23(e)(2) factors, the Ninth Circuit considers the following factors in determining whether a settlement is fair, reasonable, and adequate: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  The importance of any particular factor depends on the nature of the claims, the types of relief sought, "and the unique facts and circumstances presented by each individual case," and one factor alone may prove determinative. *Officers for Justice*, 688 F.2d at 625; *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## V.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Both the Rule 23(e)(2)(A)-(D) and Ninth Circuit factors for evaluating the fairness of a settlement weigh in favor of preliminary approval here.

### A.   Class Representatives and Class Counsel have zealously represented the Class.

The Class Representatives and Class Counsel have prosecuted this and the related *Banh* action with vigor and dedication and developed substantial evidence to partially win a highly-contested class certification motion in *Banh*.  *See* Fed. R. Civ. P. 23(e)(2)(A).  This was accomplished despite an aggressive case schedule in *Banh* and unprecedented circumstances created by the COVID-19 pandemic.  Class Counsel and plaintiffs worked through extraordinary challenges posed by the public health emergency to deliver the Proposed Settlement.  The *Conti* Plaintiffs assisted Class Counsel with fact development and discovery and regularly communicated with counsel to remain up to date on the litigation the settlement process, and the status of the Infotainment Systems in their vehicles

and the impact of the software updates provided by AHM.  Matt Decl., ¶ 15.

Given the similarities of the Infotainments Systems in the Settlement Class Vehicles and those in *Banh*, Class Counsel's analysis of the vast volume of discovery material in *Banh* establishes they have gathered, reviewed, and assessed sufficient information to enter into a reasoned and well-informed settlement here.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("significant investigation, discovery and research" provides parties with sufficient information to make informed settlement decisions); *Byrne v. Santa Barbara Hosp. Serv., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) ("[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement") (citation omitted).  Both Class Counsel and the Plaintiffs have adequately represented the interests of the Class.

**B.    The Proposed Settlement is the product of good faith, informed, and arm's-length negotiations, and it is fair.**

The Proposed Settlement is the product of informed, non-collusive, arm's length negotiations facilitated by an experienced mediator.  *See* Fed. R. Civ. P. 23(e)(2)(B).  Negotiations were difficult and protracted.   Judge Tevrizian played a crucial role in helping the parties bridge their differences and evaluate the strengths and weaknesses of their respective positions.  *See* Tevrizian Decl.  Three separate formal mediations were held, in addition to numerous informal communications.  Matt Decl., ¶ 11.  On October 1, 2020, the Parties reached agreement on material terms to settle *Banh* and executed a Memorandum of Understanding shortly thereafter.   The parties then spent months finalizing the release, settlement agreement, and related documents.   After the parties finalized the *Banh* settlement, plaintiffs' counsel and AHM counsel conformed the *Banh* settlement into this written settlement, using the *Banh* settlement agreement as the point of departure.  (During the *Banh* negotiations, it was generally understood that the same material terms of whatever settlement was reached in *Banh* would apply in *Conti* given the similarity of the technology in the vehicles.)  Matt Decl., ¶¶ 11-13.  The adversarial nature of the litigation and Judge Tevrizian's role weigh in favor of preliminary approval.

*Rosales v. El Rancho Farms*, 2015 WL 4460918, at *16 (E.D. Cal. July 21, 2015) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

**C.    The Proposed Settlement provides significant benefits to settle claims.**

The Proposed Settlement provides substantial relief, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms of the proposed award of attorney's fees.   *See* Fed. R. Civ. P. 23(e)(2)(C).   Resolving these claims through a single class action is superior to potentially thousands of individual suits. "From either a judicial or litigant viewpoint, there is no advantage in individual members . . . prosecut[ing] . . . separate actions.   There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."   *Hanlon*, 150 F.3d at 1023.   Indeed, the terms of the Proposed Settlement demonstrate the advantages of a collective bargaining resolution process.

**D.    The Proposed Settlement mitigates the risks, expenses, and delays the Class would bear with continued litigation.**

The Proposed Settlement secures significant benefits in the face of the inherent litigation uncertainties.   *See Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("risks and certainty" of "continued litigation are factors for the Court to balance in determining" fairness) (citing *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012)).   While Class Counsel believe in the strength of the case, they recognize there are uncertainties in litigation, trial, and appeal, making compromise in exchange for certain and timely provision to the Settlement Class of the significant benefits described herein a reasonable outcome.   *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").   The significant benefits of the Proposed Settlement are based on the Parties' recognition of the merits of Plaintiffs' case compared to AHM's defenses, the risks and uncertainty associated with

continued litigation, and the possibility of appeals.[7]  This Settlement is also informed by the extensive litigation, factual and expert development, and judicial orders from the *Banh* case.

It is highly uncertain whether the Settlement Class would be able to obtain a better outcome through continued litigation and trial. It is questionable whether lessees in particular would be entitled to any relief given the *Banh* Court's arbitration ruling.  *See* Matt Decl., ¶ 7.  There is a risk that the Settlement Class would receive less or nothing at all at trial, and, even if Plaintiffs prevailed at trial, potential recovery could come years in the future.  That "risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" strongly favors approval.  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (citing *In re Mego*, 213 F.3d at 458).

### 1.      The Proposed Settlement allows Class Members to easily obtain relief.

The Settlement provides automatic and significant benefits for the Settlement Class Members, who will all benefit from the warranty extension, the DAAP, the Infotainment System Online Resource, and AHM's contractual commitment to continue to work in good faith to improve the performance of the Infotainment System and to support the Class Vehicles through continued software updates for the duration of the extended warranty period.  Additionally, those Settlement Class Members who appear in AHM's warranty database as having made more than one visit for a single Infotainment System issue not resolved during the initial warranty service visit (as long as both service visits relate to the same Infotainment System issue ("Related Service Visits")) and so long as the second visit was not the result of a recall or product update) will *automatically* receive either two free years of HondaLink Security Service (Elite and Touring trim vehicles) or one free year of SiriusXM Select service (EX and EX-L trim vehicles).  Settlement Class Members who appear in AHM's warranty database as having made more than one visit for Infotainment System issues not resolved during the initial warranty service visit (and that do not qualify

---

[7]      Given Class Counsel's "experience and familiarity with the facts, their recommendation that the settlement be approved is entitled to significant weight." *Rosales*, 2015 WL 4460918, at *15 (citing *Nat'l Rural Telecomms.*, 221 F.R.D. at 528; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013)).

as Related Service Visits), not including visits made for recalls or product updates, may file a claim for this benefit. Settlement Class Members who do not appear in AHM's warranty database may also file a claim and submit supporting documentation if they believe they otherwise qualify for this benefit. And reimbursement is available through a claims process for those Class Members who experienced certain out-of-pocket costs. The universal benefits available to all Settlement Class Members, combined with a simple claim process, allows Settlement Class Members to benefit from the settlement without delay.

> **2.** **Counsel will seek reasonable attorneys' fees and costs, which will be paid separately by AHM and not dilute any recovery to Class Members.**

AHM has agreed to pay reasonable attorneys' fees and expense reimbursement to Class Counsel as approved by the Court, and as consistent with the provisions of the Settlement Agreement. Agreement, ¶¶ 5.3-5.7. Importantly, the parties did not begin negotiating attorneys' fees, expense reimbursement, or service awards[8] for the Plaintiffs until after all material settlement benefits for the Class were negotiated. Matt Decl., ¶ 11. Waiting until after the Settlement terms are nailed down before discussing fees is a practice routinely approved by courts as in the Class' best interest. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig,*, 2016 WL 6248426, at *23 (N.D. Cal. Oct. 25, 2016). While the parties will continue to seek agreement on attorneys' fees, expense reimbursement, and service awards, if they cannot reach an agreement, they will present the dispute to the Court for resolution. Agreement, ¶ 5.3. Either the agreed amounts or the maximum amounts sought will be included in the notices and available on the settlement website. Matt Decl., ¶ 14.

## E.   The Proposed Settlement treats all Class Members equitably.

The Proposed Settlement fairly and equitably allocates benefits among Class Members without any unwarranted preferential treatment of class representatives or

---

[8] Service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

segments of the Class.  *See* Fed. R. Civ. P. 23(e)(2)(D).  As noted above, each Class Member will receive automatic benefits under the Settlement and have the opportunity to file claims for additional relief, as individual circumstances merit.

## VI.    CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES

### A.    The Settlement Class meets the requirements of Rule 23(a).

The Court should determine that the proposed settlement class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, § 21.632.

#### 1.    The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable, and numerosity is generally satisfied when the class exceeds 40 members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  AHM's records indicate that there were approximately 450,000 Class Vehicles sold or leased nationwide. The large size of the Settlement Class and its geographic dispersal across the United States also renders joinder impracticable.  *See Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006).  Numerosity is satisfied.

#### 2.    There are common questions of law and fact.

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'"  *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).  Courts routinely find commonality where, as here, the class claims arise from a uniform course of conduct.  *See, e.g.*, *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014).  The claims here are rooted in common questions of fact as to whether the Infotainment Systems encounter serious problems, and whether AHM

knew about these defects prior to sale. Answering these questions generates common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *See Dukes*, 564 U.S. at 350. Thus, commonality is satisfied.

### 3. Plaintiffs' claims are typical of the Settlement Class Members' claims.

Rule 23(a)(3)'s typicality requirement counsels that "'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is thus satisfied where a plaintiff suffered a similar injury, and other class members were injured by the same course of conduct. *See Parsons*, 754 F.3d at 685; *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012). Plaintiffs' claims and injuries are typical of the claims of and injuries suffered by the Class. Plaintiffs and members of the Class alike all purchased or leased vehicles with the same Infotainment System and suffered the same types of injuries. Plaintiffs' interest in obtaining a fair, reasonable, and adequate settlement are identical to the interests of the Settlement Class members. Accordingly, Plaintiffs have established the typicality element.

### 4. Plaintiffs and Class Counsel have protected, and will continue to protect, the interests of the Settlement Class.

Rule 23(a)(4)'s adequacy requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is rooted in due-process concerns — 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020). Adequacy entails a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020). Both prongs are satisfied here.

Plaintiffs have no interests that conflict with the Settlement Class Members and will continue to vigorously protect Class interests, as they have throughout this litigation. They understand their duties as class representatives, have agreed to consider the interests of absent Class Members, and have actively participated in this litigation and will continue to do so. *See, e.g.*, *Loritz v. Exide Tech.*, 2015 WL 6790247, at *6 (C.D. Cal. July 21, 2015) ("All that is necessary is a 'rudimentary understanding of the present action and … a demonstrated willingness to assist counsel in the prosecution of the litigation.'"). As to counsel, since the beginning of this lawsuit, proposed Class Counsel have devoted more than a thousand hours and hundreds-of-thousands of dollars to identify, investigate, and litigate the claims of Plaintiffs and the Settlement Class (and will continue to do so). These efforts led to the Proposed Settlement that provides significant and meaningful benefits to the Settlement Class. And proposed Class Counsel have deep experience in representing Plaintiffs and classes in complex litigation, including automobile class actions.[9]

## B.     The Settlement Class meets the requirements of Rule 23(b)(3).

Under Rule 23(b)(3), a class may be certified if a court finds that, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." When "[c]onfronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial." *Amchem,* 521 U.S. at 620.

### 1.     Common issues of law and fact predominate.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating,

---

[9] *See, e.g.,* https://www.hbsslaw.com/attorneys/steve-berman; https://www.hbsslaw.com/attorneys/sean-matt; https://www.gs-legal.com/jefferey-s-goldenberg.

individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate," certification is proper "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual[s].'"  *Id.* (citation omitted).  "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiffs contend that the key evidence necessary to establish their claims is common to all members of the Settlement Class, who must prove, among other things, that the Settlement Class Vehicles have a common defect and that AHM's conduct was uniformly wrong.  The evidence changes little if there are 100 Class Members or thousands: either way, Plaintiffs would, for instance, present the *same* evidence that AHM was aware of the defect and concealed it, and that AHM caused economic loss to Plaintiffs and the Class. These common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045.  Courts often find that such issues predominate in auto defect class actions.  *See, e.g.*, *Wolin*, 617 F.3d at 1173; *Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 532-34 (C.D. Cal. 2012); *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 596-97 (C.D. Cal. 2008); *Chamberlan v. Ford Motor Co*., 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), *petition denied*, 402 F.3d 952 (9th Cir. 2005); *Rosen v. J.M. Auto Inc*., 270 F.R.D. 675, 681-82 (S.D. Fla. 2009); *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 989 (11th Cir. 2016).  Here, common issues of law and fact predominate.

## 2. Class treatment is superior to other available methods.

"The superiority inquiry . . . requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  There is no advantage here in having individual members control the prosecution of separate actions (even if some wanted to).  *Id.*  The Proposed Settlement demonstrates the advantages of a collective bargaining and resolution process.  The efforts and funds

required to marshal the evidence necessary to establish liability against AHM would discourage Settlement Class Members from pursuing individual litigation.  *See Wolin*, 617 F.3d at 1175; *Amchem*, 521 U.S. at 617.  The superiority of proceeding via the class action mechanism is demonstrated by the results of the Settlement, which, if approved, will provide the Settlement Class with meaningful benefits.  The class action device provides the superior means to effectively and efficiently resolve this controversy.

## VII.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e)(1)(B).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C., v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice program, which consists of, among other things, a dedicated website and a robust Long Form Notice that will be sent directly by mail and email, exceeds these standards.

AHM, as Settlement Administrator, will, among other things, mail or arrange to be mailed by first-class mail, postage prepaid, the Notice and Claim Forms to each person on the Class List; email to each person on the Class List the Notice and Claim Forms if email addresses are available and requisite consent has been obtained; develop processes and procedures for handling deficient Claim Forms and returned mail, including use of the National Change of Address database made available by the U.S. Postal Service; prepare and submit to the Court an Opt-Out list of the Settlement Class Members requesting exclusion, as well as a list of all persons who submitted objections to the settlement; maintain a mailing address to which Settlement Class Members can send requests for exclusion, objections, Claim Forms and other correspondence; and  create and maintain the Settlement Website.  The Notice will clearly identify the Infotainment Systems that are the

subject of this Settlement, explain the relevant alleged Infotainment System issues or symptoms, describe the benefits of the Settlement and how to obtain them, and direct Settlement Class Members to the Settlement Website for more information.  AHM will also post on the Settlement Website a toll-free telephone number that will be staffed during normal business hours with live operators who can answer questions about and provide information to Settlement Class Members regarding the Settlement, as well as provide the Notices and Claim Forms upon request.  And, in compliance with the attorney general notification provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, notice of this proposed Settlement will be sent to the Attorney General of the United States and the attorneys general of each state in which a Settlement Class Member resides.

## VIII. CONCLUSION

Plaintiffs respectfully request that the Court grant the motion and preliminarily approve the Settlement.  The Parties respectfully request that the Court set a schedule for key dates including a date for a final approval hearing and propose the following:

| Date | Event |
|---|---|
| June 14, 1:30 p.m. | Preliminary Approval Hearing |
| No later than 120 days after entry of preliminary approval | Class Notice Disseminated ("Notice Date") |
| No later than 30 days after Notice Date | Motions for Approval of Attorneys' Fees and Expenses and Service Awards filed |
| No later than 28 days before Fairness Hearing | Motion for Final Approval filed |
| 45 days after Notice Date | Objection and Opt-Out Deadline |
| No later than 14 days before Fairness Hearing | Reply Memoranda in Support of Final Approval and Fee Application filed |
| No earlier than 90 days after Notice Date | Settlement Fairness Hearing |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  May 14, 2021                              HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Sean R. Matt*

Steve W. Berman (*pro hac vice*)
Sean R. Matt *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE