1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

Case No.: CV 19-02160-CJC(GJSx)

12

**LESLEY CONTI** *et al.*, **on behalf of herself and all others similarly situated,**

13
14

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 71]**

**Plaintiffs,**

15
16

**v.**

17

**AMERICAN HONDA MOTOR CO., INC.,**

18
19

**Defendant.**

20
21
22
23
24

## I. INTRODUCTION & BACKGROUND

25
26
27

Plaintiffs bring this putative class action against Defendant American Honda

28

Motor Co., Inc., alleging a variety of claims related to purported defects in the

-1-

"infotainment" systems of their Honda Odyssey, Honda Pilot, and Honda Passport vehicles.  (Dkt. 50 [Second Amended Complaint, hereinafter "SAC"].)

The infotainment system consists of multiple LCD screens and at least one touch screen.  (*Id.* ¶ 3.)  It controls the vehicles' safety, navigation, communications, entertainment, and climate control features.  (*Id.* ¶ 5.)  Plaintiffs generally allege that their vehicles' infotainment systems frequently freeze and crash.  (*Id.* ¶¶ 6–7.)  Because the infotainment system controls so many features, these malfunctions cause "a wide range of problems."  (*Id.* ¶ 308.)  Plaintiffs allege that Defendant knew about these defects before the vehicles were sold and fraudulently concealed or misrepresented these defects.  (*Id.* ¶¶ 8–10.)  Plaintiffs further allege that Defendant has failed to remedy the defects as required by its written warranties.  (*Id.*)

Plaintiffs are individuals who purchased or leased a 2018 or 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle (the "class vehicles").  (*Id.* ¶ 1.)  Plaintiffs made their purchases in nineteen different states: Alabama, Arizona, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Kentucky, Maryland, Massachusetts, Missouri, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and Washington. (*See generally id.*)  Plaintiffs bring their claims on behalf of a nationwide class and nineteen state-specific subclasses, representing the nineteen states where Plaintiffs purchased their vehicles.  (*Id.* ¶ 328.)  The nationwide class asserts claims for breach of both express warranty and implied warranty under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*  (*Id.* ¶¶ 337–71.)  The state subclasses generally assert claims for (1) breach of express warranty, (2) breach of implied warranty, and (3) violations of a state consumer protection statute.  (*See id.* ¶¶ 372–1006.)

Plaintiffs filed this action on March 22, 2019.  (Dkt. 1.)  Defendant moved to dismiss Plaintiffs' original complaint and Plaintiffs filed a first amended complaint in

response.  (Dkt. 7.)  Defendant then filed a motion to dismiss Plaintiffs' first amended complaint, which the Court granted in part.  (Dkt. 49.)  Plaintiffs filed the operative Second Amended Complaint on November 4, 2019.  (SAC.)

On July 11, 2019, a separate, related case concerning infotainment system defects in Honda and Acura vehicles was filed before Judge Klausner.  *See Banh v. American Honda Motor Co*., C.D. Cal. No. 2:19-cv-05984.  While discovery was ongoing in both cases, the parties conducted formal mediation sessions before the Honorable Dickran M. Tevrizian (Ret.) on February 25, March 24, September 3, and October 1, 2020.  (Dkt. 71-1 [Declaration of Sean Matt, hereinafter "Matt Decl."] ¶ 11; Matt Decl. Ex. A [Declaration of Hon. Dickran Tevrizian (Ret.), hereinafter "Tevrizian Decl."] ¶¶ 5–6.)  In October, following the conclusion of discovery in *Banh*, the parties entered into a settlement agreement in this case (the "Settlement").  (*Id.*; Matt Decl. Ex. 2 [Settlement].)  The Settlement requires Defendant to provide Plaintiffs with several benefits including a warranty extension, an Infotainment System Online Resource, the Dealership Assistance and Assessment Program, which will train Defendant's technicians to make repairs for known defects, and Defendant's contractual commitment to work in good faith to improve the performance of the infotainment system and support the class vehicles throughout the extended warranty period.  (*See* Settlement ¶¶ 3.2–3.28.)  Now before the Court is Plaintiffs' unopposed motion for preliminary approval of the Settlement.  (Dkt. 71 [hereinafter, "Mot."].)  For the following reasons, Plaintiffs' motion is **GRANTED**.[1]

//

//

//

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 14, 2021 at 1:30 p.m. is hereby vacated and off calendar.

## II.  DISCUSSION

To determine whether preliminary approval of a settlement agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorneys' fees and incentive awards requested, (4) the request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

### A.      Class Certification Requirements

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek provisional certification of a class for settlement purposes only.  The proposed settlement class is defined to include "all persons and entities nationwide that purchased or leased a model year 2018 Honda Odyssey, 2019 Honda Odyssey, 2019 Honda Pilot, or 2019 Honda Passport vehicle."  (SAC ¶ 328.)[2]  When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three authorized "types" of classes.  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual

---

[2] Plaintiffs' SAC also included 19 subclasses for each state where Plaintiffs purchased their vehicles.

members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.      Rule 23(a) Requirements

#### a.      Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012).  Here, while the exact number of class members is unknown to the parties, numerosity is satisfied because Defendant sold or leased approximately 450,000 class vehicles across the United States.  (Mot. at 15.)

#### b.      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of class-wide resolution.  *Id*. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

Plaintiffs allege that Defendant's class vehicles contain defective infotainment systems and that Defendant failed to both disclose the defect to consumers and properly remedy the defect.  (*See* SAC ¶¶ 3–10.)  Resolution of the class's claims therefore presents common questions including (1) whether Defendant's infotainment systems were defective, (2) whether Defendant knew about the defect, (3) whether Defendant concealed the defect, and (4) whether the defect was covered by Defendant's express or implied warranties.  (*See id.* ¶ 332.)  Those questions are central to each class member's claims and their resolution will help determine, "in one stroke," whether Defendant violated the law.  *See Falcon*, 457 U.S. at 157.

### c.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiffs allege that, like every other class member, they purchased or leased class vehicles with defective infotainment systems.  (*See* SAC ¶¶ 14–291.)  Accordingly, Plaintiffs' claims are "reasonably coextensive" with those of the class.  *See Hanlon*, 150 F.3d at 1020.

### d.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiffs, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class.  *Staton*, 327 F.3d at 957.  The concern in the context of

a class action settlement is that there is no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the class. *Id*. at 958 n.12.

There is no evidence of a conflict of interest between Plaintiffs and the class. Plaintiffs' claims are identical to those of the class and they have every incentive to vigorously pursue those claims. Nor is there any evidence that Plaintiffs' counsel will not adequately represent or protect the interests of the class. Plaintiffs' attorneys, Steve Berman, Sean Matt, and Christopher Pitoun of Hagens Berman Sobol Shapiro LLP and Jeffery Goldenberg of Goldenberg Schneider, LPA, have extensive experience litigating complex matters, including automobile class actions. (*See* Mot. at 17.) The record indicates that counsel have represented the class capably and adequately. For example, counsel reviewed thousands of documents, including Defendant's email correspondence, company procedures, and corporate documentation. (Matt Decl. ¶ 5.) They have also taken the depositions of multiple witnesses, including experts, and hired their own experts who issued reports. (*Id.*) Judge Tevrizian, who acted as mediator, stated that "the level of advocacy for all parties . . . was exceptionally informed, ethical, and effective." (Tevrizian Decl. ¶ 7.)

## 2. Rule 23(b) Requirements

In addition to the requirements of Rule 23(a), Plaintiffs must satisfy the requirements of Rule 23(b) to show that the action falls within one of the three authorized "types" of classes. Here, Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a.    Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry.  *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiffs have shown that questions common to the class predominate over any questions affecting only individual members.  The central questions in this case include (1) whether Defendant's infotainment systems were defective, (2) whether Defendant knew about the defect, (3) whether Defendant concealed the defect, and (4) whether the defect was covered by Defendant's express or implied warranties.  These questions can be resolved using common evidence regarding Defendant's infotainment systems as well as Defendant's knowledge and representations concerning their infotainment systems.

### b.    Superiority

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in

the particular forum, and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving this case.  A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  A class action may also be superior when "no realistic alternative" to a class action exists.  *Id.* at 1234–35.  Here, given the common issues presented by all class members, adjudicating these claims on an individual basis for thousands, if not tens of thousands, of potential plaintiffs would be not only inefficient, but also unrealistic.  Additionally, although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification."  *Amchem*, 521 U.S. at 620.  Accordingly, Plaintiffs' proposed class is appropriate for provisional certification under Rules 23(a) and 23(b)(3).

## B.      Fairness of the Proposed Settlement

A proposed class action settlement must also meet the requirements of Rule 23(e), which requires a proposed settlement to be "fair, reasonable, and accurate."  Fed R. Civ. P. 23(e)(2).  To make this determination, courts must consider whether "(A) the class representatives and class counsel have adequately represented the class[,] (B) the proposal was negotiated at arm's length[,] (C) the relief provided for the class is adequate[,] and (D) the proposal treats class members equitably relative to each other."  *Id.* 23(e)(2)(A–D).  In determining whether the class's relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing

class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C).[3]

When, as in this case, "a settlement agreement is negotiated *prior* to formal class certification," the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Courts must be wary of "subtle signs" of collusion which include "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno*, 2021 WL 2197968, at *6 (9th Cir. June 1, 2021). Even though there is a higher risk of collusion in settlements reached before formal class certification, "courts should [not] unnecessarily meddle in class settlements negotiated by the parties. *Briseno v. Henderson*, 2021 WL 2197968, at *9 (9th Cir. June 1, 2021); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Judicial review [] takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk.").

---

[3] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and accurate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court still considers these factors to the extent that they shed light on the inquiry mandated by Rule 23(e).

### 1.      Adequacy of Class Representatives and Counsel

As stated in the Court's analysis of the Rule 23(a) factors, the class representatives and class counsel have adequately represented the class.  There is no evidence of a conflict of interest between Plaintiffs and the class.  Plaintiffs' claims are identical to those of the class and they have every incentive to vigorously pursue those claims.  Nor is there any evidence that Plaintiffs' counsel will not adequately represent or protect the interests of the class.  Plaintiffs' attorneys—Steve Berman, Sean Matt, and Christopher Pitoun of Hagens Berman Sobol Shapiro LLP and Jeffery Goldenberg of Goldenberg Schneider, LPA—have extensive experience litigating complex matters, including automobile class actions.  (*See* Mot. at 17.)  The record indicates that counsel have represented the class capably and adequately.  For example, counsel reviewed thousands of documents, including Defendant's email correspondence, company procedures, and corporate documentation.  (Matt Decl. ¶ 5.)  They have also taken the depositions of multiple witnesses, including experts, and hired their own experts who issued reports.  (*Id.*)  Judge Tevrizian, who acted as mediator, stated that "the level of advocacy for all parties . . . was exceptionally informed, ethical, and effective."  (Tevrizian Decl. ¶ 7.)

### 2.      Arm's Length Negotiation

Again, the Court has found no evidence of collusion during the parties' settlement negotiations.  Although the "mere presence of a neutral mediator" does not definitively show a lack of collusion, the mediator in this case was Judge Tevrizian, a retired and highly respected judge of this District who expressly commended the parties' adversarial negotiation.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that "the presence of a governmental participant" weighs in favor of a fairness finding).  Indeed, he stated that the parties "engaged in extensive adversarial negotiations over a multitude of issues," which were "lengthy, principled, exhaustive,

informed, and sometimes contentious." (Tevrizian Decl. ¶¶ 7–9 ["In my opinion, the outcome of these mediated negotiations is the result of a fair, thorough, and fully-informed, arms-length process between highly capable, experienced, and informed parties and counsel."].)

### 3.    Adequacy of Relief for the Class

In determining whether the class's relief is "adequate," courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C). The Court finds the proposed relief to be adequate.

### a.    Effectiveness of Relief and Risks of Trial

Each class member will receive a meaningful benefit as a result of the Settlement. Although the Settlement does not necessarily award monetary compensation to each class member, Defendant is obligated to implement programs designed to actually repair the class members' defective infotainment systems. First, Defendant will provide an extended warranty covering infotainment system issues for all class members, which will last two years or 24,000 miles (whichever occurs first). (Settlement ¶ 3.8.) Any class member who incurs out-of-pocket expenses because their original warranty expired prior to the effective date of the extended warranty will be reimbursed for their expense. (*Id.*) Second, Defendant will create an Infotainment System Online Resource, which is a website that offers potential solutions to common issues with the infotainment systems. (*Id.* ¶ 3.2.) Third, Defendant will implement the Dealership Assistance and Assessment Program, which will train Defendant's technicians to diagnose and fix common recurring

problems with the infotainment systems.  (*Id.* ¶ 3.6.)  Fourth, class members who made multiple unsuccessful dealership visits to repair their infotainment systems prior to the notice of settlement will be eligible for benefits such as two years of free HondaLink Security (an $89 value per year) or one year of free Sirius XM Select (a $204 value per year).  (*Id.* ¶¶ 3.16–17.)  Finally, class members will be entitled to reimbursement of costs directly resulting from multiple unsuccessful repairs if these costs relate to (1) the cost of recharging a battery drained by a defective infotainment system or (2) transportation costs to return to a dealership for multiple repairs.  (*Id.* ¶ 3.25.) Defendant has provided proposed claim forms that class members will submit to receive these benefits.  (Dkts. 71-6, 71-7.)

The Court finds that these benefits present a fair compromise in light of the risks and expense of continued litigation.  Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions given that Defendant had already filed two motions to dismiss and the Court ruled on the second motion to dismiss Plaintiffs' FAC—granting it with respect to several claims.  The parties also had the benefit of significant discovery, which included documents produced and depositions taken in this case as well as in *Banh*.  *See Banh*, C.D. Cal. No. 2:19-cv-05984.  And the parties attended multiple mediation sessions with Judge Tevrizian.  (Tevrizian Decl. ¶ 9.) With that information, the parties were able to realistically value Defendant's liability and assess the risk of moving forward with class certification, motion practice, and trial. It is uncertain whether Plaintiffs could have achieved a better result at trial, but any result obtained at trial would have taken significantly longer and there is a risk that Plaintiffs could have received much less.

### b.    Attorneys' Fees

The Court must consider "the terms of any proposed award of attorney's fees" in determining whether the class's relief is adequate.  Fed. R. Civ. P. 23(3)(2).  When evaluating the fairness of an attorneys' fees award, courts should consider the "subtle signs" of collusion, which include "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class."  *Briseno*, 2021 WL 2197968, at *6 ("[S]ettlement agreements warrant special attention when the record suggests that settlement is driven by fees.").

First, because Defendant has only agreed to pay "reasonable" attorneys' fees and the parties have not yet indicated the exact amount to be awarded, the Court lacks sufficient information to determine whether the award is "disproportionate" at this time. *See In re Bluetooth*, 654 F.3d at 942 (noting that ordinarily "25% of the fund [i]s the 'benchmark' for a reasonable fee award").[4]  However, based on the terms of the Settlement, there is no indication that the parties have agreed to a fee arrangement that would "reduce compensation for class members in exchange for a larger fee" for counsel. *Briseno*, 2021 WL 2197968, at *7; *see in re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2016 WL 6248426, at *23 (N.D. Cal. Oct. 25, 2016) (stating that "Rule 23(h) does not require Class Counsel to seek attorneys' fees at the final approval stage" and noting that this type of arrangement is less concerning when "fees

---

[4] Regardless of whether attorneys' fees come from a common fund or are otherwise paid, the Ninth Circuit has stated that district courts "should review the settlement structure to determine whether to apply common fund principles to its 23(e) inquiry." *Briseno*, 2021 WL 2197968, at *5.  Even when fees and the class settlement are "technically funded separately, the class recovery and the agreement on attorneys' fees should be viewed as a 'package deal.'" *In re Bluetooth*, 654 F.3d at 948–49.  That said, district courts are not required to treat the "package" as a "constructive common fund for purposes of analyzing the reasonableness of the fee award." *Id.* at 949.  But "assessment of the settlement's overall reasonableness must take into account the defendant's overall willingness to pay." *Id.*

-14-

will not diminish the benefits awarded to Class Members under the Settlement").  For example, the Settlement expressly contemplates that fee negotiations will be conducted in an adversarial manner.  It states that "[i]f the parties are unable to reach agreement informally, . . . [they] will apply to the Court" for an order awarding fees, which Defendant "may oppose."  (Settlement ¶ 5.3.)  Moreover, regarding the second "subtle sign" of collusion, the Settlement does not contain a "clear sailing" arrangement stating that Defendant will not object to certain fee requests by class counsel.  To the contrary, as stated above, the Settlement expressly provides that Defendant "may oppose" any application for fees that Plaintiffs file in this Court.  (*Id.*)  Finally, the Settlement does not contain a reverter provision that would return any unawarded fees to Defendant.  (*See id.* ¶¶ 5.3–5.7.)  Thus, at the preliminary approval stage, the Court finds that Defendant's agreement to pay "reasonable" fees does not cause any unfairness to the Class.  The Court will expect more detailed evidence regarding the requested fee award at the final approval stage.

### c.      Named Plaintiff Incentive Awards

Similar to attorneys' fees, Defendant has agreed to pay a "reasonable" incentive award to the named Plaintiffs, but the parties have not yet agreed on an exact amount.  As with attorneys' fees, there is no indication that these awards will be disproportionate to the benefits received by the class.  *See Roes, 1-2*, 944 F.3d at 1049.  Incentive awards in this district typically range from $3,000 to $5,000.  *See In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (collecting cases).  Again, at this stage, the Court finds that Defendant's agreement to pay "reasonable" incentive awards does not contribute to any unfairness to the Class.  The Court will expect more detailed evidence regarding the requested fee award at the final

approval stage, and if the award falls outside of the typical range, the Court will expect such a deviation to be supported by substantial justification.[5]

In sum, based on the Rule 23(e)(2) factors, the Court preliminarily concludes that the Settlement is "fair, reasonable, and accurate."  In the absence of any red flags of potential collusion, the Court declines to "unnecessarily meddle" in the Settlement negotiated by the parties.  *Briseno*, 2021 WL 2197968, at *9 (9th Cir. June 1, 2021) (noting that courts have no "duty to maximize the settlement fund for class members").

### C.    Notice of the Proposed Settlement

Plaintiffs also seek approval of the proposed manner and form of the notice that will be sent to the class members.  For Rule 23(b)(3) classes, courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed manner of notice is adequate.  Plaintiffs propose a notice protocol centering on direct mail and email.  Following preliminary approval, Defendant will mail notice and claim forms to each person on the class list and send the same materials by email if an email address is available.  (Mot. at 19.)  Defendant will then develop processes for handling improperly addressed mail through use of the National Change of Address Database.  (*Id.*)  The mailings sent to persons on the class list will identify the infotainment systems that are the subject of the Settlement, explain the issues, describe the class benefits and how to obtain them, and direct class members to the settlement website for more information.  (*Id.* at 19–20.)

---

[5] The Court similarly finds no indication that the Settlement treats class members inequitably in relation to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).

The form of notice must also meet the requirements of Rule 23(c)(2)(B), which requires that notice to class members "clearly and concisely state, in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The parties proposed notice form meets each of these requirements. (Dkt. 71-5 [Proposed Notice].)

### D.    Settlement Administrator

Finally, the parties have jointly agreed to use Defendant American Honda Motor Co. as the settlement administrator. Because Defendant is managing the benefits conferred upon the class, such as the extended warranty program, the Court finds that Defendant is best positioned to act as settlement administrator. *See Roseman v. BGASC, LLC*, 2015 WL 13752886, at *7 (C.D. Cal. Oct. 1, 2015) (allowing the defendant to serve as settlement administrator). Accordingly, the Court appoints Defendant as settlement administrator.

//
//
//
//
//
//
//
//

1  //

2  //

3  //

4

5  **III.  CONCLUSION**

6

7  For the foregoing reasons, the Court **GRANTS** provisional certification of the

8  class for settlement purposes and **GRANTS** preliminary approval of the Settlement.  The

9  Court hereby **APPOINTS** Plaintiffs Lesley Conti, Tom Conti, Brandi Bishop, Brigid

10  Hirth, Michael Hirth, Mark Ankrom, Heidi Phan, Peter Phan, Anthony Rossomando,

11  Laura Mohr, Larry Simkin, Harmeet Gill, Yazeed Issa, Ashley Pfeifer, William D.

12  Lampton, Jacob Szajowitz, Michaela Hetzler, Michelle Beckwith, Ross Conley,

13  Stephanie Conley, Emily Darr, Pamela Turberville, Smruti Patel, Ann Morgan, and Julie

14  Pereira as Class Representatives, Hagens Berman Sobol Shapiro, LLP and Goldenberg

15  Schneider, LPA as Class Counsel, and Defendant as settlement administrator.  The final

16  approval hearing will be held on **Monday, September 20, 2021, at 1:30 p.m.**

17

18

19  DATED:      June 4, 2021

20  _____

21  CORMAC J. CARNEY

22  UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

-18-