STEVE W. BERMAN (*pro hac vice*)
SEAN R. MATT (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:  (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LESLEY CONTI, et al., on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>  vs.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation,<br><br>       Defendant. | Case Number:  2:19-cv-2160-CJC-GJS<br><br>[*The Honorable Cormac J. Carney*]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:  January 4, 2022<br>Time:  1:30 p.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on January 4, 2022, at 1:30 p.m., or as soon thereafter as the matter can be heard, in Courtroom of the Hon. Cormac J. Carney, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, CA 92701, Courtroom 9 B, Plaintiffs Lesley Conti, Tom Conti, Brandi Bishop, Brigid Hirth, Michael Hirth, Mark Ankrom, Heidi Phan, Peter Phan, Anthony Rossomando, Laura Mohr, Larry Simkin, Harmeet Gill, Yazeed Issa, Ashley Pfeifer, William D. Lampton, Jacob Szajowitz, Michaela Hetzler, Michelle Beckwith, Ross Conley, Stephanie Conley, Emily Darr, Pamela Turberville, Smruti Patel, Ann Morgan, and Julie Pereira ("Plaintiffs") on behalf of themselves all others similarly situated, will, and hereby do, move this Court to:

1. Enter an Order granting final approval of the Settlement described in the Class Action Settlement Agreement and Release (the "Agreement"), which is attached as Exhibit 1;

2. Finally certify the Settlement Class;

3. Finally determine that the Settlement is fair, reasonable, and adequate pursuant to Rule of Civil Procedure 23(e);

4. Find that Notice to the Class was directed in a reasonable manner;

5. Finally appoint Hagens Berman Sobol Shapiro LLP and Goldenberg Schneider, LPA as Class Counsel and designate Plaintiffs as Class Representatives;

6. Finally approve the distribution of benefits under the Settlement;

7. Reserve and continue jurisdiction with respect to Plaintiffs' previously filed motion for attorneys' fees, costs, and service awards (ECF No. 79) ("Plaintiffs' Fee Motion"); and

8. Enter a final judgment dismissing the action but reserving and continuing jurisdiction regarding implementation and enforcement of Settlement terms.

As discussed below in the Memorandum of Points and Authorities, the Parties have reached this Settlement in good faith, and it has been well received by Class Members. The Settlement fairly reimburses Class Members for their economic losses incurred as a result of the conduct that formed the basis of Plaintiffs' Second Amended Complaint. Moreover, the notice program ordered by the Court has been completed and provided the best notice practicable under the circumstances. The Class Representatives and Class Counsel thus respectfully request that the Court grant final approval, upon which class benefits will be provided to the Class Members consistent with the terms of the parties' Settlement Agreement.

This Motion is based upon: (1) this Notice of Motion and Motion for Final Approval of Class Action Settlement; (2) the accompanying Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Sean R. Matt in Support of Motion for Final Approval of Class Settlement, with attachments, filed concurrently herewith (the "Matt Decl."); (4) the Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.), previously filed with Plaintiffs' Motion for Preliminary Approval (ECF No. 71-2); (5) the Settlement Agreement attached as Exhibit 1; (6) the redacted Declaration of Lee M. Bowron, attached as Exhibit 2; (7) the declarations of each of the Class Representatives, filed with Plaintiffs' Fee Motion (ECF No. 79-1); (8) the records, pleadings, and papers filed in this action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  December 7, 2021                    HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Sean R. Matt*

Steve W. Berman (*pro hac vice*)
Sean R. Matt (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:   (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

Case No.:  2:19-cv-2160-CJC-GJS

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ........................................................................................ 1

II.  TERMS OF THE SETTLEMENT ............................................................. 3

III. CASE HISTORY ........................................................................................ 6

IV.  FINAL CERTIFICATION OF A SETTLEMENT CLASS IS
     APPROPRIATE ......................................................................................... 9

     A.   The Rule 23(a) prerequisites are satisfied. ....................................... 9

          1.   The Settlement Class is sufficiently numerous. ...................... 9

          2.   There are common questions of law and fact. ........................ 9

          3.   Plaintiffs' claims are typical of the Settlement Class
               Members' claims. .................................................................... 9

          4.   Plaintiffs and Class Counsel have fairly and adequately
               protected the interests of the Settlement Class. .................. 10

     B.   The Settlement Class meets the requirements of Rule 23(b). ....... 10

          1.   Common questions of law and fact predominate. ............... 10

          2.   A Class Action is a superior means of resolving these
               claims. ................................................................................... 10

V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
     AND SHOULD BE FINALLY APPROVED .......................................... 11

     A.   The Rule 23(e)(2) and (3) factors support final approval. ........... 12

          1.   Rule 23(e)(2)(A): The Class Representatives and Class
               Counsel have vigorously represented the Class. ................. 12

          2.   Rule 23(e)(2)(B): The Settlement resulted from good
               faith, informed, arm's-length negotiations. ........................ 13

Case No.:  2:19-cv-2160-CJC-GJS

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

3.   The relief under the Settlement balances the risks and expense of continued litigation with the benefits being offered to Class Members, thereby satisfying Rule 23(e)(2)(C)(i)-(iii). ..........................................................15

4.   Rule 23(e)(2)(C)(iv): There are no undisclosed side agreements. ..........................................................16

5.   Rule 23(e)(2)(D): The Settlement treats all Class Members equitably relative to one another..........................16

B.   Adequate Notice has been provided under Rule 23(c)(2)(B) and 23(e)(1). .....................................................17

C.   Plaintiffs have complied with all additional approval factors. ....................18

1.   Class Counsel's view of the Settlement should be afforded substantial weight. ..................................18

2.   Class Members have generally reacted positively to the Settlement...................................................18

VI.   CONCLUSION......................................................................................20

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdullah v. U.S. Sec. Assocs.*,
    731 F.3d 952 (9th Cir. 2013) ............................................................. 10

*Banh v. American Honda Motor Co. Inc.*,
    Case No. 2:19-cv-05984 (C.D. Cal.) ..................................................*passim*

*Bernadette Pauley v. Cf Entm't*,
    2020 WL 5809955 (C.D. Cal. Mar. 13, 2020)................................... 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................. 18

*Bower v. Cycle Gear, Inc.*,
    2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ................................... 14

*Cervantes v. IHG Mgmt. Md. LLC*,
    2019 WL 2970834 (C.D. Cal. Apr. 30, 2019) ................................... 6

*Churchill Vill., L.LC. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ............................................................. 18

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ......................................................... 12, 14

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................... 13, 15

*Fed. Ins. Co. v. Caldera Med., Inc.*,
    2016 WL 5921245 (C.D. Cal. Jan. 25, 2016)..................................... 14

*Free Range Content, Inc. v. Google, LLC*,
    2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ................................... 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .....................................................9, 12, 18, 19

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ....................................................... 18

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................ 17

*LaGarde v. Support.com, Inc.*,
   2013 WL 1283325 (N.D. Cal. Mar. 25, 2013) ............................... 13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................ 13

*Mendez v. C-Two Grp., Inc.*,
   2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ............................... 14

*Mendoza v. Hyundai Motor Co.*,
   2017 WL 342059 (N.D. Cal. Jan. 23, 2017)............................. 17, 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 18

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009)................................ 18

*In re Ominivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................... 15, 18

*Rodriguez v. Farmers Ins. Co. of Ariz.*,
   2013 WL 12109896 (C.D. Cal. Aug. 4, 2013) ............................... 15

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
   2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............................... 15

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016).................................................... 15

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...................................................... 12

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)......................................... 16

*In re Toyota Motor Corp. Unintended Acceleration
   Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013)............. 19

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................................ 10

*In re Volkswagen "Clean Diesel" Mktg., Sales
    Practices & Prods. Liab. Litig.*,
    229 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................................... 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...................................................................................*passim*

Fed. R. Civ. P. 23(e)(2) Adv. Cmt. Note to 2018 Amendment. ....................... 12, 13, 14, 16

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON
    CLASS ACTIONS § 11:41 (4th ed. 2002) ........................................................ 12

Manual For Complex Litigation (Fourth) § 21:632 (2004) .............................. 10

Case No.:  2:19-cv-2160-CJC-GJS

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# I.   INTRODUCTION

Plaintiffs, on behalf of themselves and approximately 450,000 Settlement Class Members, achieved an excellent result in this litigation.  Plaintiffs and Defendant American Honda Motor Company, Inc. ("AHM") reached a proposed settlement (the "Settlement") to resolve class allegations regarding an alleged defect in the "Infotainment System" contained in 2018 and 2019 Honda Odyssey vehicles (Elite, EX, EX-L, EX-LNR and Touring trims), 2019 Honda Pilot vehicles (2EX-LNR, 2TRG, 2TRG 7P, 4Elite, 4EX, 4EX-L, 4EX-LNR, 4TRG and 4TRG 7P trims), and a 2019 Honda Passport (2EX-L, 2TRG, 4Elite, 4EX-L, or 4TRG trims) (the "Class Vehicles"). This Settlement is the result of prolonged arm's-length negotiations during numerous mediation sessions between February 2020 and September 2020 with the Honorable Dickran M. Tevrizian (ret.).  Since Class Counsel filed this action and a related action involving similar technology in Acura vehicles (*Banh v. American Honda Motor Co. Inc*., Case No. 2:19-cv-05984 (C.D. Cal.)), AHM has worked to address the problems Plaintiffs identified.  Between this case and *Banh*, AHM has issued three recalls, four Service Bulletins, and dozens of dealer communications relating to the Infotainment Systems at issue, in addition to numerous software updates that are wirelessly delivered to the Settlement Class Vehicles (referred to "Over-the-Air" updates) and also available for installation at dealerships.

The Settlement builds upon this work and provides substantial relief to the Settlement Class.  It provides for an independent engineering expert to validate the efficacy of the countermeasures that AHM has developed; facilitates the implementation of these countermeasures in the field; provides a two-year/24,000 mile warranty extension covering these issues, which an expert retained by Plaintiffs estimates provides over $33 million in benefits to the Settlement Class (*see* Exhibit 2)[1]; obligates AHM to work in good faith to continue to improve Infotainment System performance at least through the extended

---

[1] Plaintiffs refile a redacted version of Declaration of Lee M. Bowron here as Exhibit 2. Plaintiffs previously publicly filed a redacted version (ECF No. 79-8) and filed an unredacted version under seal (ECF No. 78-1).

Case No.:  2:19-cv-2160-CJC-GJS

warranty period; creates a Dealership Assistance and Assessment Program (the "DAAP") that will direct AHM's authorized dealerships to undergo additional training and implement additional service strategies; creates the Infotainment System Online Resource to, *inter alia*, inform Settlement Class Members about the countermeasures now available and the symptoms the countermeasures are designed to address and permit Settlement Class Members to report directly to AHM any new Infotainment System symptoms or problems they may experience; provides a mechanism to compensate qualifying Settlement Class Members for the inconvenience and hassle they may have experienced because of relevant Infotainment System problems, including two free years of HondaLink Security Service (valued at $89 per year); and provides a mechanism for qualifying Settlement Class Members to receive full reimbursement for eligible out-of-pocket expenses. Further, the Settlement provides a mechanism for AHM to separately pay reasonable attorneys' fees, costs, and Plaintiff service awards—so that these payments will not dilute any of the benefits available to the Settlement Class.

The Settlement is fair, adequate, and reasonable.  In conjunction with the related *Banh* case, the Parties vigorously litigated every aspect of this complex litigation and completed comprehensive expert and fact discovery to better assess the strengths and weaknesses of Plaintiffs' claims and AHM's defenses.  Class Counsel weighed the significant risks of continued litigation and believe that Plaintiffs and Settlement Class Members are better off with the immediate benefits under the Settlement when compared to the risks of further litigation.  And the Settlement treats all Settlement Class Members equitably.

As explained below, Class Notice was issued in accordance with Rule 23(h) and the reception of the Settlement by the Settlement Class has been overwhelmingly positive. Only 153 Class Members—out of approximately 450,000—have opted out of the Settlement and only four objections have been received.  This is an indication that the Class appreciates the Settlement benefits.

Class Counsel respectfully request that the Court grant final approval of the

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Settlement, finding it fair, adequate, and reasonable to the Settlement Class, under the standards of Rule 23(e) and the law of this Circuit.

## II.    TERMS OF THE SETTLEMENT

The Settlement Class includes all current owners and lessees of the Settlement Class Vehicles who reside in, and who purchased or leased their vehicles (other than for purposes of resale or distribution) in the United States, Puerto Rico, and all United States territories, as well as former owners and lessees of Settlement Class Vehicles who submit a Claim. AHM has paid for and provided Class Notice by first class mail (and electronic mail to Settlement Class Members, where possible).  Ex. 1, Class Action Settlement Agreement and Release (Agreement), ¶¶ 4.1-4.12; ECF No. 75-1.  Pursuant to the schedule approved by the Court, AHM, as Settlement Administrator, will on December 21, 2021, submit a declaration detailing the provision of Notice to the Class.

The major Settlement benefits are as follows:

1.    *Independent Review of Countermeasures*.  The Parties jointly retained an independent engineering expert to validate that the countermeasures that AHM implemented are robust and appropriately (and effectively) address the Infotainment System issues identified in this litigation.  Agreement, ¶ 7.6.  That report, which is being prepared by Eldon Leaphart of Carr Engineering, will be filed shortly.

2.    *Extended Warranty*.  AHM will extend the Settlement Class Vehicles' New Vehicle Limited Warranty ("NVLW") to cover qualified Infotainment System repairs. The extension will add an additional two (2) years or 24,000 miles to the original three (3) years or 36,000 miles NVLW (thereby providing warranty coverage for covered repairs for five (5) years or 60,000 miles from the original purchase or lease date).  Agreement, ¶¶ 3.8-3.15.

3.    *Ongoing Software Updates*.  AHM will, in good faith, support the Settlement Class Vehicles by continuing to research, develop, and offer software updates to address identified Infotainment System problems for a period of no less than the Settlement Class Vehicles' Extended Warranty period.  Agreement, ¶ 3.11.

4.    *The Dealership Assistance and Assessment Program*.  Through the DAAP,

AHM will direct its authorized dealerships and their technicians to undergo additional training and implement additional service strategies to resolve problems. Technicians will be trained to make software and/or hardware repairs for known Infotainment System problems even if the specific symptom described by the Settlement Class Member does not manifest at the time of the dealership visit. Agreement, ¶¶ 3.6-3.7. This is notable because Plaintiffs alleged that authorized Acura dealerships were frequently unable to replicate the often-intermittent Infotainment System issues. As a result, the Plaintiffs were often told there was nothing the dealership could do to address the issues. Given the uneven approaches to addressing Infotainment System problems (including Plaintiffs previously being turned away by dealers), the DAAP provides a significant benefit.

5. *The Infotainment System Online Resource*. AHM will create, maintain, and update for at least 24 months after the Effective Date an Infotainment System Online Resource that will, among other things (a) include a list of potential Infotainment System-related issues, that, when selected, will open a drop-down menu to offer potential solutions to the problem such as updating the vehicle's or phone's software or presenting the vehicle at a dealership for an assessment or repair; (b) provide information related to the Infotainment Systems that Settlement Class Members can review; (c) provide a means by which Settlement Class Members can report to AHM issues or symptoms they believe to be attributable to the Infotainment System; and (d) post relevant recall notices, Service Bulletins, and OTA updates relating to the Infotainment System. Agreement, ¶¶ 3.2-3.5.

6. *The Delayed Warranty Repair Service Benefit*. Settlement Class Members who, prior to the Notice Date, made more than one visit to an authorized Honda dealership for Infotainment System issues that were not effectively repaired will be eligible to receive

two free years of HondaLink Security Service, which is a $178 value ($89 per year),[2] provided that the visits appear in AHM's warranty database and the second visit was not the result of a recall or product update.  Settlement Class Members who made Delayed Warranty Repair Visits prior to the Notice Date and who currently own or lease an EX or EX-L trim for either the 2018-2019 Honda Odyssey vehicles, 2019 Honda Pilot vehicles, or 2019 Honda Passport vehicles will be eligible to receive one (1) year of Sirius XM Select ($204 value) (the "Sirius XM Benefit"). If a Settlement Class Member already subscribes to HondaLink Security Service or Sirius XM Select Service, he or she can tack on service when their paid-for service expires.  Agreement, ¶¶ 3.16-3.17, 3.22-3.24.

7. *The Related Warranty Repair Service Benefit*.  Settlement Class Members who, on or before the Notice Date of this settlement, made more than one service visit for a single Infotainment System issue not resolved during the initial warranty service visit (provided both service visits appear in AHM's warranty database and relate to the same Infotainment System issue and the second visit was not the result of a recall or product update), will be *automatically* eligible to receive two free years of HondaLink Security Service, which is a $178 value ($89 per year), or one free year of Sirius XM benefit (a $204 value).  Those Settlement Class Members who qualify will *not* have to file a claim form to obtain this benefit, which again, may be tacked-on to an existing paid-for service when the paid-for service expires.  Agreement, ¶¶ 3.19-3.24.

8. *Compensation for Certain Costs Related to Delayed Warranty Claims*.  Claim Forms can be filed seeking reimbursement for (a) qualifying transportation costs incurred if the Settlement Class Member returned a Settlement Class Vehicle more than once to a

---

[2] The HondaLink Security Service app allows vehicle owners to connect to their vehicle from their smartphone. Some of the features included are "Automatic Collision Notification," in which a live agent will reach out to check on the driver and request that help be sent in the event of a collision; "Emergency Call Function," in which a live agent will request that help be sent in the event of an emergency; and "Enhanced Roadside Assistance," which allows the driver to easily summon towing and repair services using a button in their vehicle.
*See https://hondalink.honda.com/#/compatibility?year=2019&model=Pilot.*

dealership to obtain a repair for Infotainment Systems Symptoms; and/or (b) qualifying battery recharging costs incurred as a result of a car battery that drained because the Infotainment System did not turn off when it should have.  Agreement, ¶¶ 3.25-3.28.

9.     *Attorneys' Fees and Costs.*  AHM will pay Class Counsel's reasonable attorneys' fees and expense reimbursements in an amount consistent with the terms of the Settlement Agreement and as approved by the Court.  Agreement, ¶¶ 5.3-5.7.  AHM's payment of attorneys' fees and expense reimbursement will not impact or diminish any of the Settlement benefits available to the Class.  The Parties have not reached an agreement on the amount of fees and expenses, which the Court will resolve in association with Plaintiffs' Fee Motion.

In exchange for these benefits, all Settlement Class Members who do not opt-out of the Settlement Class will be subject to a release of their claims against AHM related to Infotainment Systems and Infotainment System Symptoms, as asserted, or as could have been asserted, in the litigation or any other proceedings.  Agreement, ¶¶ 6.1-6.6.  The Parties agreed to a reasonably targeted release, which the Court preliminarily approved.  "Released Claims" are defined as follows: "Released Claims" means any claims the class members had or could have had with respect to "any conduct, act, omissions, facts … relating to or arising out of the Infotainment Systems[,] … as asserted, or as could have been asserted in the Litigation or any other proceedings, and ***that are based on the same factual predicate asserted in the Second Amended Complaint*** (the operative complaint)" Agreement, ¶ 1.26 (emphasis added). The scope of the release satisfies Ninth Circuit precedent and is similar to releases previously approved in this District.  *See Bernadette Pauley v. Cf Entm't*, 2020 WL 5809955, at *9 (C.D. Cal. Mar. 13, 2020); *Cervantes v. IHG Mgmt. Md. LLC*, 2019 WL 2970834, at *5-6 (C.D. Cal. Apr. 30, 2019).

### III.   CASE HISTORY

Plaintiffs allege that the Settlement Class Vehicle Infotainment Systems suffered from software and hardware defects that caused the systems to freeze, crash, fail to boot up, fail to shut down, or suffer intermittent failures to connect to peripheral devices such as

phones. *See* Plaintiffs' Second Amended Complaint, ECF No. 50 ("SAC").  Plaintiffs initiated this action on March 22, 2019 (ECF. No. 1) and subsequently filed the First Amended Complaint ("FAC") on June 10, 2019 (ECF. No. 32).   Plaintiffs brought claims for violation of relevant state consumer protection acts and for breach of express and implied warranties.

On August 2, 2019, AHM filed a motion to dismiss and a motion for judicial notice in support of its motion to dismiss. ECF. Nos. 37-38.  Plaintiffs filed their opposition brief on September 13, 2019 (ECF No. 47), and AHM filed their reply in support of the motion on October 4, 2019 (ECF No. 48).

On October 17, 2019, the Court granted in part and denied in part AHM's motion to dismiss, ordering Plaintiffs to file an amended complaint consistent with its order by November 4, 2019. ECF No. 49. Plaintiffs complied with the Court's order and filed the now operative SAC on November 4, 2019. ECF No. 50.  AHM filed its answer on February 3, 2020, denying all material allegations, liability, and interposing affirmative defenses. ECF No. 53.

In part because the *Banh* case was litigated under a very aggressive and demanding schedule, the Parties focused their efforts on discovery in *Banh*. Documents produced by AHM and its affiliated companies Honda of America Manufacturing, Inc. ("HAM") and Honda R&D Americas, Inc ("R&D") in that case show that all Settlement Vehicles in both *Conti* and *Banh* operate on the MOST (Media Oriented Systems Transport) network for infotainment system communication. *See* Matt Decl., ¶ 8.  The 2018 Odyssey, a Class Vehicle in this case, was the first Honda or Acura vehicle utilizing the MOST ring system.  *Id*. Because the MOST network is used in all Settlement Vehicles in both cases, many of the technical documents produced in *Banh* contain information about the Class Vehicles.  *Id*., ¶¶ 8-10. And although the Settlement Vehicles in *Banh* and *Conti* contain software and features that vary depending on trim level and vehicle make and model, the documents indicate that that there is some overlap in the issues identified by Defendant,

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

and the countermeasures undertaken by Defendant, between the Settlement Vehicles in *Banh* and *Conti*. *Id.*

The information Class Counsel learned from the *Banh* litigation allowed Plaintiffs to be well-informed about the issues facing the Class Vehicles and was essential for the resolution of this case. AHM and its related entities produced more than 20,000 pages of documents, comprised of, among other things, email correspondence, company procedures, corporate documentation, and class member information. Plaintiffs issued subpoenas to AHM corporate affiliates R&D and HAM, and to companies that supplied parts or technology used in the Infotainment Systems. Matt Decl., ¶ 5. Class Counsel took the depositions of relevant AHM employees and those of its related companies, including multiple 30(b)(6) depositions. Plaintiffs engaged a liability expert (engineer Steve Loudon) and damage experts (marketing expert Steve Gaskin and economist Colin Weir), each of whom issued a report and had their depositions taken. Plaintiffs also analyzed the expert reports of two experts retained by AHM and took their depositions. *Id.* Fact and expert discovery concluded in *Banh* before the Parties agreed to settle. *Id.*, ¶ 4.

The Parties conducted three separate formal private mediation sessions with Judge Tevrizian (ret.), and several additional informal mediation sessions were held with Judge Tevrizian. *Id.*, ¶ 6. While only limited progress was made in the February and March sessions, mediation efforts intensified after the *Banh* Court issued orders on the parties' motions to certify a class, exclude witnesses, and compel arbitration. The mediation process was successful, and the Parties signed a Memorandum of Understanding in October and, later, a Settlement Agreement. *See* Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.) in Support of Motion for Preliminary Approval of Class Settlement ("Tevrizian Decl."), ECF No. 71-2.

Although the *Banh* and *Conti* actions involve different vehicles, the Infotainment Systems and technology at issue in them are similar. Matt Decl., ¶¶ 8-10. Consequently, the Parties' discovery in the two cases overlapped considerably, and the actions were litigated in a parallel track, mediated together, and ultimately also settled in parallel. At the

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

December 6, 2021, final approval hearing in the *Banh* case before Judge Gary Klausner, the Court indicated that it would grant final approval to the *Bahn* settlement.  *Id.*, ¶ 3.

The Court granted preliminary approval of the Settlement here on June 4, 2021, finding that the Settlement would likely be found to be fair, adequate, and reasonable to Class Members pending final approval.  ECF No. 73.

## IV.   FINAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

In its preliminary approval Order, the Court found that it would likely be able to certify the Settlement Class. ECF No. 73.  Plaintiffs briefly address the Rule 23 (a) and (b) elements below.

### A.   The Rule 23(a) prerequisites are satisfied.

#### 1.   The Settlement Class is sufficiently numerous.

Class members must be so numerous that joinder would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class consists of about 450,000 Class Members, and thus "numerosity is satisfied."  ECF No. 73 at 5.

#### 2.   There are common questions of law and fact.

The second requirement of Rule 23 is the existence of common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  The Court has already found that the Settlement Class met the commonality threshold, because "[r]esolution of the class's claims … presents common questions" that "are central to each class member's claims and their resolution will determine, in one stroke, whether Defendant violated the law."  ECF No. 73 at 6 (internal quotation omitted).

#### 3.   Plaintiffs' claims are typical of the Settlement Class Members' claims.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, the Court has already found that both Plaintiffs and Class Members suffered the same injury (*i.e.* defects in the Infotainment System) that arose out of the same conduct by AHM.  *Id.* Thus, typicality is satisfied.

**4.    Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Settlement Class.**

The final element of Rule 23(a) requires that the representative plaintiffs will fairly and adequately represent the interests of the class.  The Court's Preliminary Approval Order found that "there is no evidence of a conflict of interest between Plaintiffs and the class." *Id.* at 7.   Further, significant evidence exists that Plaintiffs and Class Counsel have represented the interests of the Settlement Class "capably and adequately." *Id.* The adequacy element has been met.

**B.    The Settlement Class meets the requirements of Rule 23(b).**

**1.    Common questions of law and fact predominate.**

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied.  The predominance analysis focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013).  The general standards for litigation class certification also apply to settlement class certification, except that the court need not consider potential trial management problems. Manual For Complex Litigation (Fourth) § 21:632 (2004). Here, the Court found that common issues predominated for the Settlement Class because there were "central questions in this case" regarding the existence of the defect, AHM's knowledge and potential concealment of the defect, and whether the defect was covered by AHM's warranties.  ECF No. 73 at 8. Nothing has changed since the Court made this determination as part of its preliminary approval of the Settlement, and therefore, issues common the Settlement Class still predominate.

**2.    A Class Action is a superior means of resolving these claims.**

A class action is superior under Rule 23(b)(3) because it represents the only realistic method for owners and lessees of a vehicle equipped with AHM's Infotainment System to obtain relief. *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (where "classwide litigation of common issues will reduce litigation costs and

promote greater efficiency, a class action may be superior to other methods of litigation"). The Court has already found that such a scenario is present here, because "given the common issues presented by all class members, adjudicating these claims on an individual basis … would be not only inefficient, but also unrealistic."  ECF No. 73 at 9.  The Court also previously explained that it "foresees no management problems from litigating this dispute as a class action."  *Id.*  Therefore, the Court should definitively certify the Settlement Class for purposes of final approval.

## V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED

Rule 23 of the Federal Rules of Civil Procedure governs a district court's analysis of the fairness of a settlement of a class action.  *See* Fed. R. Civ. P. 23(e).  A court may approve the parties' settlement only after it determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2), which was amended as of December 1, 2018, provides that a district court should approve a proposed settlement after considering several factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of the proposed award of attorney's fees, including timing of payment, and (iv) any other agreement made in connection with the Settlement; and (D) the proposal treats Class Members equitably relative to each other.

When the Rule was amended, the Advisory Committee recognized that the various Circuits had previously generated their own lists of factors to consider in determining whether a settlement is fair, reasonable, and adequate.  In the Ninth Circuit, those factors included: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. The Committee has clarified that this new list of factors does not "displace" existing factors, but instead aims to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Adv. Cmt. Note to 2018 Amendment.

An evaluation of these factors here confirms that both the procedure used in negotiating the Settlement and the substance of the resulting Settlement are fair, reasonable, and adequate, and thus merit final approval.[3]

## A.   The Rule 23(e)(2) and (3) factors support final approval.

### 1.   Rule 23(e)(2)(A): The Class Representatives and Class Counsel have vigorously represented the Class.

As amended, Rule 23(e) requires a Court to ensure that in a proposed settlement, "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Considerations at this stage can include "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases," which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Adv. Cmt. Note to 2018 Amendment. "These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of

---

[3] As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) (same; collecting cases); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017). Courts are to give "proper deference to the private consensual decision of the parties" and limit inquiry to whether "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

Case No.: 2:19-cv-2160-CJC-GJS

discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

As the Court previously noted, "[t]he record indicates that counsel have represented the class capably and adequately" by, inter alia, "review[ing] thousands of documents, including Defendant's email correspondence, company procedures, and corporate documentation," and by "tak[ing] the depositions of multiple witnesses, including experts," and by hiring "their own experts who issued reports." ECF No. 73 at 11. *See LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 25, 2013) (noting presence of discovery supports conclusion that the plaintiffs were sufficiently informed during negotiations); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming final approval where "Class Counsel conducted significant investigation, discovery and research" and "had worked with damages and accounting experts throughout the litigation"). Thus, the Parties had a full opportunity to assess the strengths and weaknesses of the claims and make an informed decision about settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (holding that, regardless of form, the parties need only "sufficient information to make an informed decision about settlement"); *LaGarde*, 2013 WL 1283325, at *7 (holding that parties were sufficiently informed where they "did engage in some motion practice that . . . provided the parties with a better understanding of the information available to the opposing side"). There can be no doubt that the Class Representatives and Class Counsel have vigorously represented the Class.

### 2. Rule 23(e)(2)(B): The Settlement resulted from good faith, informed, arm's-length negotiations.

Under Rule 23(e)(2)(B), the Court considers whether the Settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Court considers the "conduct of the negotiations." Fed. R. Civ. P. 23(e)(2)(A) & (B) Adv. Cmt. Note to 2018 Amendment. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and

further the class interests." *Id.*; *see also Fed. Ins. Co. v. Caldera Med., Inc.*, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quote omitted)); *City of Seattle*, 955 F.2d at 1290 (""[T]he district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties.'" (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985))).  Additionally, the Court may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms."  Fed. R. Civ. P. 23(e)(2)(A) & (B) Adv. Cmt. Note to 2018 Amendment.  A presumption of fairness attaches when the settlement resulted from arm's-length negotiations.  *See, e.g.*, *Mendez v. C-Two Grp., Inc.*, 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017); *Bower v. Cycle Gear, Inc.*, 2016 WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." (internal quote omitted)).  The presumption is confirmed here.

As noted above, the Settlement was reached only after Judge Tevrizian worked extensively with the Parties.  Judge Tevrizian previously testified that the Settlement was the product of "arm's length, spirited, prolonged, and difficult" negotiations.  ECF No. 71-2, at ¶ 7; *see also* Fed. R. Civ. P. 23(e)(2)(A) & (B) Adv. Cmt. Note to 2018 Amendment. (advising that "the involvement of a neutral . . . mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

Further, there is no indicia of collusion here, as there is no clear sailing agreement or reverter present.  The Settlement was also designed to ensure that attorneys' fees will not diminish the benefits awarded to Class Members under the settlement—as any attorneys' fees will be paid "separate and apart from any relief provided to the Settlement Class." Agreement, ¶ 5.5.  Importantly, the Parties did not begin negotiating attorneys' fees until after all material settlement benefits for the Class were negotiated.  ECF No. 73 at 14-15; Matt Decl., ¶ 7.  As this Court previously confirmed, "the Settlement expressly

- 14 -

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

contemplates that fee negotiations will be conducted in an adversarial manner."  ECF No. 73 at 15; *see also Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs"); *Rodriguez v. Farmers Ins. Co. of Ariz.*, 2013 WL 12109896, at *5 (C.D. Cal. Aug. 4, 2013) (same).

### 3. The relief under the Settlement balances the risks and expense of continued litigation with the benefits being offered to Class Members, thereby satisfying Rule 23(e)(2)(C)(i)-(iii).

Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the plaintiffs' case; … complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial.'" *Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon*, 150 F.3d at 1026).  In this case, AHM vigorously defended itself and denied all liability from the outset.  *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case.").  And while Plaintiffs are convinced that their claims are strong on the merits, they also recognize that there are substantial risks involved in further litigation and that it was uncertain whether the Settlement Class would be able to obtain a better outcome through continued litigation and trial.  As this Court recognized, "[i]t is uncertain whether Plaintiffs could have achieved a better result at trial, but any result obtained at trial would have taken significantly longer and there is a risk that Plaintiffs could have received much less."  ECF No. 73 at 13. Accordingly, the inherent risk of presenting such a complex matter to a jury at trial and the "risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" strongly favors approval. *In re Ominivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007).

Rule 23(e)(2)(c)(ii) asks whether the methods of distribution and claims processing are effective. Here, Class Members will receive automatic benefits (like the warranty extension and Infotainment System Online Resource). The warranty extension benefit alone

is valued at $33 million. *See* Ex. 2.  Additionally, eligible Class Members will also receive two free years of HondaLink Security Service or Sirius XM Select Service if AHM service records indicate they made more than one visit for an Infotainment System not resolved during the initial warranty service visit. And Class Members can file claims for added monetary relief in the form of reimbursement of qualifying out-of-pocket expenses. Agreement, ¶ 4.14-4.15.  As the Court has preliminarily concluded, "[e]ach class member will receive a meaningful benefit as a result of the Settlement." ECF No. 73 at 12. The Court must also assess the terms of any proposed award of attorneys' fees under Rule 23(e)(2)(c)(ii). As discussed, the Settlement provides that AHM will pay Class Counsel's attorneys' fees and costs separately, without any reduction of the Class Member recoveries, there will be no reverter to AHM, and the Court alone will decide attorneys' fees and costs. As discussed in Class Counsel's Fee Petition, Class Counsel are requesting an award of reasonable fees and expenses. The Rule 23(e)(2) factors are satisfied.

### 4.   Rule 23(e)(2)(C)(iv): There are no undisclosed side agreements.

The Parties confirm that to date there are no identifiable agreements pursuant to Rule 23(e)(3).

### 5.   Rule 23(e)(2)(D): The Settlement treats all Class Members equitably relative to one another.

Rule 23(e)(2)(D) requires that the Court consider whether "the proposal treats Class Members equitably relative to each other."  The crux of the inquiry is whether the agreement "improperly grant[s] preferential treatment to class representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted); *see also* Fed. R. Civ. P. 23(e)(2)(D) Adv. Cmt. Note to 2018 Amendment. (explaining that factor is intended to ensure that a proposed settlement does not include "inequitable treatment of some class members vis-a-vis others").  As noted above, each Class Member will receive the same automatic benefits under the Settlement and have the same opportunity to file claims for any additional relief for which they are eligible.  Further, beyond the requested incentive awards, which are well within the range

generally awarded in this District,[4] this Settlement does not grant the Class Representatives any preferential treatment.  The Settlement, therefore, does not favor any segment of Class Members over any other, which supports final approval.

**B.     Adequate Notice has been provided under Rule 23(c)(2)(B) and 23(e)(1).**

The Court "must direct to class members the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)), and, upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal…." (Fed. R. Civ P. 23(e)(1)(B)).  "A binding settlement must provide notice to the class in a 'reasonable manner' and otherwise be 'fair, reasonable, and adequate." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019).  Actual notice is not required, but the notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059 at *5 (N.D. Cal. Jan. 23, 2017).

The Notice Plan here satisfies both Rule 23 and due process.  A dedicated website has been established, as well as a toll-free telephone number staffed during business hours with live operators.  Agreement, ¶ 4.9.  As will be described in a forthcoming declaration from AHM (due for filing on December 21, 2021), a robust Long Form Notice with Claim Forms was sent by first class mail (and, where relevant, email) directly to Settlement Class Members.  The Class Notice clearly identifies the nature of this litigation, the definition of the Settlement Class, the terms of the Settlement, the benefits of the Settlement, and how Class Members could obtain these benefits.  The Notice also directs Class Members to more information on the Settlement Website and/or the toll-free number and noted the date, time, and place of the Final Approval Hearing. The Notice also outlines the Settlement Class Members' rights, the scope of release that binds Class Members who do not opt-out, the consequences of pursuing different legal options made available to Class Members, how to

---

[4] This Court previously observed that "Incentive Awards in this district typically range from $3,000 to $5,000."  ECF No. 73, at 15. With one specific exception, Plaintiffs seek awards below that range.

opt-out or object to the Settlement, and the opt-out and objection deadlines.  The Notice here contains all the information necessary for Class Members to make informed decisions about their participation in the Settlement.  *See, e.g., Hartless v. Clorox Co.*, 273 F.R.D. 630, 636 (S.D. Cal. 2011) (granting final approval of class action settlement where the notice contained a description of the lawsuit and settlement relief, a description of Class Members' rights and the settlement website and toll-free number).

## C.   Plaintiffs have complied with all additional approval factors.

### 1.   Class Counsel's view of the Settlement should be afforded substantial weight.

Courts within the Ninth Circuit give weight to the view of experienced counsel and the response of Class Members.  *See, e.g.*, *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  As noted in Plaintiffs' Fee Motion (ECF No. 79), Class Counsel has extensive experience representing plaintiffs and classes in complex litigation, and Class Counsel unanimously support this Settlement.  "Class counsel's views that the settlement is a good one is entitled to significant weight." *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *22 (N.D. Cal. Mar. 21, 2019) (citing *Ominivision Tech.*, 559 F. Supp. 2d at 1043); *Hanlon*, 150 F.3d at 1026; *Mendoza*, 2017 WL 342059, at *7 (holding that the recommendation of experienced counsel in consumer class actions is entitled to a presumption of reasonableness).

### 2.   Class Members have generally reacted positively to the Settlement.

Courts within the Ninth Circuit also give weight to the response of class members. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *Nat'l Rural Telecomms.*, 221 F.R.D. at 528.  Here, the response by the Settlement Class has been overwhelmingly positive.  Out of approximately 450,000 Class Members, only 153 opted out of the Settlement, and only four have lodged an objection. These figures provide powerful evidence of the Settlement's fairness. *See, e.g., Churchill Vill., L.LC. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500

opt-outs from class of 90,000 members).

Two of the objections were filed by persons who no longer own a Class Vehicle, Mark Fallis (ECF No. 84) and Kathryn Agnew (ECF No. 85), meaning that they are not class members unless they file a claim for reimbursement.  Agreement, ¶ 2.1.  Neither Mr. Fallis nor Ms. Agnew complain about the relief being offered to current owners (Ms. Agnew even states the relief is "more than sufficient for current owners" (ECF No. 85 at p. 2)), but rather seek compensation for the inconvenience they suffered prior to trading in the Class Vehicle.  However, courts recognize that not all class members need receive consideration for prior repairs and inconvenience.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prod. Liab. Litig*., 2013 U.S. Dist. LEXIS 123298, at *277-78 (C.D. Cal. July 24, 2013) ("[I]t is entirely appropriate to structure as part of a settlement a customer support program that applies only to future claims. . . .  [T]he failure of the parties to include a term to compensate class members for past repairs does not render the proposed settlement unreasonable.").  And if either Mr. Fallis or Ms. Agnew incurred any qualifying expenses, they can file a claim for reimbursement.

The third objection was filed by John Foster (*see* Ex. A to the Matt Decl.) but, if anything, it proves the value of the Settlement.  Mr. Foster complains that Honda has a policy of "no repair unless problem duplicated" at the dealership.  *Id.* at p. 1.  However, the Settlement requires AHM to repair Class Vehicles *even* if the problem cannot be duplicated at the dealership.  Agreement, ¶ 3.6.  This change in policy will actually help address Mr. Foster's concern that repairs are not being addressed because dealerships are unable to replicate the issue.  Mr. Foster's other objection is that he believes the Settlement's warranty extension benefit should be tacked on to the end of a 7-year warranty extension he purchased, rather than run concurrently.  But Class Counsel bargained for the maximum consideration that AHM was willing to provide in the Settlement; AHM simply was not willing to provide more.  This does not support disapproval of the Settlement.  *See, e.g., Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether

- 19 -

Case No.:  2:19-cv-2160-CJC-GJS

it is fair, adequate and free from collusion.").

The final objection was submitted by Kyungsuk (Kai) Song.  *See* Ex. B to the Matt Decl.  Mr. Song's objection may be rejected as facially deficient, as it fails to provide such basic required information as Ms. Song's address, phone number, date of purchase, vehicle model, model year, or Vehicle Identification Number.  *See* Agreement, ¶ 4.24. Substantively, Mr. Song's objection is that the Settlement should cover "the fundamental driving system of the car," because in his opinion, the problem with his vehicle "was not a just problem (sic) with the infotainment system."  Matt Decl., Ex. B at p. 1.  Mr. Song provides two pictures of his dashboard, with one picture showing "Emission System Problem" and the other showing "Transmission System Problem."  This deficient objection appears to relate to issues other than those involved in this case and provides no basis to disturb the Settlement.

## VI.   CONCLUSION

The Settlement is fair, reasonable, and adequate under Ninth Circuit authority. Plaintiffs respectfully request that the Court grant the motion and approve the Settlement.

Dated:  December 7, 2021            HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Sean R. Matt*
_____
Steve W. Berman (*pro hac vice*)
Sean R. Matt (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:   (206) 623-7292
Facsimile:    (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:  (213) 330-7150
Facsimile:   (213) 330-7152

1

*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.:  2:19-cv-2160-CJC-GJS

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT